AUG 2 7 2003

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

.......................................................................... X
                                         :

CHARLES FEDERMAN, Derivatively on Behalf of Nominal
Defendant, COMPUTER ASSOCIATES INTERNATIONAL,
INC.,

                             Plaintiff

               v.

RUSSELL M. ARTZT, WILLIAM F.P. de VOGEL,
RICHARD A. GRASSO, LEWIS S. RANIERI, ALFONSE M.
D'AMATO, SHIRLEY STRUM KENNY, SANJAY KUMAR,
ROEL PIEPER and CHARLES B. WANG,

                           Defendants,

               And

COMPUTER ASSOCIATES INTERNATIONAL, INC.,

                       Nominal Defendant.

.......................................................................... X

No. 03-CIV-4199

## STIPULATION AND AGREEMENT OF SETTLEMENT OF DERIVATIVE ACTIONS

This stipulation and agreement of settlement dated as of August 25, 2003 (the "Derivative

Stipulation") is submitted pursuant to Rule 23.1 of the Federal Rules of Civil Procedure. Subject

to the approval of the United States District Court for the Eastern District of New York (the

"Court"), this Derivative Stipulation is entered into among plaintiff (the "Derivative Plaintiff") in

the Federal Derivative Action and the Delaware Derivative Action (the "Derivative Actions"),

nominal defendant Computer Associates International, Inc. ("CA") and CA's present and former

directors, including Russell M. Artzt, Willem F.P. de Vogel, Richard A. Grasso, Lewis S.

Ranieri, Alfonse D'Amato, Shirley Strum Kenny, Sanjay Kumar, Roel Pieper and Charles B.



EXHIBIT
"A"

Wang (collectively the "Settling Individual Defendants"), by and through their respective counsel.

**WHEREAS:**

A.    The following actions are pending against CA and certain of its present or former officers and directors:

(1)    *In Re Computer Associates Class Action Securities Litigation,* United States District Court, Eastern District of New York, Master File No. 98-CV-04839 (TCP) consolidated with class actions numbered 98-CV-04839, 98-CV-04924, 98-CV-05032, 98-CV-05131, 98-CV-05052, 98-CV-05013, 98-CV-05411, 98-CV-04961, 98-CV-05079,  98-CV-05107, 98-CV-05241 (the "1998 Class Action");

(2)    *In Re Computer Associates 2002 Class Action Securities Litigation,* United States District Court, Eastern District of New York, Master File No. 02-CV1226(TCP) consolidated with class actions numbered 02-CV-1226, 02-CV-01259, 02-CV-01359, 02-CV-01423, 02-CV-01424, 02-CV-01454, 02-CV-01611, 02-CV-02221, 02-CV-02459, 02-CV-02476, 02-CV-02488, 02-CV-02513, 02-CV-02629 (the "2002 Class Action" and together, with the 1998 Class Action, the "Securities Class Actions").

(3)    *John A. Ambler v. Computer Associates International, Inc., Board of Directors of Computer Associates International, Inc., Administrative Committee, Charles B. Wang, Sunjay [sic] Kumar, Peter A. Schwartz, Ira Zar, Russell M. Artzt, Charles P. McWade, Computer Associates Savings Harvest Plan, DOES 1-10,* United

2

States District Court, Eastern District of New York., Case No. CV-02-6281(TCP) (the "ERISA Action").

(4)    *Charles Federman, derivatively and on behalf of Computer Associates International, Inc. v. Russell M. Artzt, William F. P. de Vogel, Richard A. Grasso, Lewis S. Ranieri, Alfonse M. D'Amato, Shirley Strum Kenny, Sanjay Kumar, Roel Pieper and Charles B. Wang*, Delaware Court of Chancery, C.A. No. 1955 5-NC (the "Delaware Derivative Action").

(5)    *Charles Federman, derivatively and on behalf of Computer Associates International, Inc. v. Russell M. Artzt, William F. P. de Vogel, Richard A. Grasso, Lewis S. Ranieri, Alfonse M. D'Amato, Shirley Strum Kenny, Sanjay Kumar, Roel Pieper and Charles B. Wang*, United States District Court, Eastern District of New York., No.03-CIV-4199 (the "Federal Derivative Action") (The Delaware Derivative Action and Federal Derivative Action are jointly hereinafter referred to as the "Derivative Actions.")

