**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

|  |  |  |
|---|---|---|
| IN RE SONUS NETWORKS, INC. SHAREHOLDER DERIVATIVE LITIGATION | )<br>)<br>)<br>)<br>) | Case No. 04-10359-DPW |

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ...................................................................................................................2

    I.      The Parties...........................................................................................................2

    II.    Sonus' Disclosure and Investigation of Accounting Irregularities.........................2

    III.   Procedural Context ..............................................................................................3

ARGUMENT.........................................................................................................................4

    I.      Plaintiffs Are Collaterally Estopped From Relitigating The Futility of
          Demand on Sonus' Board of Directors ....................................................................4

          A.     The Issue Of Whether Demand Is Excused Was Already Litigated
                  And Decided ...........................................................................................5

          B.     Judge van Gestel's Decision That Demand Is Not Excused Was
                  Essential To A Valid Final Judgment .........................................................6

          C.     Plaintiffs in the Federal and State Actions Are In Privity ...........................7

    II.    The Complaint Fails To Plead Demand Futility Under Rule 23.1 Adequately .......8

          A.     The Standard for Demand Futility .............................................................8

          B.     The Plaintiffs Fail to Allege Particularized Facts Establishing A
                  Reasonable Doubt That A Majority Of The Sonus Board Is
                  "Interested".............................................................................................10

                1.    Conclusory Allegations That Defendants Engaged In
                        Misconduct And Thus Would Not Sue Themselves Do Not
                        Demonstrate Interest Sufficient To Excuse Demand .........................11

                 2.    Allegations Of A Single Stock Sale By A Single Director
                        Defendant Are Inadequate To Excuse Demand .................................14

                 3.    The Exculpation Clause in the Sonus Charter Eliminates A
                        "Substantial Likelihood" of Liability On the Part of Majority of
                        the Sonus Board.................................................................................16

          C.     The Plaintiffs Fail to Allege Particularized Facts Establishing A
                    Reasonable Doubt That A Majority Of The Sonus Board "Lacks
                    Independence".........................................................................................18

i

1.  Conclusory Allegations That Defendants Ferri And Severino Control The Other Defendants' Compensation Are Inadequate To Excuse Demand ............................................................18

2.  Vague Allegations About Defendants' Personal and Business Relationships Are Inadequate To Excuse Demand ...........................19

CONCLUSION...........................................................................................20

# TABLE OF AUTHORITIES

## Federal Cases

Bazata v. Nat'l Ins. Co.,
    400 A.2d 313 (D.C. Cir. 1979) ..................................................................... 6

Blatt v. Muse Techs, Inc.,
    No. Civ.A. 01-11010-DPW, 2002 WL 31107537 (D. Mass. Aug 27, 2002) ........................ 15

Boateng v. InterAmerican Univ., Inc.,
    210 F.3d 56 (1st Cir. 2000)...................................................................... 16

Cramer v. Gen. Tel. & Elec. Corp.,
    582 F.2d 259 (3d Cir. 1978)...................................................................... 7

Dellastatious v. Williams,
    242 F.3d 191 (4th Cir. 2001) .................................................................... 17

Gerrity v. Chapin,
    No. 79 Civ. 2393, 1980 WL 1364 (S.D.N.Y. Jan. 9, 1980)........................................ 7

Kamen v. Kemper Fin. Servs.,
    500 U.S. 90 (1991)............................................................................. 8, 9

In re Kauffman Mut. Fund Actions,
    479 F.2d 257 (1st Cir. 1973).................................................................... 5, 6

Keystone Shipping Co. v. New England Power Co.,
    109 F.3d 46 (1st Cir. 1997)..................................................................... 4, 5

La Grasta v. First Union Sec., Inc.,
    358 F.3d 840 (11th Cir. 2004) .................................................................. 15

Lebron-Rios v. U.S. Marshal Serv.,
    341 F.3d 7 (1st Cir. 2003)...................................................................... 6

Lewis v. Graves,
    701 F.2d 245 (2d Cir. 1983)..................................................................... 11

MacAlister v. Guterma,
    263 F.2d 65 (2d Cir. 1958)...................................................................... 8

McCall v. Scott,
    239 F.3d 808 (6th Cir. 2001) ............................................................... 14, 15, 17

MSM Indus., Inc. v. Zurich Am. Ins. Cos.,
    C.A. No. 93-12014-NG, 1997 WL 260059 (D. Mass. Mar. 25, 1997)................................. 7

Muniz Cortes v. Intermedics, Inc.,
   229 F.3d 12 (1st Cir. 2000) ........................................................................................ 6

Nathan v. Rowan,
   651 F.2d 1223 (6th Cir. 1981) .................................................................................... 7

In re Nike, Inc. Sec. Litig.,
   181 F. Supp. 2d 1160 (D. Or. 2002) ......................................................................... 15

NLRB v. Donna-Lee Sportswear Co.,
   836 F.2d 31 (1st Cir. 1987) ........................................................................................ 7

In re Party City Sec. Litig.,
   147 F. Supp. 2d 282 (D. N.J. 2001) ......................................................................... 15

Ruskay v. Jensen,
   342 F. Supp. 264 (S.D.N.Y. 1972) ............................................................................. 7

Saez Rivera v. Nissan Mfg. Co.,
   788 F.2d 819 (1st Cir. 1986) ....................................................................................... 6

In re Sagent Tech., Inc., Deriv. Litig.,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) .................................................................... 19

Shallal v. Elson,
   No. 98-8739, 1999 U.S. Dist. LEXIS 23368 (S.D. Fla. April 12, 1999) ................... 8

In re Silicon Graphics Inc. Sec. Litig.,
   183 F.3d 970 (9th Cir. 1999) .................................................................................... 12

In re Stone & Webster, Inc., Sec. Litig.,
   253 F. Supp. 2d 102 (D. Mass. 2003) ....................................................................... 15

Stoner v. Walsh,
   772 F. Supp. 790 (S.D.N.Y. 1991) ........................................................................... 13

In re Strangie,
   192 F.3d 192 (1st Cir. 1999) ....................................................................................... 5

In re Vantive Corp. Sec. Litig.,
   283 F.3d 1079 (9th Cir. 2002) .................................................................................. 15

State Cases

Aronson v. Lewis,
   473 A.2d 805 (Del. 1984) ...................................................................................passim

iv

In re Baxter Int'l, Inc. S'holders Litig.,
    654 A.2d 1268 (Del. Ch. 1995) ........................................................................ 16, 18

Beam v. Stewart,
    833 A.2d 961 (Del. Ch. 2003) ................................................................................ 19

Beam v. Stewart,
    845 A.2d 1040 (Del. 2004) ............................................................... 9, 10, 18, 19

Brehm v. Eisner,
    746 A.2d 244 (Del. 2000) ................................................................... 9, 11, 18

Caruana v. Saligman,
    Civ. A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) ............................ 13

In re Caremark Int'l Inc. Deriv. Litig.,
    698 A.2d 959 (Del. Ch. 1996) ................................................................................ 17

Decker v. Clausen,
    Civ. A. Nos. 10,684, 10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) ................ 13

Gagliardi v. TriFoods Int'l, Inc.,
    683 A.2d 1049 (Del. Ch. 1996) ............................................................................ 11

Grable v. Warren Hawkins Post of Am. Legion,
    592 S.E.2d 502 (Ga. App. 2003) ............................................................................ 6

Green v. Phillips,
    C.A. No. 14436, 1996 WL 342093 (Del. Ch. June 19, 1996) ................................ 20

Grimes v. Donald,
    673 A.2d 1207 (Del. 1996) .................................................................................... 11

Guttman v. Huang,
    823 A.2d 492 (Del. Ch. 2003) ....................................................... 13, 14, 17, 18

Haber v. Bell,
    465 A.2d 353 (Del. Ch. 1983) ................................................................................ 12

Kaufman v. Belmont,
    479 A.2d 282 (Del. Ch. 1984) ................................................................................ 9

Kohls v. Duthie,
    765 A.2d 1274 (Del. Ch. 2000) ............................................................................ 20

O'Brien v. Hanover Ins. Co.,
    692 N.E.2d 39 (Mass. 1998) .................................................................................... 7

v

Rales v. Blasband,
    634 A.2d 927 (Del 1993) ............................................................................ 9, 10, 11

Rattner v. Bidzos,
    No. Civ.A. 19700, 2003 WL 22284323 (Del. Ch. Sept. 30, 2003)........................................... 14

Schnitzer v. O'Connor,
    653 N.E.2d 825 (Ill. App. Ct. 1995) ................................................................................ 7

Seminaris v. Landa,
    662 A.2d 1350 (Del. Ch. 1995)................................................................................ 12, 16

Sena v. Commonwealth,
    629 N.E.2d 986 (Mass. 1994) ................................................................................ 5

## Federal Statutes

15 U.S.C. § 7243(a) ............................................................................ 13

18 U.S.C. § 1350(c) ............................................................................ 13

28 U.S.C. § 1738................................................................................ 4

## Federal Rules

Fed. R. Civ. P. 23.1 ............................................................................ 9

## State Statutes

8 Del. Code § 102(b)(7) ............................................................................ 16

## INTRODUCTION

Plaintiffs in this action are among several purported shareholders of Sonus Networks, Inc. ("Sonus" or the "Company") who have brought derivative suits against several of Sonus' officers and directors. Before bringing derivative actions, these shareholders were required to make demand on Sonus' Board of Directors. Plaintiffs, like the other shareholders before them, failed to make demand on the Board, insisting instead that such demand should be excused as futile. Just like the shareholders before them, they have failed to show that demand is excused in this case, and accordingly the Complaint should be dismissed with prejudice.

