# Exhibit B

**NOTIFY**

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

<div style="float:right">

SUPERIOR COURT
LEAD CIVIL ACTION
NO. 04-0753 BLS
(Judge van Gestel)

</div>

**Notice sent
toall parties
9/27/2004**

IN RE SONUS NETWORKS, INC.
DERIVATIVE LITIGATION[1]

**(sc)**

### MEMORANDUM AND ORDER
### ON MOTIONS TO DISMISS

This matter is before the Court on the defendants' motions pursuant to Mass. R. Civ. P. Rule 12(b)(6) and Rule 23.1 to dismiss this consolidated action. The grounds for the motions are, among others, that the now-consolidated complaints do not comply with Rule 23.1 because the plaintiffs failed to make a pre-suit demand upon the board of directors and because the plaintiffs have failed to allege with particularity sufficient grounds to excuse their failure to make such demand. Additionally, the defendants move for dismissal on grounds that the complaints fail to state a claim, and because any claims for damages are premature.

### BACKGROUND

Sonus Networks, Inc. ("Sonus") is a Delaware corporation, said to be headquartered in Westford, Massachusetts. Sonus is a provider of voice over IP infrastructure solutions that enable voice services to be delivered over packet-based networks.

The plaintiffs purport to be Sonus shareholders and have brought their derivative suits against most members of Sonus's board of directors and certain of its executive officers. The essence of the complaints are: that six members of Sonus's board of directors and certain of its

---

[1] See Pre-Trial Order No. 1 consolidating Tillman v. Ahmed, et al., Suffolk No. 04-0754 BLS with Palma v. Ahmed, et al., Suffolk No. 04-0753 BLS and re-defining the caption of the consolidated action as "In re Sonus Networks, Inc. Derivative Litigation."

executive officers, despite their responsibility for maintaining and establishing internal controls

and ensuring that Sonus's financial statements were based on accurate financial information,

permitted Sonus to issue false press releases regarding its financial statements; that the defendant

Hassan Ahmed ("Ahmed"), Sonus's President and CEO, made false statements in three

interviews regarding Sonus's financial condition, and he signed Sonus's allegedly incorrect

financial statements; and that three of the directors, who served as members of the Sonus Audit

Committee, approved the incorrect financial statements and, therefore, are direct participants in

the wrongdoing.  The complaints further charge that the defendant directors failed to prevent and

permitted Sonus to file improper financial statements with the Securities and Exchange

Commission and elsewhere.  Allegedly, once the true condition of Sonus's financial situation

came to light in January 2004, and thereafter, the Sonus stock price is said to have plummeted,

erasing over $1 billion of the Company's market capitalization.

On February 20, 2004, the plaintiffs filed these derivative actions.  The suits were not

preceded by any demand, written or oral, that the board take any particular action with respect to

the plaintiffs' allegations.  Instead, the plaintiffs assert that any demand upon the members of the

board would have been a "futile, wasteful and useless act."

Five of the seven present directors of Sonus are outside directors,[2] meaning they are not

otherwise employees of Sonus.  One of the outside directors, H. Brian Thompson ("Thompson"),

has not been named as a defendant.[3]

_____

[2] Ahmed and defendant Rubin Gruber are conceded by Sonus to be "inside directors/officers."

[3] The plaintiffs ask this Court not to consider the public filing by Sonus of Form 3 with the Securities and Exchange Commission ("S.E.C.") reflecting that Sonus's board of directors

The complaints themselves are lengthy and detailed, with allegations contained in 95 numbered paragraphs, many with subparagraphs and lengthy quotations from written materials, spread over 41 pages. The authors seem to have overlooked the dictates of Mass. R. Civ. P. Rule 8(a)(1) calling for a short and plain statement of the claim.

## DISCUSSION

Given Sonus's status as a Delaware corporation, much of the argument for and against the motions to dismiss cites to Delaware law. The law of a corporation's state of incorporation provides the circumstances under which a pre-suit demand would be futile. Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95-96 (1991); Harhen v. Brown, 431 Mass. 838, 844 (2000); Bartlett v. New York, N.H., & H. R.R. Co., 221 Mass. 530, 538 (1915). Thus, this Court will begin by reciting some general principles of Delaware law that apply here.

The focus, principally, is on the issue of the absence and alleged futility of making a pre-suit demand on the Sonus board of directors.

> A cardinal precept of the General Corporation Law of the State of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation. . . . The existence and exercise of this power carries with it certain fundamental fiduciary obligations to the corporation and its shareholders. . . . Moreover, a stockholder is not powerless to challenge director action which results in harm to the corporation. The machinery of corporate democracy and the derivative suit are potent tools to redress the conduct of a torpid or unfaithful management. The derivative action developed in equity to enable shareholders to sue in the corporation's name where those in control of the

_____

[cont.] has seven members. The Court declines to cast a blind eye to this established fact. The plaintiffs' request is unusual, to say the least, given that this is a situation presenting the determination of whether pre-suit demand on the directors should be excused. Should the Court not be told how many directors there are? And, if so, why do the plaintiffs themselves, in the very first sentence of the Statement of Facts portion of their opposition, state: "The Complaint names an overwhelming majority – six out of seven – of the members of the Board of Directors as defendants. . . ?" Is the Court not entitled to know that there are seven?

company refused to assert a claim belonging to it. The nature of the action is two-fold. First, it is the equivalent of a suit by the shareholders to compel the corporation to sue. Second, it is a suit by the corporation, asserted by the shareholders on its behalf, against those liable to it.