B.    This Derivative Stipulation is intended fully, finally and forever, to resolve, discharge and settle the Settled Derivative Claims with prejudice and without costs against the Settling Individual Defendants. Upon and subject to the terms and conditions hereto, this Derivative Stipulation is entered into in connection with the Stipulations reflecting the settlement of the 1998 Class Action, the 2002 Class Action, and the ERISA Action, all of which are subject to approval by the Court after notice and hearing. Capitalized terms shall have the definition set

3

forth herein, and if not defined herein, as defined in the Securities Class Stipulation and the ERISA Stipulation.

C.       On April 25, 2002, a derivative action (an action filed by a shareholder asserting claims on behalf of CA) was filed in the Delaware Court of Chancery, New Castle County, against CA as a nominal defendant and the following current and former CA directors:  Russell M. Artzt, Willem F.P. de Vogel, Richard A. Grasso, Lewis Ranieri, Alfonse M. D'Amato, Shirley Strum Kenny, Sanjay Kumar, Roel Pieper and Charles B. Wang (the "Delaware Derivative Action").  On November 22, 2002, plaintiffs filed a First Amended Complaint alleging that if CA is liable in the 2002 Class Action, or in any related regulatory proceeding, then the Derivative Director Defendants named therein would be liable to CA based on theories of alleged breaches of fiduciary duty and theories of contribution and indemnification.  The First Amended Complaint also alleged that defendants Wang, Kumar and Artzt misappropriated and traded on non-public information in breach of fiduciary duties owed to CA.

D.       On April 9, 2003, the parties entered into a stipulation in the Delaware Derivative Action whereby defendants' time to respond to the First Amended Complaint would be extended until thirty days after the resolution of the 1998 Class Action and the 2002 Class Action, provided that any party could terminate the stipulation on thirty days written notice.

E.       On August 25, 2003, Charles Federman filed a putative derivative action captioned *Charles Federman, derivatively and on behalf of Computer Associates International, Inc. v. Russell M. Artzt, William F. P. de Vogel, Richard A. Grasso, Lewis S. Ranieri, Alfonse M. D'Amato, Shirley Strum Kenny, Sanjay Kumar, Roel Pieper and Charles B. Wang*, in the United

4

States District Court, Eastern District of New York, No. 03-CIV-4199 (the "Federal Derivative Action"). The Federal Derivative Action contains essentially the same allegations as the Delaware Derivative Action and has been filed to coordinate and facilitate the settlement of the various actions identified in paragraph A.

 F. Similar claims to those in the Derivative Actions were asserted by a CA shareholder named Simka Fridman in a demand letter from her attorney dated May 22, 2002 (the "Demand Letter"). Ms. Fridman's claims were not subsequently pursued by her counsel.

 G. The Settling Individual Defendants deny any wrongdoing whatsoever and this Derivative Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Settling Individual Defendant with respect to any claim or of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Settling Individual Defendants have asserted. The parties to this Derivative Stipulation recognize, however, that the litigation has been filed by Derivative Plaintiff and defended by the Settling Individual Defendants in good faith and with adequate basis in fact under Federal Rule of Civil Procedure 11, that the litigation is being voluntarily settled after advice of counsel, and that the terms of this Settlement are fair, adequate and reasonable. This Derivative Stipulation shall not be construed or deemed to be a concession by any Derivative Plaintiff of any infirmity in the claims asserted in the Derivative Actions.

 H. Derivative Plaintiff's Counsel have conducted an investigation relating to the claims and the underlying events and transactions alleged in the Derivative Actions. Derivative Plaintiff's Counsel have examined many documents including documents concerning numerous

~Bost1:284159.v6 |8/25/03
220603-97

corporate governance initiatives instituted by CA in 2002 and 2003. Derivative Plaintiff, the

Settling Individual Defendants, and the Independent Directors of CA recognize that since the

filing of the Derivative Action, CA has instituted numerous corporate governance initiatives.

I.    Derivative Plaintiff's Counsel have analyzed the evidence adduced during their

factual investigation and have researched the applicable law with respect to CA's claims against

the Settling Individual Defendants and the potential defenses thereto.