First, the issue of whether the Sonus Board was capable of considering demand has already been litigated and decided. Judge van Gestel of the Massachusetts Superior Court recently dismissed virtually identical derivative complaints, holding that "demand has not been shown to be excused in these cases." Plaintiffs in this case, like those in the case before Judge van Gestel, assert corporate claims belonging to Sonus, and accordingly are precluded from relitigating the identical issue that has already been decided.

Second, even if Plaintiffs' allegations of demand futility are considered, they suffer from the same deficiencies as the allegations considered and rejected by Judge van Gestel. Plaintiffs fail to allege particularized facts showing that a majority of the Sonus Board of Directors is incapable of considering demand, relying instead on the type of generalized, conclusory allegations that are consistently rejected.

## BACKGROUND

### I.      The Parties

Sonus, a Delaware corporation headquartered in Massachusetts, is a provider of voice infrastructure solutions that enable voice services to be delivered over packet-based networks. (Compl. ¶¶ 1, 13.)

Plaintiffs, purportedly Sonus shareholders, have brought this derivative suit against six of Sonus' seven directors, ***five of whom were outside directors at the time the complaint was filed***: outside directors Edward T. Anderson, Paul J. Ferri, Albert A. Notini[1], Paul J. Severino[2] and inside directors, Hassan Ahmed (also the Company's President and C.E.O.) and Rubin Gruber (one of the Company's founders) (collectively, the "Director Defendants").  The Complaint also names as defendants Paul R. Jones (the Company's V.P. of Engineering), Edward N. Harris (the Company's V.P. of Manufacturing), J. Michael O'Hara (the Company's former V.P. of Marketing), and Stephen J. Nill (the Company's former C.F.O. and V.P. of Finance).

### II.     Sonus' Disclosure and Investigation of Accounting Irregularities

On January 20, 2004, Sonus announced that it was delaying the release of its financial results for the fourth quarter and year 2003 pending completion of its 2003 audit.  (Id. ¶ 61.) Thereafter, on February 11, 2004, Sonus issued a press release announcing that it had identified actions of certain employees that might affect its previous financial statements; that it was undertaking a detailed review of certain financial statement accounts; that the Company had terminated certain non-executive employees; that its Audit Committee was conducting an

---

[1]      Albert Notini joined Sonus' management team in April 2004, and he was an outside director during the time period relevant to the Complaint and at the time the Plaintiffs first filed suit.  (Compl. ¶ 16.)

[2]      Plaintiffs have not sued the fifth outside director, Brian Thompson (see Compl. ¶20.), thereby conceding his independence and disinterestedness.

independent investigation; and that Sonus had notified the SEC of that investigation (the "February 11 Announcement").  (Id. ¶¶ 2, 62.)

In the ensuing months, Sonus conducted a detailed review of certain financial statement accounts, and the Audit Committee conducted its internal investigation, giving the public periodic status reports.  (Id. ¶¶ 64, 65, 68, 71.)  On July 19, 2004, the Company announced that it had completed the review of its financial statements and that the Audit Committee had completed its internal investigation. (Id. ¶ 74.)  The Company then filed a Form 10K/A  with the SEC, restating its financial results for fiscal years 2001 and 2002 and the first three quarters of fiscal year 2003. (Id. ¶ 75.)  The Company also reported that it had, in connection with the restatement, identified material weaknesses in the Company's internal controls.  (Id. ¶ 77.)

## III.    Procedural Context

Approximately one week after the February 11 Announcement, on February 20, 2004, the first of five derivative lawsuits was filed against certain of Sonus' officers and directors.  The first two of these actions were filed in Massachusetts Superior Court on February 20, 2004 (the "State Actions") and assigned to the Business Litigation Session.  See Verified Shareholder Derivative Complaint, Palma v. Ahmed, et al., 04-0753-BLS (Mass. Super. Ct. Feb. 20, 2004) ("State Complaint") (attached to Transmittal Affidavit of Daniel H. Gold ("Trans. Aff.") as Exhibit A).[3]  The remaining three derivative actions were filed in the United States District Court for Massachusetts on February 23, February 26 and March 24, 2004 (the "Federal Actions").[4] On March 22, 2004, Defendants moved to dismiss the State Actions based on a failure to make demand on the Board prior to the filing of the State Complaint.

---

[3]        The State Actions are captioned as follows: (1) Palma v. Ahmed, et al., 04-0753-BLS; and (2) Tillman v. Ahmed, et al., 04-0754-BLS.  The cases were later consolidated under the caption In re Sonus Networks, Inc., Deriv. Litig., 04-0753-BLS.

[4]        The three Federal Actions were captioned as follows: (1) Williams v. Ahmed, et al., 04-CV-10359; (2) Burk v. Ahmed, et al., 04-CV-10384; and (3) Pisnoy v. Ahmed, et al., 04-CV-10576.

On June 28, 2004, this Court consolidated the three Federal Actions, and stayed the case pending a ruling by Judge van Gestel on Defendants' motion to dismiss the State Actions. <u>See</u> June 28, 2004 Order, Docket Entry #25. The Court subsequently permitted the filing of a consolidated complaint, but also suggested that the Defendants address at the time of their responsive pleading whether the State Actions had been resolved. <u>See</u> Transcript of August 10, 2004 Hearing, Docket Entry #31.

The State Actions have since been resolved. On September 27, 2004, Judge van Gestel dismissed the State Actions without leave to amend, finding that "demand has not been shown to be excused in these cases." <u>In re Sonus Networks, Inc. Deriv. Litig.</u>, Memorandum and Order on Motions to Dismiss, at 9 (Mass. Super. Ct. Sept. 27, 2004) ("State Court Order") (Trans. Aff. Exhibit B). As made plain in Exhibit A to this Memorandum, which contains a comparison of the demand futility allegations made in the Federal and State Complaints, Judge van Gestel rejected the very same demand futility allegations asserted by Plaintiffs in this case.

## ARGUMENT

### I.    Plaintiffs Are Collaterally Estopped From Relitigating The Futility of Demand on Sonus' Board of Directors

Plaintiffs claim that they did not make demand on the Sonus Board to bring this action because such demand is excused as futile. (Compl. ¶ 110.) Judge van Gestel rejected this claim in the State Actions, and his decision precludes Plaintiffs – who are bringing this claim on behalf of Sonus, not in their own right – from relitigating this issue now.

The full faith and credit statute requires that this Court give the same preclusive effect to the judgment in the State Actions as would the state courts of Massachusetts. <u>See</u> 28 U.S.C. § 1738; <u>Keystone Shipping Co. v. New England Power Co.</u>, 109 F.3d 46, 50 (1st Cir. 1997). For the decision in the State Actions to have preclusive effect, three elements must be present: (1) the

same issue must have been actually litigated and decided; (2) the issue decided must have been

essential to a valid and binding final judgment; and (3) the party against whom preclusive effect

is asserted must have been either a party in the prior case or in privity with a party.  See In re

Strangie, 192 F.3d 192, 194 (1st Cir. 1999) (citing Sena v. Commonwealth, 629 N.E.2d 986, 992

(Mass. 1994)).[5]  All three elements are met here.

A.    **The Issue Of Whether Demand Is Excused Was Already Litigated And Decided**

Judge van Gestel's decision dismissing the State Actions turned on the same issue raised

in this case – whether the Sonus Board was capable of impartially considering demand at the

time that purported derivative litigation commenced.  In both the Federal and State Actions, none

of the plaintiffs chose to make demand on the Sonus Board before bringing suit, claiming instead

that such demand is excused as futile.  (See Compl. ¶ 110; State Complaint ¶ 63.)  As seen in

Exhibit A to this Memorandum, the Federal Complaint does not include any new reasons

purporting to show that a majority of the Sonus Board was incapable of considering demand.

The Complaint here relies on the same, conclusory allegations that Judge van Gestel considered

and rejected.  (See Exhibit A.)  Moreover, because the suits were filed at virtually the same time,

the question whether the Sonus Board could have impartially considered demand in the Federal

Actions is necessarily the same question as the one decided by Judge van Gestel.

The First Circuit has made clear that a plaintiff only gets one opportunity to demonstrate

demand futility, and that a decision on that issue precludes relitigation.  See In re Kauffman Mut.