By its very nature the derivative action impinges on the managerial freedom of directors. Hence, the demand requirement of Chancery Rule 23.1 exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits. Thus, by promoting this form of alternate dispute resolution, rather than immediate recourse to litigation, the demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of corporations.

Aronson v. Lewis, 473 A.2d 805, 811-812 (Del. Supr. 1984). See also Brehm v. Eisner,

746 A.2d 244, 253 (Del. Supr. 2000).

Whatever the underlying allegations, if a derivative plaintiff fails to carry the burden of

demonstrating that demand should be excused, the complaint must be dismissed. Kaufman v.

Belmont, 479 A.2d 282, 286 (Del. Ch. 1984).

If a plaintiff does not actually make demand prior to filing suit, he or she "must set forth

. . . particularized factual statements that are essential to the claim." Brehm, supra, 746 A.2d at

254. The pleading requirements of Rule 23.1 are "an exception to the general notice pleading

standard" and "more onerous than that required to withstand a Rule 12(b)(6) motion to dismiss."

Levine v. Smith, 591 A.2d 194, 207, 210 (Del. Supr. 1991).

The plaintiff is required to plead with particularity that "reasonable doubt" exists either

that: (1) a majority of the board is disinterested and independent; or (2) that the challenged

transaction was a valid exercise of business judgment. Aronson, supra, 473 A.2d at 814; Rales v.

Blasband, 634 A.2d 927, 933 (Del. Supr. 1993). Thus, in determining demand futility, the Court

"must make two inquiries, one into the independence and disinterestedness of the directors and

4

the other into the substantive nature of the challenged transaction and the board's approval

thereof." Id.

> To satisfy [the] requirement [of alleging with particularity the reasons for the plaintiff's failure to demand action from the board], the "stockholder plaintiff[] must overcome the powerful presumptions of the business judgment rule" by alleging sufficient particularized facts to support an inference that demand is excused because the board is "incapable of exercising its power and authority to pursue the derivative claims directly." In Aronson v. Lewis, we held that a demand on the board is excused only if the complaint contains particularized factual allegations raising a reasonable doubt that either: (1) "the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment."

White v. Panic, 783 A.2d 543, 551 (Del. Supr. 2001).

> However, the mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient to challenge either the independence or disinterestedness of directors, although in rare cases a transaction may be so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.

Aronson, supra, 473 A.2d at 815.

"The question of independence flows from an analysis of the factual allegations

pertaining to the influences upon the directors' performance of their duties generally, and more

specifically in respect to the challenged transaction." Pogostin v. Rice, 480 A.2d 619, 624 (Del.

Supr. 1984).

The Court looks then at the question of whether a reasonable doubt is created that the

challenged transactions were other than the product of valid exercises of business judgment.

The challenged transactions relate to: (1) Sonus's maintaining and establishing internal

controls to ensure that Sonus's financial statements were based on accurate financial information;

Sonus's issuance of press releases regarding its financial statements; the defendant Ahmed's

statements, in three interviews, regarding Sonus's financial condition, and his signing of Sonus's

allegedly incorrect financial statements; the fact that three of the directors, who served as

members of the Sonus Audit Committee, approved the financial statements; and the fact that the

defendant directors failed to prevent and permitted Sonus to file improper financial statements

with the S.E.C. and elsewhere.

> "[There] is a very large – though not insurmountable – burden on stockholders
> who believe they should pursue the remedy of a derivative suit instead of selling
> their stock or seeking to reform or oust these directors from office.
>
> Delaware has pleading rules and an extensive judicial gloss on those rules
> that must be met in order for a stockholder to pursue a derivative remedy. Sound
> policy supports these rules, as we have noted. This Complaint, which is a
> blunderbuss of a mostly conclusory pleading, does not meet that burden, and it
> was properly dismissed.

Brehm, supra, 746 A.2d at 267.

What is challenged in the complaint are not specific actions by the board, but rather

generalized allegations reflecting poor supervision over financial statements, particularly with

regard to the controls over how they were prepared and the publication thereof to the S.E.C. and

the investing public. There are no particularized allegations as to any specific act by any

particular board member individually or by the board as a whole. See Rales, supra, 634 A.2d. at

933.