J.    Derivative Plaintiff and Settling Individual Defendants in the Derivative Actions

realize that the litigation of the claims would entail substantial effort and expense and the

outcome of such claims is uncertain. Derivative Plaintiff and Settling Individual Defendants

believe that the claims in the Derivative Actions are best settled as set forth herein.

K.    Based upon their investigation and the information as set forth above, Derivative

Plaintiff's Counsel, after considering the above, have concluded that the terms and conditions of

this Derivative Stipulation are fair, reasonable and adequate to Derivative Plaintiff and CA, and

in their best interests, and have agreed to settle the claims raised in the Derivative Actions

pursuant to the terms and provisions of this Derivative Stipulation.

L.    The terms of the Settlement of this Derivative Action have been reviewed by the

six (6) independent members of the ten (10) member Board of Directors of CA who are not

named Defendants in the Derivative Actions (collectively the "Independent Directors").

Following such review, including consultation with their independent counsel (White & Case),

the Independent Directors have recommended that CA enter the Settlement. The Board of

6

Directors of CA has decided to accept that recommendation and authorize CA to enter into this Settlement.

NOW THEREFORE, without any admission or concession on the part of Derivative Plaintiff of any lack of merit of the Derivative Actions whatsoever, and without any admission or concession of any liability or wrongdoing or lack of merit in the defenses whatsoever by the Settling Defendants, it is hereby STIPULATED AND AGREED, by and among the parties to this Derivative Stipulation, through their respective attorneys, subject to approval of the Court pursuant to Rule 23.1 of the Federal Rules of Civil Procedure, and in consideration of the benefits flowing to the parties hereto from the Settlement, that all Settled Derivative Claims as against the Released Parties shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

## <u>CERTAIN DEFINITIONS</u>

1.     As used herein, the following terms shall have the following meanings. Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Securities Class Stipulation.

(a)     **"Derivative Plaintiff"** means the plaintiff in the Derivative Actions.

(b)     **"Derivative Plaintiff's Counsel"** means:

William B. Federman
Federman & Sherwood
120 N. Robinson Avenue – Suite 2720
Oklahoma City, Oklahoma 73102

John G. Emerson

7

Scott E. Poynter
Emerson Poynter LLP
1509 Louisiana, Suites C&D
Little Rock, Arkansas 72202-5094

S. Gene Cauley
Cauley Geller Bowman & Rudman LLP
P.O. Box 25438
Little Rock, AR 72221-5438

Joseph Rosenthal
Rosenthal, Monhait, Gross & Goddess, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801

Brian Murray
Eric J. Belfi
Rabin Murray & Frank, LLP
275 Madison Avenue
New York, NY 10016

(c)     **"Order of Final Judgment and Dismissal"** means an order of the Court approving this Derivative Stipulation and dismissing the Federal Derivative Action in substantially the form annexed hereto as Exhibit C.

(d)     **"Released Parties"** means any and all of the Settling Individual Defendants and their respective predecessors, successors, affiliates, officers, attorneys, agents, insurers and assigns, any professional partnerships of which any Settling Individual Defendant is a partner and each partner in such partnership, all other current and former officers and directors of CA, and CA as Nominal Defendant.

(e)     **"Securities Class Stipulation"** means the Stipulation and Agreement of Settlement of Securities Class Actions with CA Defendants entered by the parties in the Securities Class Actions.

8

(f)    **"Settlement"** means the settlement contemplated by this Derivative Stipulation.

(g)    **"Settled Derivative Claims"** means all claims, rights, demands, suits, matters, issues or causes of action, including both known and Unknown Claims, that have been or could have been asserted by CA or derivatively on behalf of CA in the Derivative Actions by Derivative Plaintiff, by CA, or by any CA shareholder against the Released Parties including, without limitation, claims based upon, arising out of or relating to the acts, facts or events alleged in the Derivative Actions, claims asserted in the Demand Letter, claims for breach of fiduciary duty, breach of CA's policies or procedures, waste, mismanagement, violations of law, money damages or other relief, claims based upon or relating to the claims asserted in the Securities Class Actions and claims based upon, arising out of or relating to this Settlement or the Settlement of the Securities Class Actions and the ERISA Actions.

(h)    **"Settling Individual Defendants"** means Russell M. Artzt, Willem F. P. de Vogel, Richard A. Grasso, Lewis S. Ranieri, Alfonse A. D'Amato, Shirley Strum Kenny, Sanjay Kumar, Roel Pieper and Charles B. Wang.