Fund Actions, 479 F.2d 257, 267 (1st Cir. 1973).  In Kauffman, the First Circuit affirmed

dismissal of a derivative action for failure to plead demand futility.  In doing so, the court

clarified that the plaintiff would have no further opportunity to argue that demand was futile:

---

[5]      While Massachusetts law controls the issue preclusion question, the First Circuit has recognized that its cases apply the same preclusion principles as Massachusetts courts.  See Keystone Shipping, 109 F.3d at 50-51.

> In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is "without prejudice." This must mean without prejudice as to the substantive cause of action. ***The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint***. The principle applies that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action."

Id. at 267 (emphasis added).[6] Other courts similarly have precluded relitigation of demand futility issues under the rubric of res judicata (rather than collateral estoppel). See Bazata v. Nat'l Ins. Co., 400 A.2d 313, 313-16 (D.C. Cir. 1979) (plaintiff precluded from refiling where her previous complaint had been dismissed for failure to adequately plead that demand was excused); Grable v. Warren Hawkins Post of Am. Legion, 592 S.E.2d 502, 503 (Ga. App. 2003) (plaintiffs barred from refiling derivative lawsuit where previous complaint had been dismissed for failure to exhaust internal corporate remedies).[7]

### B.     Judge van Gestel's Decision That Demand Is Not Excused Was Essential To A Valid Final Judgment

Final judgment in the State Actions was entered on September 27, 2004, the same day Judge van Gestel issued his decision that demand was not excused in these cases. See In re Sonus Networks, Inc. Deriv. Litig., Judgment on Motion to Dismiss (Mass. Super. Ct. Sept. 27,

---

[6] In re Kauffman is consistent with First Circuit law barring plaintiffs from relitigating adverse rulings regarding other preconditions to sue. See Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 13 (1st Cir. 2003) (noting that dismissal would preclude relitigation of whether plaintiffs had failed to exhaust administrative remedies before filing their civil action under Title VII); Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14-15 (1st Cir. 2000) (dismissal by Puerto Rico commonwealth court for lack of subject matter jurisdiction "precludes relitigation [in Federal district court] of the issues determined in ruling on the jurisdictional question"); Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 (1st Cir. 1986) (dismissal for improper service precluded relitigation of propriety of same method of service).

[7] Defendants should not be misunderstood as arguing that Judge van Gestel's decision was "on the merits." Judge van Gestel decided only that it is up to the Sonus Board, not individual shareholders, to decide what claims (if any) the Company should assert. Therefore, if in the exercise of its business judgment, the Sonus Board decides to pursue any of these claims as being in the best interest of the company, it remains free to do so.

2004) (Trans. Aff. Exhibit C).  Plaintiffs cannot dispute that this finding was the basis for the

entry of judgment.[8]

### C.    Plaintiffs in the Federal and State Actions Are In Privity

Privity, for purposes of issue preclusion, requires a "relationship between two parties

which is sufficiently close so as to bind them both to an initial determination."  NLRB v. Donna-

Lee Sportswear Co., 836 F.2d 31, 34-35 (1st Cir. 1987).  As a matter of law, this relationship

exists here between the plaintiffs in the State and Federal Actions because they both sue on

behalf of Sonus, asserting claims belonging not to them as individuals, but to Sonus as a

corporation. Nathan v. Rowan, 651 F.2d 1223, 1226 (6th Cir. 1981) ("in shareholder derivative

actions arising under Fed.R.Civ.P. 23.1, parties and their privies include the corporation and all

nonparty shareholders.").[9]  Decisions in a derivative case brought by one shareholder are

therefore given preclusive effect in a subsequent derivative case even if brought by a different

shareholder.  See id. at 1227 (derivative claim precluded where claim brought by another

shareholder previously held barred by statute of limitations).[10]

---

[8]       It is irrelevant for collateral estoppel purposes that the State Court Action may be appealed. See MSM
Indus., Inc. v. Zurich Am. Ins. Cos., C.A. No. 93-12014-NG, 1997 WL 260059, at *12 (D. Mass. Mar. 25, 1997)
(final judgment by Massachusetts Superior Court barred relitigation, even though appeal was pending); O'Brien v.
Hanover Ins. Co., 692 N.E.2d 39, 44 (Mass. 1998) (adopting majority rule that a trial court judgment is final and has
preclusive effect regardless of the fact that it is on appeal).

[9]       See also Gerrity v. Chapin, No. 79 Civ. 2393, 1980 WL 1364, at *4 (S.D.N.Y. Jan. 9, 1980) ("[f]or the
purpose of determining the applicability of res judicata, it is irrelevant that one action was filed by plaintiff Van
Tassel and the other by plaintiff Gerrity. In a shareholders' derivative suit, the substantive claim belongs to the
corporation."); Ruskay v. Jensen, 342 F. Supp. 264, 268 (S.D.N.Y. 1972) ("Both the Horenstein/Ruskay actions and
the instant suits were brought derivatively on behalf of United and its shareholders, and therefore the plaintiffs in all
actions are the same.  The real party in interest in these suits is the fund and its shareholders, even though the named
plaintiffs might be different in each case.").

[10]      See also Cramer v. Gen. Tel. & Elec. Corp., 582 F.2d 259, 266-67 (3d Cir. 1978) (derivative claim based
on allegedly misleading proxy precluded where another shareholder's identical claim had previously been dismissed
for failure to state a claim); Schnitzer v. O'Connor, 653 N.E.2d 825, 833 (Ill. App. Ct. 1995) (affirming dismissal on
res judicata grounds based on previous dismissal of another shareholder's derivative complaint); Shallal v. Elson,
No. 98-8739, 1999 U.S. Dist. LEXIS 23368, at *22 (S.D. Fla. April 12, 1999) (stating, in context of motion to stay,
that decision in parallel state court derivative action would likely have res judicata effect in derivative claim brought
in federal court by different shareholder).

The alternative - allowing identical derivative suits to be filed by successive shareholders - would result in unfair burdens upon corporations and their directors, distraction from the corporation's business, unnecessary legal fees and the expenditure of unnecessary judicial resources. See MacAlister v. Guterma, 263 F.2d 65, 68 (2d Cir. 1958) (noting that the cost of defending multiple derivative actions may harm the corporation on whose behalf these suits are purportedly brought); Shallal, 1999 U.S. Dist. LEXIS 23368 at *16 (similar).

Therefore, because Judge van Gestel's decision in the State Actions binds Plaintiffs in this case, the issue of demand futility cannot be relitigated and the Complaint should be dismissed with prejudice.

## II.     The Complaint Fails To Plead Demand Futility Under Rule 23.1 Adequately[11]

Even if Plaintiffs are not precluded from relitigating the issue of demand futility, their allegations suffer from the same deficiencies identified by Judge van Gestel in the State Actions and fail to meet the heightened particularity requirements for pleading demand futility.

### A.     The Standard for Demand Futility

A plaintiff may file a derivative suit only if he demonstrates that the corporation itself wrongfully refused, or would have wrongfully refused, "to proceed after suitable demand" on the corporation's board of directors. Kamen, 500 U.S. at 95-96. Derivative claims are extraordinary remedies that impinge on the "cardinal precept" of corporate law that "the directors, rather than shareholders, manage the business and affairs of the corporation." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244, 253

---

[11]     Because Sonus is a Delaware corporation, the demand analysis follows the law of Delaware. Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108-09 (1991) (demand analysis conducted under substantive law of state of incorporation).

(Del. 2000).[12]  Therefore, the "demand requirement" for derivative suits "exists at the threshold,

first to insure that the stockholder exhausts his intracorporate remedies, and then to provide a

safeguard against strike suits."  <u>Aronson</u>, 473 A.2d at 811-12.   Whatever the underlying

allegations, if a derivative plaintiff fails to carry the burden of demonstrating that demand should

be excused, the complaint must be dismissed.  <u>See</u> <u>Kaufman v. Belmont</u>, 479 A.2d 282, 286

(Del. Ch. 1984).

        If a plaintiff does not actually make demand prior to filing suit, he must '***allege with***

***particularity*** . . . the reasons ... for not making the effort" – in other words, why demand would

have been "futile."  <u>See</u> Fed. R. Civ. P. 23.1 (emphasis added); <u>see</u> <u>also</u> <u>Brehm</u>, 746 A.2d at 254

("Rule 23.1 is not satisfied by conclusory statements or mere notice pleadings … What the

pleader must set forth are particularized factual statements that are essential to the claim.")