Thus, here, a reading of the complaints, however lengthy, cannot be said to provide to the

Court – and it is the Court, not the plaintiffs, that must harbor this doubt – a "reasonable doubt"

that any activities by the directors, individually or as a group, were other than the product of valid

exercises of business judgment.[4]

The Court next turns to the issue of the disinterestedness and independence of the board members. A presumption of propriety must be the starting point in the absence of clear allegations to the contrary. Aronson, supra, 473 A.2d. at 812, 815. See also Grimes v. Donald, 673 A.2d 1207, 1216 (Del. 1996).

As noted above, the Sonus board has seven members, five outside directors and Ahmed and Gruber. One of the outside directors, Thompson, has not been named as a defendant.[5] Consequently, he must be deemed disinterested without further discussion. The Court will, therefore, consider the status of the pleadings relating to the remaining four outside directors: Edward T. Anderson ("Anderson"), Paul J. Ferri ("Ferri"), Albert A. Notini ("Notini") and Paul J. Severino ("Severino").

It is alleged that Anderson sold certain Sonus stock, allegedly at a significant profit and on insider information. The details, however, are scant. "[T]he mere fact that stocks were traded by . . . [a] director does not establish a breach of the duty of loyalty." McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001); Shaw v. Digital Equipment Corp., 82 F.3d 1194, 1224 (1st Cir. 1996).

Further, according to Form 4 filed with the S.E.C. on July 22, 2003, Anderson's stock

---

[4] If the test was whether "there is a reasonable inference that the business judgment rule is not applicable," [emphasis added], as applied below in Aronson by the Vice Chancellor, this Court might well reach a different conclusion. But the Vice Chancellor was specifically overruled on that issue by the Delaware Supreme Court. See Aronson, supra, 473 A.2d at 814.

[5] The complaints were each filed on February 20, 2004, and the defendants' motions to dismiss revealing Thompson's existence as a director were served on March 22, 2004. The plaintiffs' have yet, however, to take any steps to add Thompson as a party. Apparently, they prefer to have this Court decide the present motions and thereafter seek leave to amend their complaints. That is not the order of preference for this Court. The complaints will live or die as written when the arguments were presented to the Court.

sale occurred on July 18, 2003, and was stock "held in trust for the benefit of his family and minor children," not shares personally held by him. This sale was over six months before the January 2004 announcement of Sonus's financial reporting problems. And the complaints contain no particularized allegations of facts that would demonstrate any impropriety with Anderson's stock sale. Consequently, this Court cannot, on this charge, conclude that Anderson lacks the independence necessary, or is too interested, to be considered other than a disinterested and independent director of Sonus.

As to all of the directors, there is an absence of specific or particularized allegations regarding how they would have been put on notice of any accounting problems or improprieties. Thus, again, this is no basis for excusing a demand. See, e.g, Guttman v. Huang, 823 A.2d 492, 498 (Del. Ch. 2003).

There are allegations that Ferri and Severino, by virtue of their positions on Sonus's Compensation Committee, exert control over fellow board members. Again, however, there are no particularized allegations of any interest on the part of these allegedly controlling directors that would render them less than disinterested and independent. See Brehm, supra, 746 A.2d at 258. See also White v. Panic, 793 A.2d 356, 366 (Del. Ch. 2000); Langner v. Brown, 913 F. Supp. 260, 266 (S.D.N.Y. 1996).

Again there are some allegations about different business relationships shared among or between some of the directors. Directors are not, however, interested or lacking in independence merely because they share outside professional associations or relationships. Kohls v. Duthie, 765 A.2d 1274, 1284 (Del. Ch. 2000); Green v. Phillpis, C.A. No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996). "There is nothing sinister or corrupt in the single fact of association

8

or affiliation in financial matters. There must be some further fact before there is anything wrong about it." Bartlett, supra, 221 Mass. at 537. No reasonable doubts are raised by the relationships alleged here.

Lastly, the conclusory allegations about generalized misconduct establishing personal liability and those about insurance coverage are insufficient to excuse the demand requirement. See Seminaris v. Landa, 662 A.2d 1350, 1354 (Del. Ch. 1995); Rales, supra, 634 A.2d at 936; Kaufman, supra, 479 A.2d at 287; Aronson, supra, 473 A.2d at 817-818. "Demand is not excused simply because plaintiff has chosen to sue all directors. . . . To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply be designating all directors as targets." Grimes, supra, 673 A.2d at 1216 n.8.

Demand has not been shown to be excused in these cases.

The Court does not assess in any way the other contentions by the defendants in support of their motions to dismiss.

As a result of the foregoing analysis of Delaware law and a review of the complaints, this Court concludes that the complaints must be dismissed. Further, the Court accepts the Delaware Supreme Court's reasoning that such dismissal ought to be without leave to further amend. See White, supra, 783 A.2d at 555.

## ORDER

For the foregoing reasons, the Defendants' Motions to Dismiss the Complaint, as amended, (Paper #11 in case No. 04-0753 BLS and Paper #13 in case No. 04-0754 BLS) are ALLOWED, without leave to amend.  Final judgment shall enter accordingly, dismissing the cases, with each party to bear his or its own costs.

_____
Allan van Gestel
Justice of the Superior Court

DATED:        September 27, 2004