(i)    **"Shareholders"** means any registered or beneficial holders of CA common stock as of five business days after the entry of the Preliminary Order, as defined herein.

(j)    **"Unknown Claims"** means any and all Settled Derivative Claims which CA, Derivative Plaintiff or any other CA Shareholder does not know or suspect to exist in his, her or its favor at the time of the release of the Released Parties, which if known by him, her or it

9

might have affected his, her or its decision(s) with respect to the Settlement. With respect to any and all Settled Derivative Claims, the parties stipulate and agree that, upon the Effective Date, Plaintiff and Settling Individual Defendants shall expressly, and each CA Shareholder shall be deemed to have, and by operation of the Order and Final Judgment and Dismissal shall have, expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principal of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Plaintiffs and the Individual Settling Defendants acknowledge, and the other CA Shareholders by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Settled Derivative Claims was separately bargained for and was a key element of the Settlement.

## SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Derivative Stipulation shall be in full and final disposition of the Derivative Actions and any and all Settled Derivative Claims as against all Released Parties.

3.    Upon the Effective Date of this Settlement, Plaintiff and CA shareholders, derivatively on behalf of CA, and CA, on their own behalf and on behalf of their respective predecessors, successors, affiliates, heirs, executors, administrators, successors and assigns, and

10

any persons they represent, for good and valuable shall, by operation of the Order of Final

Judgment and Dismissal, release and be deemed to release and forever discharge, and shall

forever be enjoined from prosecuting, any Settled Derivative Claims and/or Unknown Claims

against any of the Released Parties including, without limitation, any claim relating to the parties

entry into this Settlement. In addition, upon the Effective Date of this Settlement, the Settling

Individual Defendants shall, by operation of the Order of Final Judgment and Dismissal, release

and be deemed to release and forever discharge, and shall forever be enjoined from prosecuting,

any and all claims or potential claims they may have from or through the Derivative Actions

against Derivative Plaintiff and Derivative Plaintiff's Counsel.

## THE SETTLEMENT CONSIDERATION

4.      In full and final settlement of the Derivative Actions, the Board of Directors of

CA has agreed to cause CA to maintain extensive new corporate governance initiatives entered

and implemented since the commencement of the Delaware Derivative Action and to adopt,

additional measures, all which are set forth in Exhibit A hereto.

## ATTORNEYS' FEES AND EXPENSES

5.      At any time following execution of this Derivative Stipulation, Derivative

Plaintiff's Counsel may make application to the Court for an award of attorneys' fees and

expenses relating to the Derivative Actions (the "Derivative Action Fees and Expenses") in an

amount not to exceed 81,000 Settlement Shares, as defined in the Securities Class Stipulation.

Up to that amount, defendants agree not to oppose Derivative Plaintiffs' Counsel's application.

Payment of any award of Derivative Action Fees and Expenses shall not be made prior to, and is

~Bost1:284159.v6 |8/25/03
220603-97

contingent upon, the Effective Date of this Settlement occurring as set forth in paragraph __

below, and shall be made pursuant to the procedures set forth in paragraphs 6 and 7 of the

Securities Class Stipulation. Payment of any award of Derivative Action Fees and Expenses

shall be made to Federman & Sherwood as agent for Derivative Plaintiff's Counsel, and

defendants shall have no responsibility for the allocation of such Derivative Action Fees and

Expenses.

6.      The award of any Derivative Action Fees and Expenses is not a necessary term of

this Derivative Stipulation and it is not a condition of this Derivative Stipulation that Derivative

Plaintiff's Counsel's petition for such fees and expenses be approved by the Court. The

procedure for and the allowance or disallowance by the Court of any application by Derivative

Action Fees and Expenses to be paid out of the Settlement Shares, are not part of the Settlement

set forth in this Derivative Stipulation, and are to be considered by the Court separately from the

Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in

this Derivative Stipulation, and any order or proceedings relating to the application for attorneys'

fees and expenses, or any appeal from any order relating thereto or reversal or modification

thereof, shall not operate to terminate or cancel this Derivative Stipulation, or affect or delay the

finality of the Order and Final Judgment of Dismissal approving this Derivative Stipulation, the

Effective Date, or the settlement of the Derivative Action set forth herein or the Securities Class

Actions or the ERISA Action.