(citations omitted).   Under Delaware law, in order for demand to be considered "futile," the

plaintiff is required to plead with particularity that reasonable doubt exists either that: (i) ***a***

***majority of the board*** is disinterested and independent; or (ii) the challenged transaction was a

valid exercise of business judgment.  <u>See</u> <u>Aronson</u>, 473 A.2d at 814.  Importantly, plaintiffs must

rebut the presumption of impartiality with respect to each individual director and cannot rely on

wholesale allegations against the board or a group of directors as a whole.  <u>See</u> <u>Beam v. Stewart</u>,

845 A.2d 1040, 1046, 1049-50 (Del. 2004).[13]

        Here, Plaintiffs can rely only on the first prong of <u>Aronson</u> to demonstrate futility,

because the Complaint does not challenge a specific action of the board.  <u>See</u> <u>Rales v. Blasband</u>,

634 A.2d 927, 933 (Del 1993).  Consequently, the relevant inquiry is whether or not Plaintiffs

---

[12]     <u>See</u> <u>also</u> <u>Kamen</u>, 500 U.S. at 101 ("[A] basic principle of corporate governance [is] that the decisions of a
corporation – including the decision to initiate litigation – should be made by the board of directors or the majority
of shareholders.").

[13]     To meet their burden, Plaintiffs must raise a reasonable doubt as to at least 4 of the 7 Board members, and
at least 2 of those 4 will need to be outside directors.

have pleaded sufficient particularized facts to create a reasonable doubt that as of the time of the complaint, Sonus' Board could have exercised its independent and disinterested business judgment in responding to Plaintiffs' demand for litigation. See Rales, 634 A.2d at 934. In the absence of a pecuniary financial interest in a challenged transaction, the twin considerations of "interest" and "independence" focus on whether a director can be "expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision" to proceed with the litigation. See Rales, 634 A.2d at 936.

As for "interest," Plaintiffs must set forth in the Complaint "particularized" facts demonstrating that the potential for personal liability for a majority of the board may rise to a "substantial likelihood." Id. (citing Aronson, 473 A.2d at 825). The "mere threat" of adverse personal consequences is not enough. See, e.g., Aronson, 473 A.2d at 815.

To show a lack of "independence," Plaintiffs' allegations must create reasonable doubt as to whether a director is "so 'beholden' to an interested director … that his or her 'discretion would be sterilized.'" Beam, 845 A.2d at 1050 (quoting Rales, 634 A.2d at 936). The non-interested director must be "more willing to risk his or her reputation than risk the relationship with the interested director." Id. at 1052.

### B.    The Plaintiffs Fail to Allege Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Sonus Board Is "Interested"

Plaintiffs assert eight causes of action against some or all of the Director Defendants. (See Compl. ¶¶ 112-41.) Plaintiffs fail, however, to demonstrate a "substantial likelihood" of personal liability under any of these theories for the same fundamental reason – the Complaint contains no well-pleaded factual allegations that implicate any member of the Board in any

wrongdoing.[14]  The "likelihood" of liability is made even more remote by the exculpatory provision in Sonus' charter, which eliminates all possibility of personal liability for breaches of the duty of care.

### 1.    *Conclusory Allegations That Defendants Engaged In Misconduct And Thus Would Not Sue Themselves Do Not Demonstrate Interest Sufficient To Excuse Demand*

The majority of Plaintiffs' purported reasons for excusing demand are variations on the same circular theme: because the Director Defendants are liable for the alleged misconduct, they are interested and cannot be expected to sue themselves, and therefore demand is excused.[15]

This "bootstrap argument" is unavailing as a matter of Delaware law.  Aronson, 473 A.2d at 818 (rejecting plaintiff's argument that demand should be excused because directors participated in wrongful conduct and "would have to sue themselves").[16]  The "mere threat" of personal liability in this action does not render the Defendants interested; Plaintiffs must allege particularized facts that demonstrate a "substantial likelihood" that the directors face personal liability that will prevent them from impartially considering demand.  Rales, 634 A.2d at 936 (citing Aronson, 473 A.2d at 815).  Although egregious actions pleaded with the requisite particularity might establish a substantial likelihood of director liability, the directors' approval

---

[14]    The allegation that demand would be futile because Defendants failed to bring suit already (see Compl. ¶ 111 (f),) proves too much.  Obviously, if that allegation were sufficient, demand would always be excused.  See Lewis v. Graves, 701 F.2d 245, 249 (2d Cir. 1983) ("bald charges of mere failure to take corrective action are . . . inadequate to demonstrate futility).

[15]    See e.g., Compl. ¶ 111 (a) ("inconceivable that Ahmed would … authorize claims which may implicate him"); ¶ 111 (b) ("inconceivable that [Gruber] would vote to sue to enforce claims given his primary responsibility for the Company's operations as Chairman during the subject periods"); ¶ 111 (c) ("Anderson would never vote to investigate his own conduct or to sue himself"); ¶ 111 (d) ("directors would never sue themselves"); ¶ 111 (g) (directors cannot consider demand "due to [their] participation in and responsibility for the conduct"); ¶ 111 (h) ("[t]hese defendants would never vote to pursue claim[s] which would expose them to personal liability").

[16]    See also Grimes v. Donald, 673 A.2d 1207, 1216 n.8 (Del. 1996) ("Demand is not excused simply because plaintiff has chosen to sue all directors …. To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets.") overruled in part on other grounds by Brehm 746 A.2d at 253; Gagliardi v. TriFoods Int'l, Inc., 683 A.2d 1049, 1055 (Del. Ch. 1996) ("It is well established 'that the simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy etc., will not'" excuse demand.).

of Sonus' financials, standing alone as it does here, does not. See Seminaris v. Landa, 662 A.2d

1350, 1354 (Del. Ch. 1995) (signing misleading 10-K and registration statement insufficient).[17]

The Complaint contains nothing beyond conclusory allegations, *i.e.*, no **facts**, suggesting

that any defendant knew of any accounting or internal controls issues before January 20, 2004.

Plaintiffs simply allege -- **entirely upon information and belief** (Compl. intro. paragraph) – that

defendants "knew" of these issues,[18] without identifying any particular fact that came to the

attention of any one director (let alone a majority), or how or when it came to his attention.

While Plaintiffs assert that defendants had "access" to "internal corporate documents" such as

"operating plans, budgets and forecasts, and reports of actual operations" (Compl. ¶ 30), the

Complaint fails to identify any particular document that was allegedly received by any defendant

(much less any outside director), fails to allege how or when any defendant received such

documents, and fails to identify what information these documents allegedly contained that

should have alerted the defendants to the accounting or internal controls issues.  In similarly

vague fashion, Plaintiffs point to "conversations" and "attendance at management and/or board

of directors' meetings and committees thereof" (Compl. ¶ 30), without specifying with whom the

directors spoke, when, what was said, or what the directors supposedly learned about the

accounting or internal controls issues.

---

[17]    Mere allegations of Board members' "participation in the wrongful acts" (Compl. ¶ 110) are insufficient to render demand futile.  See, e.g., Aronson, 473 A.2d at 809, 817 (holding that allegation that all directors named in suit "participated in, expressly approved and/or acquiesced in, and are personally liable for, the wrongs complained of herein" did not allow plaintiff to avoid demand); Haber v. Bell, 465 A.2d 353, 359 (Del. 1983) (finding claim that board "approved or acquiesced in" challenged action insufficient to excuse demand); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 990 (9th Cir. 1999) (applying Delaware law and finding that "general allegation that the Board participated in the fraudulent scheme … [is] insufficient to demonstrate that the Board engaged in conduct that resulted in a substantial risk of personal liability.").

[18]    See, e.g., Compl. ¶ 6 ("conduct was undertaken in bad faith"); ¶ 91 (defendants "knew or recklessly disregarded that revenues were being inflated through improper accounting, and that the Company's financial reporting was not based upon sound internal controls"); ¶ 98 (defendants "were aware of [statements'] misleading nature, or knew or were reckless in not knowing that such violation was occurring").

"As to all of the directors, there is an absence of specific or particularized allegations regarding how they would have been put on notice of any accounting problems or improprieties. Thus, again, this is no basis for excusing a demand." State Court Order at 8; see Guttman v. Huang, 823 A.2d 492, 498 (Del. Ch. 2003) (demand not excused where complaint failed to plead why "particular defendants should have been on notice" or "had actual or constructive notice" of accounting irregularities).

Further, the speculative possibility of damages in the federal securities law class action pending before this Court or disgorgement under Sarbanes-Oxley do nothing to increase the likelihood of personal liability for a majority of the Board. Only **one** of the Director Defendants (Mr. Ahmed) is named as a defendant in the securities class action. See Amended Consolidated Class Action Complaint, In re Sonus Networks Inc. Litig., No. 04-10294, Docket Entry #103.[19] And Section 304 is only applicable to a company's C.E.O. and C.F.O., so defendant Ahmed is the only Director Defendant that could conceivably face such disgorgement. See 15 U.S.C. § 7243(a).[20] Therefore, a majority of Sonus' Board could elect to proceed with this litigation without any fear of personal liability stemming from either of those two sources.[21]

---

[19]    In any event, if the filing of a federal securities lawsuit were sufficient by itself to excuse demand, a shareholder could always circumvent the demand requirement simply by filing two complaints instead of one.