12

## PROCEDURE FOR APPROVAL

7.     For purposes of Settlement and this Derivative Stipulation only, the Derivative Actions shall be considered properly maintained as derivative actions under Rule 23.1 of the Federal Rules of Civil Procedure by Derivative Plaintiff on behalf of CA.

8.     (a)     Promptly upon the execution of this Derivative Stipulation, the parties shall jointly apply to the Court for entry of a Preliminary Order in Connection with Settlement Proceedings (the "Preliminary Order") substantially in the form annexed hereto as Exhibit B.

(b)     On or before the dates set forth in the Preliminary Order, (i) a joint notice substantially in the form annexed as Exhibit 1 to Exhibit B (the "Notice"), describing this Derivative Stipulation, the Securities Class Stipulation and the ERISA Stipulation and advising CA Shareholders of the scheduling of a hearing (the "Hearing") to consider the settlement of the Derivative Actions as set forth in this Derivative Stipulation, shall be mailed to CA Shareholders pursuant to Rule 23.1 of the Federal Rules of Civil Procedure in the manner provided for in the Preliminary Order, and (ii) a summary notice substantially in the form attached as Exhibit 2 to Exhibit B (the "Summary Notice") shall be published once in the national edition of The Wall Street Journal.

(c)     The cost of the Notice of the Settlement and the Summary Notice and related expenses shall be payable from the Notice and Administration Fund established by paragraph 6(a) of the Securities Class Stipulation.

13

9.      The parties shall jointly move the Court following notice and the hearing to enter

an Order of Final Judgment and Dismissal substantially in the form annexed hereto as Exhibit C,

and shall take such other action as may be necessary to effect the dismissal of the Derivative

Actions. As more fully provided in paragraphs 10 and 11 hereof, this Settlement shall not

become effective until the events specified in paragraph 10 have occurred and the time for

extending the termination rights specified in paragraph 11 has expired.

## EFFECTIVE DATE OF SETTLEMENT, WAIVER OR TERMINATION

10.     The Effective Date of this Settlement shall be the date when all of the following

shall have occurred:

(a)     entry of the Preliminary Order;

(b)     approval of the Court of this Settlement, following notice and the Hearing,

as prescribed by Rule 23.1 of the Federal Rules of Civil Procedure;

(c)     entry by the Court of an Order of Final Judgment and Dismissal, in all

material respects in the form set forth in Exhibit C annexed hereto (with only such changes in

form as may be accepted by Derivative Plaintiff and Settling Individual Defendants), and the

expiration of any time for appeal or review of such Order of Final Judgment and Dismissal, or, if

any appeal is filed and not dismissed, after such Order of Final Judgment and Dismissal is

upheld on appeal in all material respects and is no longer subject to review upon appeal or

review by writ of certiorari;

14

(d)    entry by the Delaware Court of an order dismissing the Delaware Derivative Action in light of this Settlement and the Order of Final Judgment and Dismissal, and the expiration of any time for appeal or review of such order of dismissal of the Delaware Derivative Action, or, if any appeal is filed, and not dismissed, after such order of dismissal of the Delaware Derivative Action is upheld on appeal in all material respects and is no longer subject to review an appeal or by review by writ of certiorari;

(e)    entry of an Order and Final Judgment in the Securities Class Actions and the expiration of any time for appeal or review, or, if any such appeal is filed and not dismissed, after the approval of the fairness, reasonableness and adequacy of the Securities Class Actions settlement is upheld on appeal and is no longer subject to review by writ of certiorari.

11.    Settling Individual Defendants and Derivative Plaintiff shall each have the right to terminate the Settlement and this Derivative Stipulation by providing written notice of their election to do so ("Termination Notice") to all other parties hereto within thirty (30) days of (a) the Court's declining to enter the Preliminary Order in any material respect; (b) the Court's refusal to approve this Derivative Stipulation or any material part of it or to enter the Order of Final Judgment and Dismissal in any material respect; (c) the refusal of the Delaware Court to dismiss the Delaware Derivative Action; (d) the date upon which the Order of Final Judgment and Dismissal is modified or reversed in any material respect. Settling Individual Defendants shall also have the right to terminate the Settlement and this Derivative Stipulation by providing Termination Notice to all other parties hereto within thirty (30) days of: (a) the refusal of the Court to approve the Securities Class Stipulation and/or the ERISA Stipulation or to enter the Orders and Final Judgments in the Securities Class Actions and/or the ERISA Action; or (b) the

15

date on which the Orders and Final Judgments in the Securities Class Actions and/or ERISA Action are modified or reversed in any material respect.