[20]    Disgorgement is only applicable where a company is required to issue a restatement "as a result of misconduct," see 15 U.S.C. § 7243(a), so the mere fact that Sonus restated its financial results does not raise a "substantial likelihood" that even Ahmed will face disgorgement, absent particularized pleadings demonstrating such misconduct.  In addition, the criminal penalty provisions of Section 906 of Sarbanes-Oxley only apply to those who sign a certification "knowing" that it violates the requirements of that section. See 18 U.S.C. § 1350(c). Plaintiffs here offer no particularized allegations of such requisite knowledge.

[21]    Plaintiffs' further assertion that Defendants cannot consider demand because they would lose their insurance coverage if they brought suit (Compl. ¶ 111 (j)) has been rejected as nothing more than a variation "on the 'directors suing themselves' and 'participating in the wrongs' refrain."  Caruana v. Saligman, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (holding that demand not excused when "liability insurance has a typical exclusion from coverage of claims brought by [Company] against its directors") (quoting Decker v. Clausen, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989)) (holding that demand not excused when plaintiff's allegation that "liability insurance would not cover an action brought by the company against its own directors ... provid[ed] no particularized facts")); see also Stoner v. Walsh, 772 F. Supp. 790, 805 (S.D.N.Y. 1991) (holding that, under New York state law, insured versus insured exclusion did not automatically render a director interested; "[p]laintiff's assertion … finds no support in either case authority or logic").

2.      *Allegations Of A Single Stock Sale By A Single Director Defendant Are Inadequate To Excuse Demand*

Plaintiffs allege that *one* of the Director Defendants (Anderson) engaged in insider trading.[22]  But, under Delaware law, "the mere fact that stocks were traded by an officer or director does not establish a breach of the duty of loyalty."  McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001), decision amended on other grounds 250 F.3d 997 (6th Cir. 2001).  "In fact, when directors and officers own stock or receive compensation in stock, they should be expected to trade those securities in the normal course of events."  McCall, 239 F.3d at 825.  Plaintiffs must allege particular facts supporting an inference that the insider trading occurred with wrongful intent, *i.e.,* on the basis of material non-public information.  See id. at 825-26.

In this instance, Plaintiffs do not allege with any specificity the purported "inside information" that Anderson supposedly possessed at the time of this trade, or how and when he acquired such information – only that Anderson learned of this information (whatever its nature) as a result of his service on the Audit Committee or because of his venture capital firm's investment in the Company.  (See Compl. ¶ 111 (c).)  This is insufficient.[23]

Nor do the few available facts give rise to any inference of fraudulent intent.   Anderson's single trade consisted of less than 13% of his stock, see Form 4 filed with the SEC by Edward T.

---

[22]      The Complaint also alleges that three of the non-director Defendants (Harris, O'Hara and Jones) engaged in insider trading.  However, these allegations are irrelevant to whether demand is excused because only Board members evaluate demand.  See, e.g., Guttman, 823 A.2d at 503 n.22 ("that three non-director-defendants, who each engaged in very substantial trades during the Contested Period, are named in the case has little bearing on the demand excusal analysis for an obvious reason: they are not on the board"); Rattner v. Bidzos, No. Civ.A. 19700, 2003 WL 22284323, at *9 n.47 (Del. Ch. Sept. 30, 2003) ("for purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant").

[23]      See State Court Order at 7-8 ("the complaints contain no particularized allegations of facts that would demonstrate any impropriety with Anderson's stock sale.  Consequently, this Court cannot, on this charge, conclude that Anderson lacks the independence necessary, or is too interested, to be considered other than a disinterested and independent director of Sonus."); Guttman, 823 A.2d at 503-04 (allegations that defendants sold up to 100% of shares are insufficient to establish real threat of liability without facts showing knowledge of accounting irregularities).

Anderson on July 22, 2003 (Trans. Aff. Exhibit D),[24] hardly supporting the inference that Plaintiffs seek to draw.  See McCall, 239 F.3d at 825 ("[t]he substantial holdings that [defendants] continued to maintain negate any inference that they were trading on materially adverse non-public information"); In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1094 (9th Cir. 2002) (sale of only 13% of shares "belies any intent to rid himself of a substantial portion of his holdings").  Finally, the timing of Anderson's sale – six months before the February 11 Announcement – substantially discredits any possible suspicion of insider trading.  See In re Nike, Inc. Sec. Litig., 181 F. Supp. 2d 1160, 1169 (D. Or. 2002) (two-month gap betweens sales and adverse disclosure negates any inference of scienter); In re Party City Sec. Litig., 147 F. Supp. 2d 282, 313 (D.N.J. 2001) ("A broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter.").[25]

Similarly insufficient is Plaintiffs' claim that demand on the non-trading Director Defendants is excused because they did not prevent the trading by Anderson or the non-director defendants.  (See Compl. ¶ 111 (d)).  Plaintiffs do not plead a single fact suggesting that any other director knew that Anderson was going to sell stock or that such a sale would have been improper.  Nor do Plaintiffs suggest how the other directors should have prevented Anderson from selling stock even if they had reason to know he intended to do so.  Courts have consistently held that conclusory claims that directors "failed to prevent" alleged misconduct do

---

[24]     Moreover, Anderson's stock sale was of stock "held in trust for the benefit of Mr. Anderson's family and minor children." See Form 4 filed with the SEC by Edward T. Anderson on July 22, 2003 (attached to Transmittal Affidavit of Daniel H. Gold as Exhibit D).  Plaintiffs' failure to plead any facts that connect Anderson with the trading decisions of this trust further undermines any likelihood of personal liability.  This court can take judicial notice of the Form 4 filed with the SEC, which is publicly available.  See In re Stone & Webster, Inc., Sec. Litig., 253 F. Supp. 2d 102, 128 n. 11 (D. Mass. 2003) (considering Form 4 on motion to dismiss).

[25]     Indeed, if this transaction involved trading on inside information, it was very poorly timed, as Sonus' stock reached nearly $10/share in the months that followed.  See Sonus Stock Prices (Trans. Aff. Exhibit E); see also Blatt v. Muse Techs., Inc., No. Civ.A. 01-11010-DPW, 2002 WL 31107537, at *4 (D. Mass. Aug 27, 2002) ("I may . . . tak[e] judicial notice of Muse's stock prices throughout the Class Period, from well-publicized and reliable sources of information, without converting the defendants' motions into ones for summary judgment"); La Grasta v. First Union Sec., Inc., 358 F.3d 840, 842 (11th Cir. 2004) (considering stock prices on motion to dismiss because they "are not subject to reasonable dispute, and are a proper subject for judicial notice").

not show a substantial likelihood of personal liability. See, e.g., Seminaris, 662 A.2d at 1354-55

(allegations that directors failed to prevent CEO from misrepresenting Company's financial

condition did not "demonstrate a substantial likelihood of personal liability" for the directors).[26]

### 3. The Exculpation Clause in the Sonus Charter Eliminates A "Substantial Likelihood" of Liability On the Part of Majority of the Sonus Board

The core of the Complaint is the allegation that Defendants failed to implement an

adequate system of internal controls. In light of Plaintiffs' failure to plead with the requisite

particularity the defendants' knowledge or recklessness as to internal controls, the Complaint at

best charges a breach of the duty of care. The Director Defendants face no risk of liability --

much less a "substantial" risk -- from such a claim because the exculpation clause in Sonus'

charter extinguishes any personal liability for breaches of a director's duty of care to the full

extent permitted under Delaware law:

> No director of [Sonus] shall be personally liable to the Corporation
> or to any of its stockholders for monetary damages for breach of
> fiduciary duty as a director [within the bounds of Delaware law] …

See Fourth Amended and Restated Certificate of Incorporation of Sonus Networks, Inc., Article

VI (Trans. Aff. Exhibit F).[27]

Delaware law expressly recognizes that such an exculpatory provision shields directors

from claims for monetary damages except for claims of breach of their duty of loyalty, or

involving intentional misconduct, a knowing violation of law, or an improper personal benefit.

See 8 Del. Code § 102(b)(7). The last three of these exceptions are essentially redundant of the

---

[26]   See also In re Baxter Int'l, Inc. S'holders Litig., 654 A.2d 1268, 1271 (Del. Ch. 1995) (rejecting futility argument "premised on a presumption that employee wrongdoing would not occur if directors performed their duty properly").

[27]   It is proper for courts to take judicial notice of the Company's certificate of incorporation in deciding a motion to dismiss. See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) ("court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment"); In re Baxter Int'l, 654 A.2d at 1270 (noting propriety of taking judicial notice of certificate of incorporation in deciding a motion to dismiss).

first, because as a matter of law, a director breaches his duty of loyalty only when he engages in willful misconduct or pursues his own self-interest to the detriment of the corporation.  See, e.g., McCall, 239 F.2d at 824.  Otherwise, even if a director has acted with "gross negligence," only the duty of care is implicated.  Aronson, 473 A.2d at 812.