12.    Except as otherwise provided herein, in the event the Settlement is terminated or fails to become effective for any reason, then the parties to this Derivative Stipulation shall be deemed to have reverted to their respective status before entering into the Derivative Stipulation and, except as otherwise expressly provided, the parties shall proceed in all respects as if this Derivative Stipulation and any related orders had not been entered.

## NO ADMISSION OF WRONGDOING

13.    It is expressly understood, whether or not this Derivative Stipulation is finally approved, that acceptance and execution of this Derivative Stipulation by the parties and all negotiations, documents, statements and proceedings in connection herewith, (a) shall not be construed as, or deemed to be, an admission or concession on the part of any of the parties; (b) except as described in this paragraph, shall not be offered or received in evidence in any action or proceeding in any court or other tribunal or offered, used or deemed in any way as an admission, concession or evidence of any liability, fault, wrongdoing or misconduct of any nature, or weakness or lack of merit of any claim or defense, by any of the parties; provided, however, that nothing herein shall prevent any of the parties from using this Derivative Stipulation, or any document or instrument delivered hereunder, or any negotiations, documents, statements, transactions or proceedings related thereto:

(a)    as necessary to effectuate the Settlement contemplated herein;

16

(b)    to effect or obtain Court approval of the Settlement contemplated herein;

(c)    to enforce the terms of this Derivative Stipulation;

(d)    for purposes of defending, on the grounds of res judicata, collateral estoppel, release, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, any Settled Derivative Claim asserted against any of the parties or any party released pursuant to this Settlement; or

(e)    as otherwise required by law.

## RELEASE AND BAR ORDER

14.    It is an important element to the Settling Individual Defendants' participation in this Settlement that they and the Released Parties obtain the fullest possible release from further liability to anyone relating to the Settled Derivative Claims, and it is the intention of the parties to this Derivative Stipulation that the Settlement documented herein eliminate all further risk and liability of the Released Parties relating to the Settled Claims. Accordingly, the parties agree:

(a)    In accordance with paragraph 3 hereof, Derivative Plaintiff, CA Shareholders and CA will release and be deemed to release the Released Parties from all Settled Derivative Claims.

(b)    In accordance with this Derivative Stipulation, the Order of Final Judgment and Dismissal shall provide for the dismissal of the Settled Derivative Claims with prejudice as to the Released Parties pursuant to F. R. Civ. P. 54(b).

17

(c)    The Order of Final Judgment and Dismissal entered by the Court in connection with the Settlement of the Derivative Actions shall bar all claims for contribution against the Released Parties (the "Bar Order").

(d)    The Order of Final Judgment and Dismissal entered by the Court in connection with this Settlement of the Derivative Actions shall also, in accordance with otherwise applicable federal and state law (including, without limitation, 10 Del. C. § 6304(b) and N.Y. Gen. Oblig. Law § 15-108(b)), bar all claims, however styled, whether for indemnification, contribution or otherwise, based upon, arising out of or relating to the Settled Derivative Claims which may be asserted by any Non-Settling Defendant against any of the Released Parties, whether arising under federal, state or common law (the "Complete Bar Order"). Pursuant to 10 Del. C. § 6304(b), to the extent applicable, any claim against any Non-Settling Defendant shall be reduced to the extent of the pro rata share of the Released Parties.

(e)    Derivative Plaintiff will not settle any claim against any Non-Settling Defendant without obtaining from such Non-Settling Defendant the release of any claim such Non-Settling Defendant may have against any of the Released Parties based upon, arising out of or relating to the claims asserted by Derivative Plaintiff against such Non-Settling Defendant, provided that each Settling Individual Defendant shall execute a release in favor of such Non-Settling Defendant which shall be identical in scope to the aforesaid release from such Non-Settling Defendant in favor of the Settling Defendant. The provisions of this paragraph are intended to comply with applicable federal and state law (including 10 Del.C. § 6304(b) and N.Y. Gen. Oblig. Law § 15-108(b)) so as to preclude any liability of the Released Parties to any Non-Settling Defendant for contribution, indemnification or otherwise on any claim based upon,

18

arising out of, or relating to the Settled Derivative Claims, and any provision hereof inconsistent with the requirements of such law shall be void and of no consequence and in place thereof it is agreed to substitute such other provision, if any, as may be necessary to afford the Released Parties the fullest protection from such claims permitted by law. For purposes of this paragraph 13 only, "Non Settling Defendant" shall include any person who Derivative Plaintiff or any shareholder on behalf of CA may hereafter sue on any claim based upon, relating to or arising out of the Settled Derivative Claims.