As described in more detail above, the Complaint contains no well-pleaded factual allegations that would support a non-exculpated claim.  Plaintiffs do not allege any intentional violation of law, and, except as to the hopelessly conclusory insider trading claim against Anderson, do not allege that any Director Defendant reaped any personal benefit at Sonus' expense.  Plaintiffs plead no facts suggesting that any Director Defendant willfully failed to institute a system of internal controls, or recklessly ignored any "red flags" suggesting that the Company's internal controls were deficient.  See Guttman, 823 A.2d at 507 (demand not excused where plaintiff failed to plead the required "red" flags suggesting that directors committed a culpable failure of oversight of financial controls).[28]  In the absence of such allegations, the Complaint, at best, charges a breach of the duty of care.  See In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959, 967, 970 (Del. Ch. 1996) (classifying allegation that directors "violated a duty to be active monitors of corporate performance" as violation of duty of care rather than duty of loyalty); Dellastatious v. Williams, 242 F.3d 191, 196 (4th Cir. 2001) (citing Caremark in applying duty of care standard to directors' alleged failure to monitor).

Accordingly, the exculpation clause in Sonus' corporate charter eliminates any substantial risk to any of the Directors Defendants for personal liability on any of these "duty of care" claims

---

[28]    In Guttman, the Court concluded that the plaintiff did "not come close to pleading a Caremark claim [for failure to implement internal controls].  Their conclusory complaint is empty of the kind of fact pleading that is critical to a Caremark claim, such as contentions that the company lacked an audit committee, that the company had an audit committee that met only sporadically and devoted patently inadequate time to its work, or that the audit committee had clear notice of serious accounting irregularities and simply chose to ignore them or, even worse, to encourage their continuation."  Guttman, 823 A.2d at 506-07.  The same is true as to Plaintiffs' allegations in this case.

as a matter of law.  See Guttman, 823 A.2d at 501 ("a serious threat of liability may only be found to exist if the plaintiff pleads a *non-exculpated* claim against the directors based on particularized facts") (emphasis in original); In re Baxter, 654 A.2d at 1270 ("When the certificate of incorporation exempts directors from liability, the risk of liability does not disable them from considering a demand fairly unless particularized pleading permits the court to conclude that there is a substantial likelihood that their conduct falls outside the exemption.").

**C.    The Plaintiffs Fail to Allege Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Sonus Board "Lacks Independence"**

Independence depends on the context of the particular case.  "The court must make that determination by answering the inquiries:  independent from whom and independent for what purpose?"  Beam, 845 A.2d at 1049-50.  Therefore, in the absence of an identifiable pecuniary benefit, a director's independence can be suspect only where that director is "beholden" to another who is interested.  See Brehm, 746 A.2d at 258 (holding there was no need to determine directors' independence from purported controller once determination made that purported controller was himself disinterested).

**1.    *Conclusory Allegations That Defendants Ferri And Severino Control The Other Defendants' Compensation Are Inadequate To Excuse Demand***

Plaintiffs broadly assert that demand on the Company's two inside directors (Ahmed and Gruber) would be futile because two other defendants (Ferri and Severino) control their compensation through membership on the Compensation Committee.  (See Compl. ¶ 111(h)). Yet, as already observed by Judge Van Gestel:  "Again, however, there are no particularized allegations of any interest on the part of these allegedly controlling directors [Ferri and Severino] that would render them less than disinterested and independent." See State Court Order at 8.

Even if these two outside directors were "interested," the mere fact that Messrs. Ahmed and Gruber derive their principal source of income from Sonus -- and nothing more is alleged here[29] -- does not make them "beholden" to either Ferri and Severino. Any other conclusion would establish an untenable per se rule automatically disqualifying every inside director whose compensation is set by a committee – an everyday fact in corporate America. See In re Sagent Tech., Inc., Deriv. Litig., 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (if allegations that defendants are "not independent from other board members who have the ability to control their employment and compensation . . . were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand.").

### 2. Vague Allegations About Defendants' Personal and Business Relationships Are Inadequate To Excuse Demand

Plaintiffs' next excuse -- Director Defendants' "extensive personal and business relationships" (Compl. ¶ 111(k)) -- similarly falls flat. Delaware law is clear that directors do not lack "independence" simply because they share outside professional associations or relationships. See Beam, 845 A.2d at 1050 ("to render a director unable to consider demand, a relationship must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to raise a reasonable doubt about a director's independence."). Moreover, as noted above, the relationships must rise to the level that the "non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." Id. at 1052. [30]

---

[29]  For example, Plaintiffs makes no particularized allegations -- nor could they in good faith -- that Ahmed or Gruber "blindly follow" the Compensation Committee members in an attempt to influence them, see Beam v. Stewart, 833 A.2d 961, 979 (Del. Ch. 2003), or otherwise comport with their wishes or interests. See Aronson, 473 A.2d at 815.

[30]  A fortiori, the fact that a number of the Defendant Directors have worked together on the Sonus Board for a number of years, (Compl. ¶ 111 (k)), is insufficient to excuse demand. The same is true of the conclusory allegations in Compl. ¶ 111 (i) that the Director Defendants would never sue Ahmed or Gruber because of their positions with the Company.

Measured by these standards, Plaintiffs' allegations fall far short. Plaintiffs merely assert that the venture capital firms of Anderson and Ferri have frequently invested in the same companies, (Compl. ¶ 111 (l)), and that certain Defendant Directors have served on various boards together. (Compl. ¶ 111 (m)). These unremarkable facts certainly do not give rise to a reasonable inference that any director would be willing to risk his reputation for the sake of his relationship with any other defendant. <u>See</u> State Court Order at 8-9 ("there are some allegations about different business relationships shared among or between some of the directors . . . . No reasonable doubts are raised by the relationships alleged here."); <u>see also</u> <u>Kohls v. Duthie</u>, 765 A.2d 1274, 1284, 1285 (Del. Ch. 2000) (the law is "clear that evidence of a personal and/or business relationship does not raise an inference of self-interest") (quotation and citations omitted); <u>Green v. Phillips</u>, C.A. No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996) (holding that allegations that directors had "long-standing personal and business ties . . . are insufficient to overcome directors' presumption of independence").

## CONCLUSION

For all of the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint, in its entirety, with prejudice.

Respectfully submitted,

/s/  Daniel H. Gold
Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Daniel W. Halston (BBO #548692)
Daniel H. Gold (BBO #654909)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000
*Attorneys for Defendants Edward T.*
*Anderson, Paul J. Ferri, Albert A. Notini,*
*Paul J. Severino and Nominal Defendant*
*Sonus Networks, Inc.*


/s/  John R. Baraniak, Jr.
Robert S. Frank, Jr. (BBO #177240)
John R. Baraniak, Jr. (BBO #552259)
Choate Hall & Stewart
Exchange Place Building
53 State Street
Boston, Massachusetts 02109
Tel:  (617) 248-5000
Fax:  (617) 248-4000
*Attorneys for Defendant Hassan M. Ahmed*


/s/ Matthew J. Matule
Thomas J. Dougherty (BBO #132300)
Matthew J. Matule (BBO #632075)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108
Tel: (617) 573-4800
Fax: (617) 573-4822
*Attorneys for Defendant Stephen J. Nill*

/s/  John D. Hughes
John D. Hughes (BBO #243660)
Edwards & Angell LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:  (617) 439-4444
Fax:  (617) 439-4170
*Attorneys for Defendants Paul R. Jones, Edward N.*
*Harris, J. Michael O'Hara and Rubin Gruber*

Dated: December 3, 2004

# Exhibit A

COMPARISON OF DEMAND FUTILITY ALLEGATIONS REJECTED BY JUDGE VAN GESTEL AND
ALLEGATIONS OF THE CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT

| MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge van Gestel) | (DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge van Gestel) | (PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| **ALLEGED INSIDER TRADING** | | |
| *It is alleged that Anderson sold certain Sonus stock, allegedly at a significant profit and on insider information. The details, however, are scant. "[T]he mere fact that stocks were traded by ... [a] director does not establish a breach of the duty of loyalty." McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001); Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1224 (1st Cir. 1996).* <br><br> *Further, according to Form 4 filed with the S.E.C. on July 22, 2003, Anderson's stock sale occurred on July 18, 2003, and was stock "held in trust for the benefit of his family and minor children," not shares personally held by him. This sale was over six months before the January 2004* | **As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the Director Defendants knew the adverse non-public information regarding the improper accounting.** While in possession of this material adverse non-public information regarding the Company, the following current members of the Sonus Board participated in the illegal insider selling: <br><br> **During the Relevant Period, Anderson engaged in massive insider trading disposing of 65,584 shares of his personally held Sonus stock for proceeds** | **Defendant Anderson sold thousands of shares of Sonus stock while in possession of material adverse inside information that the Company had engaged in improper revenue recognition practices, that the Company's internal controls were a sham, and that the price of Sonus stock was therefore artificially inflated. Anderson was aware of this information as a result of his service on the Audit Committee, which has primary responsibility for the Company's financial reporting practices.** Anderson is also highly knowledgeable regarding the Company's operations and financial results as his venture capital firm is one of the Company's substantial investors. Andersen had not sold Sonus stock since 2001, and traded only after the price of |

| MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
| --- | --- | --- |
| *announcement of Sonus's financial reporting problems. And the complaints contain no particularized allegations of facts that would demonstrate any impropriety with Anderson's stock sale. Consequently, this Court cannot, on this charge, conclude that Anderson lacks the independence necessary, or is too interested, to be considered other than a disinterested and independent director of Sonus. (pp. 7-8)* | of $448,918.34. Because this defendant received a personal financial benefit from the challenged insider trading transactions, this defendant is interested and any demand upon him is futile (¶63(a)(i)) | Sonus shares had risen based upon defendants' representations that the Company would purportedly turn the corner to profitability in fiscal year 2003. **Thus, Anderson benefited from the artificial inflation his misconduct had created, in breach of his fiduciary duties of loyalty to Sonus and its shareholders. This defendant received substantial personal benefits from these transactions. Anderson would never vote to investigate his own misconduct or to sue himself for breach of fiduciary duty**. (¶111(c)) |