## MISCELLANEOUS PROVISIONS

15.     This Derivative Stipulation may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which shall constitute one and the same document.

16.     All persons executing this Derivative Stipulation thereby represent that they have been authorized and empowered to do so.

17.     The parties to this Derivative Stipulation and their attorneys agree to cooperate fully with one another in seeking Court approval of this Derivative Stipulation, including in connection with any appeals, and to use their reasonable best efforts to consummate this Derivative Stipulation.

18.     All notices required to be furnished to Derivative Plaintiff's Counsel under this Derivative Stipulation shall be furnished to William B. Federman, Federman & Sherwood, 120 N. Robinson Avenue – Suite 2720, Oklahoma City, Oklahoma 73102.

19

19.     All notices required to be furnished to CA or the Settling Individual Defendants or their counsel under this Derivative Stipulation, shall be furnished to David E. Nachman, Piper Rudnick LLP, 1251 Avenue of the Americas, New York, NY 10020-1104, and James M. McGuire, White & Case, 1155 Avenue of the Americas, New York, NY 10036.

20.     This Derivative Stipulation and the Exhibits hereto embody and represent the full agreement of the parties, and supersede any and all prior agreements and understandings relating to the subject matter hereof between or among any of the parties hereto, and shall not be modified unless such modification is in writing and executed by counsel for the parties.

21.     Without further Order of the Court, the parties hereto may agree to reasonable extensions of time to carry out any of the provisions of this Derivative Stipulation.

22.     The construction and interpretation of this Derivative Stipulation shall be governed by and construed in accordance with the laws of New York and without regard to the laws that might otherwise govern under principles of conflicts of laws applicable thereto.

FEDERMAN & SHERWOOD

By: _____
        William B. Federman (WF-9124)
        120 N. Robinson Avenue – Suite 2720
        Oklahoma City, Oklahoma 73102
        (405) 235-1560

        John G. Emerson
        Scott E. Poynter
        EMERSON POYNTER LLP
        1509 Louisiana, Suites C&D
        Little Rock, Arkansas 72202-5094

20

S. Gene Cauley
CAULEY GELLER BOWMAN & RUDMAN LLP
P.O. Box 25438
Little Rock, AR 72221-5438

Joseph Rosenthal
ROSENTHAL, MONHAIT, GROSS &
GODDESS, P.A.
919 N. Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19801

Brian Murray
Eric J. Belfi
RABIN MURRAY & FRANK, LLP
275 Madison Avenue
New York, NY 10016

Counsel for Derivative Plaintiff

PIPER RUDNICK LLP

By:_____
        David E. Nachman (DN-6684)
1251 Avenue of the Americas
New York, NY 10020-1104
(212) 835-6000

Counsel for Settling Individual Defendants

21

8-26-03:11:47AM;                                    :16313424866              #  2/  2

Steven M. Woghin, Esq.

By: _____
    Steven M. Woghin (SW-1103)
Senior Vice President and General Counsel
Computer Associates International, Inc.
One Computer Associates Plaza
Islandia, NY 11749


Counsel for Computer Associates International, Inc.
    as Nominal Defendant

22

 **YAHOO! FINANCE** <u>Search</u> - <u>Finance Home</u> - <u>Yahoo!</u> - <u>Help</u>

 **Associated Press**

**Welcome** [Sign In]

To track stocks & more, <u>Register</u>

## Financial News

Enter symbol(s)            Basic            [ Get ]    <u>Symbol Lookup</u>

 **HARRISdirect..** Open an account, get $100

### Associated Press
# Computer Associates Restates Results
Monday April 26, 5:20 pm ET

### Computer Associates Restates Results From 2000 and 2001, Names Interim Chief Executive

ISLANDIA, N.Y. (AP) -- Hoping to move past an accounting scandal that forced its chief executive to resign, Computer Associates International Inc. restated financial results from 2000 and 2001 on Monday to reflect $2.2 billion in revenue that was improperly booked.