## NOTICE OF ACCOUNTING IRREGULARITIES

| | | |
| --- | --- | --- |
| *As to all of the directors, there is an absence of specific or particularized allegations regarding how they would have been put on notice of any accounting problems or improprieties. Thus, again, this is no basis for excusing a demand. See, e.g, Guttman v. Huang, 823 A.2d 492,* | As a result of their access to and review of internal corporate documents; conversations and connections with other corporate officers, employees and directors; and attendance at management and Board meetings, each of the Director Defendants knew the | Because of each of the Individual Defendants' positions with Sonus, each knew and had access to non-public information about the business of Sonus, as well as its finances, markets, and present and future business prospects, via access to internal corporate |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| *498 (Del. Ch. 2003). (p.8)* | **adverse non-public information regarding the improper accounting**. . . . (¶63(a))<br><br>The Director Defendants of Sonus, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Sonus' stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties;  (¶63(f))<br><br>Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial results of the Company and failed to correct the Company's publicly reported financial results and guidance.  These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests. (¶71) | **documents (including Sonus' operating plans, budgets and forecasts, and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and/or board of directors' meetings and committees thereof, and reports and other information provided to him in connection therewith** (¶30)<br><br>The Individual Defendants either directly participated in the decisions to release the false and misleading press releases and SEC filings complained of herein, and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially misleading nature, or knew or were reckless in not knowing that such violations were occurring, and took no action to prevent or remedy the situation. (¶98) |

| MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, dated 2/20/04, *Palma v. Ahmed, et al.*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|

## DIRECTORS FERRI'S AND SEVERINO'S POSITIONS ON THE COMPENSATION COMMITTEE

| | | |
|---|---|---|
| *There are allegations that Ferri and Severino, by virtue of their positions on Sonus's Compensation Committee, exert control over fellow board members. Again, however, there are no particularized allegations of any interest on the part of these allegedly controlling directors that would render them less than disinterested and independent. See* <u>Brehm</u>, <u>supra</u>, *746 A.2d at 258. See also* <u>White</u> v. <u>Panic</u>, *793 A.2d 356, 366 (Del. Ch. 2000);* <u>Langner</u> v. <u>Brown</u>, *913 F. Supp. 260, 266 (S.D.N.Y. 1996). (p.8)* | **The Compensation Committee of the Board determines, after consulting with the CEO, establishes, authorizes and administers Sonus' compensation policies, practices and plans for Sonus' directors, executive officers and other key personnel. The Compensation Committee is comprised of defendants Ferri and Severino**. As the members of the Compensation Committee singularly control the other defendants' awards, the remaining members of the Board will not institute this action against defendants Ferri and Severino. To do so would jeopardize each defendant's personal financial compensation. Thus, demand on defendants Ahmed, Gruber, Anderson and Notini is futile; (¶63(b))

**Moreover, Ferri serves on Sonus' Compensation Committee which determines Ahmed's salary, bonuses and stock options**. (¶15) | **The Compensation Committee of the Board establishes and implements compensation policies for the Company's senior executives. Defendants Ferri and Severino serve on the Compensation Committee of the board.** Notably, these defendants also served on the Audit Committee, so they were aware of the Company's rampant internal control deficiencies and financial reporting problems. **These defendants awarded substantial incentive based compensation to several of the Company's officers and directors, including defendants Ahmed and Grub**er, based upon false and inflated financial results, as alleged herein. In particular, these defendants awarded substantial cash and millions of stock options for fiscal years 2002 and 2003. This was unjustified and a waste of corporate assets. These defendants would never vote to pursue claim which would expose them to personal liability for |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| | **Moreover, Ferri serves on Sonus' Compensation Committee which determines Gruber's salary, bonuses and stock options**. (¶16)<br><br>**Moreover, Severino serves on Sonus' Compensation Committee which determines Ahmed and Gruber's salary, bonuses and stock options**. (¶20)<br><br>**The principal professional occupation of defendants Ahmed and Gruber is their employment with Sonus, pursuant to which they received and continue to receive substantial monetary compensations and other benefits. Accordingly, defendants Ahmed and Gruber lack independence from defendants Ferri and Severino, who exert influence over defendants Ahmed and Gruber's compensation by virtue of their position as members of the Compensation Committee**. This lack of independence renders defendants Ahmed and Gruber incapable of impartially considering a demand to commence and vigorously prosecute this action. (¶63(c)) | wasting the corporation's assets. **Furthermore, the principal occupations of defendants Ahmed and Gruber are with Sonus.  Defendants Ferri and Severino, as members of the Compensation Committee, exert control over all compensation awarded to Ahmed and Gruber.  Ahmed and Gruber can not act independently of Ferri and Severino and would never vote to sue Ferri and Severino**. (¶111(h)) |

| MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|

## BUSINESS AND PERSONAL RELATIONSHIPS AMONG THE DIRECTORS

*Again there are some allegations about different business relationships shared among or between some of the directors. Directors are not, however, interested or lacking in independence merely because they share outside professional associations or relationships. Kohls v. Duthie, 765 A.2d 1274, 1284 (Del. Ch. 2000); Green v. Phillpis, C.A. No. 14436, 1996 WL 342093, at \*5 (Del. Ch. June 19, 1996). "There is nothing sinister or corrupt in the single fact of association or affiliation in financial matters. There must be some further fact before there is anything wrong about it." Bartlett, supra, 221 Mass. at 537. No reasonable doubts are raised by the relationships alleged here. (pp. 8-9).*

**North Bridge Venture Partners and Matrix Partners, two prominent venture capitalist firms, both made significant venture investments in Sonus and have made millions of dollars as a result of their investments in Sonus. Defendant Edward T. Anderson ("Anderson") is a managing partner at Bridge Venture Partners and defendant Paul J. Ferri ("Ferri") is a general partner of Matrix Partners**. Both Anderson and Ferri serve as directors of Sonus and both are on the Company's Audit Committee. **Ahmed also served on the board of Winphoria Networks along with Ferri, Matrix Partners and North Bridge Partners were both venture capitalist in Winphoria Networks**. Moreover, Ferri serves on Sonus' Compensation Committee which determines Ahmed's salary, bonuses and stock options. **Ahmed, along with defendant Rubin Gruber ("Gruber"), co-founder of Sonus, initially invested in Narad Networks, a start-up**

The Director Defendants have extensive personal and business relationships which compromise their independence. In order to bring this action for breaches of fiduciary duty, the members of the board would have to sue themselves, and/or their fellow directors and allies in the top ranks of the Company. This they will not do. Five of the six Director Defendants have worked closely on the Board together for at least five years, and would never take a position antagonistic to one another, particularly in light of the Class Actions and the formal SEC investigation which are now threatening them. (¶111(k))

**The venture capital firms of defendants Anderson and Ferri were substantial investors in Sonus**, and frequently invest in the same companies, including Sycamore Networks, Inc., Silverback Technologies, Crossbeam Systems, Cadia Networks, Cascade Communications (where defendant Ahmed once served as