ADVERTISEMENT


The software maker also continued to shake up its management, confirming that director Kenneth Cron had been named interim chief executive and installing former Compaq Computer Corp. executive Jeff Clarke as chief operating officer.

Cron, a former head of Vivendi Universal's games division, said he would serve as CEO on an interim basis only. Clarke, who had been named CFO this month, said he would now seek a replacement for that role.

New chairman Lewis Ranieri said Computer Associates has spent $30 million investigating its accounting practices and responding to inquiries from U.S. regulators and federal prosecutors.

The board has acknowledged that CA inflated revenue by closing quarterly books a few days late -- a stretch that has been called a "35-day month" -- but has said the practices do not continue.

Four former executives have pleaded guilty to fraud or obstruction of justice, including former chief financial officer Ira Zar. Nine other vice presidents and managers were fired last week, and Sanjay Kumar was forced to step down as chairman and CEO. He remains with the company as "chief software architect."

Monday's moves provide the company "with a basis for moving forward and renewing our commitment to achieving best practices in financial accounting and reporting," Clarke said in a conference call with analysts. He reiterated that the company "effectively eliminated the 35-day month issue."

The adjustments affect 2000 and 2001 and no periods since, the company said.

### Related Quotes


| | | |
|---|---|---|
| CA | 26.34 | -0.52 | News |
| V | 24.15 | -0.79 | News |

**View Detailed Quotes**
Delayed 20 mins
Quote data provided by Reuters

### Related News Stories

- [external] Rash of Activism at Staples - at Motley Fool (11:30 am)
- Bill Cosby to Speak at caworld - PR Newswire (9:00 am)
- [$$] Computer Associates Delays 4th-Quarter Earnings Report - The Wall Street Journal Online (Thu May 6)
- [$$] ACS Tries the Big Leagues - The Wall Street Journal Online (Thu May 6)

More...

- By industry: Software, Telecom

### Top Stories

- Judge: $289 Billion Tobacco Case to Trial - Reuters (12:13 pm)
- Krispy Kreme Warns, Stock Drops 25 Pct - Reuters (1:05 pm)
- IMF's Rato Urges Action on U.S. Deficits - Reuters (Wed May 5)
- U.S. Decision on Gas Waivers Needed Soon - Reuters (Wed Apr 21)

More...

- More Associated Press
- Most-emailed articles
- Most-viewed articles


EXHIBIT "B"

A total of $1.78 billion was prematurely recognized in fiscal 2000 and $445 million in fiscal 2001, the company said. The figure for 2000 was more than the $1.4 billion that the Securities and Exchange Commission has cited; CA said its internal investigation discovered additional contracts that were improperly booked.

But because the accounting shift moved sales from one period to another rather, the overall impact on results was small.

The company's $696 million net income for 2000 was unchanged. Revenue was cut by $2 million to $6.092 billion.

The restatement cut the company's fiscal 2001 loss by more than half, to $258 million from the previously reported loss of $591 million. Its 2001 revenue increased $558 million from $4.19 billion to $4.75 billion.

Shares of Computer Associates were up 75 cents to close at $29.17 on the New York Stock Exchange.

http://ca.com

Email this story - Set a News Alert

Search News

Sponsored Links

NASDAQ-100 Index Tracking Stock: QQQ
The QQQ prospectus contains complete information - including potential risks, charges and expenses, and should be read carefully before investing. Complete our simple request form online.
www.nasdaq.com

TD Waterhouse Stock Brokerage Services
TD Waterhouse offers a full range of brokerage, banking, retirement and mutual fund products and services. Open a new account and take control of your finances today.
www.tdwaterhouse.com

Stock Market Performance Program
Averaging +43.2% annually, Index-Timing achieves remarkable performance consistency by profiting from short-term price swings. Learn how to participate in this proven management system.
www.index-timing.com

(What's This?)

Like news? See job openings at Yahoo! Finance

Copyright © 2004 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2004 The Associated Press. All rights reserved. The information contained in the AP News report may not be published, broadcast, rewritten, or redistributed without the prior written authority of The Associated Press.