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation*, CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
|  | **telecommunications company also located in Westford, MA, along with Gruber**. By virtue of his executive positions with the Company, his personal participation in the underlying misconduct and his extensive and long-term personal, professional, and financial relationships with Anderson, Gruber and Ferri, and the other members of the Sonus Board, Ahmed is not independent, is not disinterested and could not have adequately considered a pre-suit demand to bring the allegations contained herein. (¶15. See also ¶¶16, 17, 19)<br><br>**Severino also served on the board of PhotonEx Corp., another telecommunications start-up from Massachusetts, along with defendant Ahmed** (¶20).<br><br>**As detailed herein in particularity at ¶¶15-20, in order to bring this suit, all of the directors of Sonus would be forced to sue themselves and persons with whom they have extensive business and person entanglements, which they will not do, thereby excusing demand**. As set | an executive), Equipe Communications, AppIQ, Blue Dolphin Group, Argon Networks, Arris Networks, Arrowpoint Communications, Firstsense Software, Redstone Communications, Appian Communications, Terrapulse, and Nauticus Networks, to name but a few. One 2001 article described Ferri and Anderson as a "tag-team" who "travel as a pair" with respect to their common venture capital investments. Indeed, both Anderson and Ferri point to Sonus as a portfolio company on their venture capital firms' websites. These defendants would never vote to investigate or sue each other, or compromise the business or reputation of their respective venture capital firms by voting to investigate or sue the officers and directors of a corporation in which both have invested. (¶111(l))<br><br>**In addition to the close business relationship that exists between Ferri and Anderson, defendants Ahmed, Gruber and Severino also have a history of interlocking business relationships among each other and Ferri and Anderson. For example, Ahmed and** |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| | forth in particularity in ¶¶15-20 because a majority of the Director Defendants have long-term personal, professional and financial relationships with each other and other board 'members, a majority of the Director Defendants could not have adequately considered a demand to bring the allegations made herein rendering any such demand futile; (¶63(g)) | **Ferri serve together on the board of a Company named Airvana. Ahmed and Ferri also served together on the board of a company named Winphoria Networks, in which defendant Anderson's venture capital firm invested. Ahmed and Severino serve together on the board of a company named PhotonEx Corp, in which defendant Anderson's venture capital firm invested. Gruber and Ahmed have invested together in a company named Narad Networks. Severino and Ahmed serve together on the board of the Massachusetts Telecommunications Council**. On his venture capital firm's website, defendant Anderson has posted the praise of defendant Severino, with whom Anderson worked in connection with Wellfleet Communications:<br><br>    Ed Anderson was in all respects a co-founder of Wellfleet Communications. He was involved with us from the concept to $500M revenues. He is strategic as well as operational and he brings an intensity of focus to the important |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| | | challenges we all face in building a successful enterprise.<br><br>On his venture capital firm's website, defendant Ferri has posted the praise of defendant Gruber:<br><br>I've raised capital from numerous VCs, but the people at Matrix truly collaborate as partners with their portfolio companies.  Their solid perspective supports start-up every step of the way.<br><br>**These relationships demonstrate the unusual closeness and extent of the Director Defendants' intertwined business relationships, which they would never jeopardize by voting to sue one another.  The Director Defendants would therefore not initiate such litigation**  (¶111(m)) |

| MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|

## ALLEGED PARTICIPATION IN THE UNDERLYING WRONGDOING

| | | |
|---|---|---|
| *Lastly, the conclusory allegations about generalized misconduct establishing personal liability and those about insurance coverage are insufficient to excuse the demand requirement. See* Seminaris *v.* Landa, *662 A.2d 1350, 1354 (Del. Ch. 1995);* Rales, *supra, 634 A.2d at 936;* Kaufman, *supra, 479 A.2d at 287;* Aronson, *supra, 473 A.2d at 817-818. "Demand is not excused simply because plaintiff has chosen to sue all directors.... To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply be designating all directors as targets."* Grimes, *supra, 673 A.2d at 1216 n.8. (p.9)* | According to Sonus' Proxy Statements filed with the SEC, Director Defendants Anderson, Ferri and Severino served on the Audit-Committee during the Relevant Period. The Audit Committee is responsible for reviewing the activities of Sonus' internal auditors and independent accountants. The Audit Committee evaluates Sonus' organization and its internal controls, policies, procedures and practices to determine whether they are reasonably designed to: provide for the safekeeping of Sonus' assets; assure the accuracy and adequacy of Sonus' records and financial statements; reviews Sonus' financial statements and reports; monitors compliance with Sonus' internal controls, policies, procedures and practices; and receives direct compliance reports from Sonus, internal auditors an General Counsel and from dependent accountants. Nonetheless, the Audit Committee recommended that the Board include the improper audited financial statements in | The Director Defendants, due to their participation in the wrongful acts alleged and their potential individual financial exposure, are not disinterested and cannot exercise independent business judgment on the issue of whether Sonus should prosecute this action. (¶110)

**The Individual Defendants either directly participated in the decisions to release the false and misleading press releases and SEC filings complained of herein, and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially misleading nature, or knew or were reckless in not knowing that such violations were occurring, and took no action to prevent or remedy the situation**. (¶98)

As described herein, the Director Defendants, comprising a majority, were |

| MEMORANDUM AND ORDER ON MOTIONS TO DISMISS, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | (PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| | Sonus' filings with the SEC during the Relevant Period. By such actions, these defendants breached their duties by causing or allowing the improper financials described above. As a result of these defendants' breach of their duties, any demand upon them is futile; (¶63(d))<br><br>**The entire Sonus Board of Directors and senior management participated in the wrongs complained of herein. Sonus' directors are not disinterested or independent due to the following: Director Defendants Ahmed, Gruber, Anderson, Notini, Ferri and Severino served on the Sonus Board during the Relevant Period. Pursuant to their specific duties as Board members, each was charged with the management of the Company and to conduct its business affairs. Each of the above-referenced defendants breached the fiduciary duties that they owed to Sonus and its shareholders in that they failed to prevent and correct the improper financials. Thus, the Sonus Board cannot exercise independent objective judgment in deciding whether to bring** | actively involved in, knew or recklessly disregarded the adverse non-public material facts regarding Sonus alleged herein, and/or illegally profited from the misconduct. The Director Defendants, due to their participation in the wrongful acts alleged and their potential individual financial exposure, are not disinterested and cannot exercise independent business judgment on the issue of whether Sonus should prosecute this action. As a result, demand on Sonus and its board of directors is futile and therefore excused. (¶110) |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| | **this action or whether to vigorously prosecute this action because its members are interested personally in the outcome as it is their actions that have subjected Sonus to millions of dollars in liability for possible violations of applicable securities laws**; (¶63(e))<br><br>**The Director Defendants of Sonus, as more fully detailed herein, participated in, approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from Sonus' stockholders or recklessly and/or negligently disregarded the wrongs complained of herein, and are therefore not disinterested parties**; (¶63(f))<br><br>As detailed herein in particularity at ¶¶15-20, in order to bring this suit, all of the directors of Sonus would be forced to sue themselves and persons with whom they have extensive business and person entanglements, which they will not do, thereby excusing demand. As set forth in particularity in ¶¶15-20 because a majority of the Director Defendants have long-term | |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.,* CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
| | personal, professional and financial relationships with each other and other board 'members, a majority of the Director Defendants could not have adequately considered a demand to bring the allegations made herein rendering any such demand futile. (¶63(g)) | |

## INSURANCE COVERAGE

| *Lastly, the conclusory allegations about generalized misconduct establishing personal liability and those about insurance coverage are insufficient to excuse the demand requirement.  See* <u>Seminaris</u> *v.* <u>Landa</u>*, 662 A.2d 1350, 1354 (Del. Ch. 1995);* <u>Rales</u>*,* <u>supra</u>*, 634 A.2d at 936;* <u>Kaufman</u>*,* <u>supra</u>*, 479 A.2d at 287;* <u>Aronson</u>*,* <u>supra</u>*, 473 A.2d at 817-818.* | If Sonus' current and past officers and directors are protected against personal liability for their acts of mismanagement, abuse of control and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.*, monies belonging to the stockholders of Sonus.  **However, due to certain changes in the language of directors' and officers' liability insurance policies in the past few years, plaintiffs assert, upon information and** | Sonus has agreed to indemnify its directors and officers against liability for acts and omissions occurring in the performance of their duties as directors and officers and maintains insurance policies to cover the costs of such indemnification.  **Under the terms of those insurance policies, however, claims against directors which are brought by the Company, or other directors, are excluded from coverage. Therefore, Sonus' board, or any committee thereof, is effectively disabled from complying with any demand that would cause the Company to bring suit** |

| **MEMORANDUM AND ORDER ON MOTIONS TO DISMISS**, dated 9/27/04, *In Re Sonus Networks Derivative Litigation*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(DISMISSED) VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 2/20/04, *Palma v. Ahmed, et al.*, CA No. 04-0753 (Suffolk Superior Court, Commonwealth of Massachusetts) (Judge Van Gestel) | **(PENDING) CONSOLIDATED SHAREHOLDER DERIVATIVE COMPLAINT**, dated 10/12/04, *In Re Sonus Networks, Inc. Shareholder Derivative Litigation,* CA No. 1-04-CV-10359 (DPW) (D. Mass.) |
|---|---|---|
|  | **belief, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by Sonus against these defendants, known as, *inter alia*, the "insured versus insured exclusion." As a result, if these directors were to sue themselves or certain of the officers of Sonus, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit**. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery.  If there is no directors' and officers' liability insurance at all then the current directors will not cause Sonus to sue them, since they will face a large uninsured liability. (¶63(m)) | **against the Individual Defendants because to do so would result in the loss of their insurance coverage**.  (¶111(j)) |