**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE SONUS NETWORKS, INC. SHAREHOLDER DERIVATIVE LITIGATION | ) ) ) ) ) Case No. 04-10359-DPW |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**SECOND AMENDED CONSOLIDATED**
**SHAREHOLDER DERIVATIVE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

    I.     The Parties.................................................................................................2

    II.    Sonus' Disclosure and Investigation of Accounting Irregularities...........2

    III.   Procedural Context ..................................................................................3

ARGUMENT...........................................................................................................5

    I.     Plaintiffs Are Collaterally Estopped From Relitigating The Futility of
         Demand on Sonus' Board of Directors ....................................................5

         A.    The Issue Of Whether Demand Is Excused Was Already  Litigated
              And Decided .................................................................................6

              1.    Plaintiffs' Additional Pre-February 23, 2004 Evidence Does Not
                    Avoid the Collateral Estoppel Effect of Judge Van Gestel's
                    Decision..........................................................................7

              2.    Plaintiffs' "New" Post-February 23, 2004 Evidence Is Irrelevant
                    Because Futility Is Assessed as of The Date of Filing .........8

               3.    Even If Additional or "New" Evidence Is Considered, It Adds
                    Nothing Material to The Evidence Already Considered by Judge
                    Van Gestel .......................................................................9

         B.    Judge van Gestel's Decision That Demand Is Not Excused  Was
               Essential To A Valid Final Judgment ........................................11

         C.    Plaintiffs in the Federal and State Actions Are In Privity .........11

    II.    The Complaint Fails To Plead Demand Futility Under Rule 23.1 Adequately .....12

         A.    The Standard for Demand Futility ............................................12

         B.    The Plaintiffs Fail to Allege Particularized Facts Establishing A
               Reasonable Doubt That A Majority Of The Sonus Board Is
               "Interested"..................................................................................13

              1.    Additional Allegations Concerning the Existence of a Class
                    Action Suit and Generic Statements Concerning Improving
                    Internal Controls Do Not Affect Demand Futility Analysis ..............14

2.  Repeated Allegations From Plaintiffs' Prior Complaint Still Do Not Demonstrate Interest or Dependence Sufficient to Excuse Demand ................................................................................17

a)  Allegations That Defendants Engaged In Misconduct And Thus Would Not Sue Themselves Do Not Demonstrate Interest Sufficient To Excuse Demand ...........................................17

b)  The Exculpation Clause in the Sonus Charter Eliminates A "Substantial Likelihood" of Liability On the Part of Majority of the Sonus Board ...............................................................20

c)  Allegations Of A Single Stock Sale By A Single Director Defendant Are Inadequate To Excuse Demand Even As To That Director ...................................................................................21

d)  Plaintiffs Fail to Allege Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Sonus Board "Lacks Independence" ......................................................................23

(i)  Conclusory Allegations That Defendants Ferri And Severino Control Ahmed's and Gruber's Compensation Are Inadequate To Excuse Demand ..................................................23

(ii)  Vague Allegations About Defendants' Personal and Business Relationships Are Inadequate To Excuse Demand .....................24

CONCLUSION .............................................................................................25

## TABLE OF AUTHORITIES

<u>Federal Cases</u>

*Blatt v. Muse Techs, Inc.*,
    No. Civ.A. 01-11010-DPW, 2002 WL 31107537 (D. Mass. Aug 27, 2002) ......................... 22

*Boateng v. InterAmerican Univ., Inc.*,
    210 F.3d 56 (1st Cir. 2000) ......................................................................................... 20

*Cramer v. Gen. Tel. & Elec. Corp.*,
    582 F.2d 259 (3d Cir. 1978) ......................................................................................... 11

*DeCosta v. Viacom Int'l, Inc.*,
    981 F.2d 602 (1st Cir. 1992) ......................................................................................... 7, 8

*Dellastatious v. Williams*,
    242 F.3d 191 (4th Cir. 2001) ......................................................................................... 21

*Gerrity v. Chapin*,
    No. 79 Civ. 2393, 1980 WL 1364 (S.D.N.Y. Jan. 9, 1980) ...................................................... 11

*Grossman v. Johnson*,
    674 F.2d 115 (1st Cir. 1982) ......................................................................................... 8

*Kamen v. Kemper Fin. Servs.*,
    500 U.S. 90 (1991) ......................................................................................... 12

*In re Kauffman Mut. Fund Actions*,
    479 F.2d 257 (1st Cir. 1973) ......................................................................................... 6

*Keystone Shipping Co. v. New England Power Co.*,
    109 F.3d 46 (1st Cir. 1997) ......................................................................................... 5

*Landy v. D'Alessandro*,
    316 F. Supp. 2d 49 (D. Mass. 2004) ......................................................................................... 14

*Lebron-Rios v. U.S. Marshal Serv.*,
    341 F.3d 7 (1st Cir. 2003) ......................................................................................... 6

*Lewis v. Graves*,
    701 F.2d 245 (2d Cir. 1983) ......................................................................................... 14

*McCall v. Scott*,
    239 F.3d 808 (6th Cir. 2001) ......................................................................................... 21, 22

*Mitzner v. Hastings*,
    No. C 04-3310 FMS, 2005 WL 88966 (N.D. Cal. Jan. 14, 2005) ......................................................... 14

*Muniz Cortes v. Intermedics, Inc.*,
   229 F.3d 12 (1st Cir. 2000) .................................................................. 6

*Nathan v. Rowan*,
   651 F.2d 1223 (6th Cir. 1981) ............................................................. 11

*In re Nike, Inc. Sec. Litig.*,
   181 F. Supp. 2d 1160 (D. Or. 2002) ................................................... 22

*NLRB v. Donna-Lee Sportswear Co.*,
   836 F.2d 31 (1st Cir. 1987) .................................................................. 11

*In re Party City Sec. Litig.*,
   147 F. Supp. 2d 282 (D.N.J. 2001) ..................................................... 22

*Pignons S.A. de Mecanique v. Polaroid Corp.*,
   701 F.2d 1 (1st Cir. 1983) ................................................................. 7, 8

*Saez Rivera v. Nissan Mfg. Co.*,
   788 F.2d 819 (1st Cir. 1986) ................................................................. 6

*In re Sagent Tech., Inc., Deriv. Litig.*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) .............................................. 24

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) ............................................................... 19

*In re Strangie*,
   192 F.3d 192 (1st Cir. 1999) ................................................................. 5

*Taddy v. Singh*,
   No. 1:04cv1051 slip op. (E.D.Va. Dec. 8, 2004) ........................... 19, 21, 22, 24, 25

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ............................................................. 22

<u>State Cases</u>

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) .............................................................passim

*In re Baxter Int'l, Inc. Sh'holders Litig.*,
   654 A.2d 1268 (Del. Ch. 1995) ..................................................... 20, 23

*Beam v. Stewart*,
   833 A.2d 961 (Del. Ch. 2003) ............................................................. 24

*Beam v. Stewart*,
   845 A.2d 1040, 1046 (Del. 2004) ........................................ 13, 23, 24, 25

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ...................................................................... 12, 13, 17, 23

*In re Caremark Int'l Inc. Deriv. Litig.*,
   698 A.2d 959 (Del. Ch. 1996)............................................................ 10, 14, 15, 20, 21

*Caruana v. Saligman*,
   Civ. A. No. 11135, 1990 WL 212304 (Del. Ch. Dec. 21, 1990) ............................................. 19

*In re Citigroup Inc. S'holders Litig.*,
   No. 19827, 2003 WL 21384599 (Del. Ch. June 5, 2003) .................................................. 14, 15

*Decker v. Clausen*,
   *Civ. A. Nos*. 10,684, 10,685, 1989 WL 133617 (Del. Ch. Nov. 6, 1989) ................................ 19

*Gagliardi v. TriFoods Int'l, Inc.*,
   683 A.2d 1049 (Del. Ch. 1996)............................................................................ 17

*Green v. Phillips, C.A. No.*
   14436, 1996 WL 342093 (Del. Ch. June 19, 1996) ..................................................... 25

*Grimes v. Donald*,
   673 A.2d 1207 (Del. 1996) ............................................................................... 17

*Guttman v. Huang*,
   823 A.2d 492 (Del. Ch. 2003).......................................................................passim

*Haber v. Bell*,
   465 A.2d 353 (Del. Ch. 1983)............................................................................ 19

*Harhen v. Brown*,
   41 Mass. 838 (2000) ..................................................................................... 2

*Kaufman v. Belmont*,
   479 A.2d 282 (Del. Ch. 1984)............................................................................ 12

*Kohls v. Duthie*,
   765 A.2d 1274, 1284 (Del. Ch. 2000)................................................................... 25

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) ........................................................................... 20, 21

*Natal v. City of New Bedford*,
   No. 99-00396, 2001 WL 950893 (Mass. Super. Ct. Aug. 6, 2001) ...................................... 10

*Rales v. Blasband*,
   634 A.2d 927 (Del. 1993) .........................................................................passim

*Rattner v. Bidzos*,
    No. 19700, 2003 WL 22284323 (Del. Ch. Sept. 20, 2003) ................................................. 13, 21

*Schnitzer v. O'Connor*,
    653 N.E.2d 825 (Ill. App. Ct. 1995) ........................................................................................ 11

*Seminaris v. Landa*,
    662 A.2d 1350 (Del. Ch. 1995) ............................................................................................... 23

<u>Federal Statutes</u>

28 U.S.C. § 1738 ...................................................................................................................... 5

<u>State Statutes</u>

8 Del. Code § 102(b)(7) ......................................................................................................... 20

<u>Federal Rules</u>

Fed. R. Civ.. P. 15(c)(2) .......................................................................................................... 9

Fed. R. Civ.. P. 23.1 ............................................................................................................... 12

## INTRODUCTION

Plaintiffs in this action are among several purported shareholders of Sonus Networks, Inc. ("Sonus" or the "Company") who have brought derivative suits against several of Sonus' officers and directors. Like the shareholders before them, and notwithstanding a second chance to amend their pleadings, these plaintiffs did not make a demand on the Sonus Board and fail to show that demand would have been futile. Accordingly, the Complaint should be dismissed with prejudice.

First, the issue of demand futility has already been litigated and decided. On September 27, 2004, Judge van Gestel of the Massachusetts Superior Court entered judgment dismissing virtually identical derivative complaints, holding that "demand has not been shown to be excused in these cases." Plaintiffs – who seek to assert corporate claims belonging to Sonus – are now collaterally estopped from relitigating that issue.

Second, even if Plaintiffs' allegations of demand futility are considered, they suffer from the same deficiencies as the allegations considered and rejected by Judge van Gestel. Plaintiffs fail to allege relevant, particularized facts showing that a majority of the Sonus Board was incapable of considering demand, relying instead on the type of generalized, conclusory allegations that are consistently rejected by the courts. The only "new" allegations in the Second Amended Complaint – reference to boilerplate disclosures in Sonus' public filings and to an irrelevant lawsuit pending since 2002 – add nothing to the analysis of whether any Director was on notice of accounting irregularities and therefore faced a disabling likelihood of personal liability for breach of fiduciary duty at the time of the filing of this action.

1

## BACKGROUND

### I.    The Parties

Sonus, a Delaware corporation headquartered in Massachusetts, is a provider of voice infrastructure solutions that enable voice services to be delivered over packet-based networks. (Second Amended Consolidated Shareholder Complaint ("Compl.")  ¶¶ 1, 19.)

Plaintiffs, purportedly Sonus shareholders, have brought this derivative suit against six of Sonus' seven directors, ***four of whom were outside directors at the time the complaint was filed***: outside directors Edward T. Anderson, Paul J. Ferri, Albert A. Notini[1], Paul J. Severino[2] and inside directors, Hassan Ahmed (also the Company's President and C.E.O.) and Rubin Gruber (one of the Company's founders) (collectively, the  "Directors").  The Complaint also names as defendants Paul R. Jones (the Company's V.P. of Engineering), Edward N. Harris (the Company's V.P. of Manufacturing), J. Michael O'Hara (the Company's former V.P. of Marketing), and Stephen J. Nill (the Company's former C.F.O. and V.P. of Finance).

### II.    Sonus' Disclosure and Investigation of Accounting Irregularities

On January 20, 2004, Sonus announced that it was delaying the release of its financial results for Q4 and year 2003 pending completion of its 2003 audit.  (Id. ¶ 67.)  Thereafter, on February 11, 2004, Sonus issued a press release announcing that it had identified actions of certain employees that might affect its previous financial statements; that it was undertaking a detailed review of certain financial statement accounts; that the Company had terminated certain non-executive employees; that its Audit Committee was conducting an independent investigation; and that Sonus had notified the Securities and Exchange Commission ("SEC") of

---

[1]    Albert Notini joined Sonus' management team in April 2004.  He was an outside director during the time period relevant to the Complaint and at the time Plaintiffs first filed suit.  (Compl. ¶ 22.)

[2]    Because Plaintiffs have not even sued the fifth outside director, Brian Thompson (see Compl. ¶26), they have conceded his independence and disinterestedness in the context of demand futility analysis.  Harhen v. Brown, 41 Mass. 838, 844 (2000).

that investigation (the "February 11 Announcement").  (Id. ¶¶ 2, 68.)  Plaintiffs filed this suit on February 23, 2004, without making demand or waiting for the results of Sonus' investigation.

In the ensuing months, Sonus conducted a detailed review of certain financial statement accounts, and the Audit Committee conducted its internal investigation, giving the public periodic status reports.  (Id. ¶¶ 70, 71, 75, 78.)  On July 19, 2004, the Company announced that it had completed the review of its financial statements and that the Audit Committee had completed its internal investigation. (Id. ¶ 82.)  The Company then filed a Form 10K/A with the SEC, restating its financial results for fiscal years 2001 and 2002 and the first three quarters of fiscal year 2003. (Id. ¶ 83.)  The Company also reported that it had, in connection with the restatement, identified material weaknesses in its internal controls.  (Id. ¶ 85.)

On June 29, 2004, Sonus disclosed that the SEC had commenced a formal investigation in light of the Company's February 11 Announcement.  On June 7, 2005, less than a year after the Company's July 28, 2004 restatement, the SEC terminated its formal investigation without recommending any enforcement action.  See June 7, 2005 Letter from John T. Dugan (attached to Transmittal Affidavit of Gregory F. Noonan ("Trans. Aff.") as Ex. A).

## III.    Procedural Context

Approximately one week after the February 11 Announcement, on February 20, 2004, the first of five derivative lawsuits was filed against certain of Sonus' officers and Directors.  The first two of these actions were filed in Massachusetts Superior Court on February 20, 2004 (the "State Actions") and assigned to the Business Litigation Session.  See Verified Shareholder Derivative Complaint, Palma v. Ahmed, et al., 04-0753-BLS (Mass. Super. Ct. Feb. 20, 2004)

("State Complaint") (attached to Trans. Aff. as Ex. B).[3]  The remaining three derivative actions were filed in Massachusetts federal court on February 23, February 26 and March 24, 2004 (the "Federal Actions").[4]  On March 22, 2004, Defendants moved to dismiss the State Actions for failure to make demand on the Board.

On June 28, 2004, this Court consolidated the three Federal Actions, and stayed the case pending a ruling by Judge van Gestel on Defendants' motion to dismiss the State Actions.  See June 28, 2004 Order, Docket Entry #25.  The Court subsequently permitted the filing of a consolidated complaint, but also suggested that the Defendants address in their responsive pleading the status of the State Actions.  See Transcript of August 10, 2004 Hearing, Docket Entry #31.  The Federal Plaintiffs never sought to intervene in the State Actions.

By the time Plaintiffs filed their October 12, 2004 initial consolidated complaint, the State Actions had been resolved.  On September 27, 2004, Judge van Gestel dismissed the State Actions without leave to amend, finding that "demand has not been shown to be excused in these cases." Memo. and Order on Motions to Dismiss at 9, In re Sonus Networks, Inc. Deriv. Litig., (Mass. Super. Ct. Sept. 27, 2004) (No. 04-0753 BLS) ("State Court Order") (Trans. Aff. Ex. C). Plaintiffs in the State Actions appealed Judge Van Gestel's order and final judgment, but they later withdrew their appeal once the SEC terminated its investigation.  See Plaintiffs-Appellants' Assented To Motion to Withdraw Appeal, In re Sonus Networks, Inc. Deriv. Litig., Plaintiffs-Appellants' Assented To Motion to Withdraw Appeal (Mass. App. Ct. June 24, 2005) (No. 2004-P-1765) (Trans. Aff. Ex. D).

---

[3]    The State Actions are captioned as follows: (1) Palma v. Ahmed, et al., 04-0753-BLS; and (2) Tillman v. Ahmed, et al., 04-0754-BLS.  The cases were later consolidated under the caption In re Sonus Networks, Inc., Deriv. Litig. 04-0753-BLS.

[4]    The three Federal Actions were captioned as follows: (1) Williams v. Ahmed, et al., 04-CV-10359; (2) Burk v. Ahmed, et al., 04-CV-10384; and (3) Pisnoy v. Ahmed, et al., 04-CV-10576.

This Court granted Plaintiffs leave to file a further amended complaint on June 1, 2005. See June 15, 2005 Electronic Clerk's Notes. The Court gave Plaintiffs the opportunity to present "their best shot" in a "final complaint" for which "there will be no leave to amend once a judgment is entered." See June 1, 2005 Hearing Transcript at 21-24, Docket Entry #50 ("June 1, 2005 Tr."). On July 5, 2005, after the withdrawal of the state appeal and the termination of the SEC formal investigation, Plaintiffs filed their Second Amended Complaint.

## ARGUMENT

### I.    Plaintiffs Are Collaterally Estopped From Relitigating The Futility of Demand on Sonus' Board of Directors

Plaintiffs allege that demand on the Sonus Board would have been futile. (Compl. ¶ 147.) Judge van Gestel rejected this precise claim in the State Actions, and his decision precludes Plaintiffs – who are bringing this claim on behalf of Sonus, not in their own right – from relitigating this issue now.

This Court must give the same preclusive effect to the judgment in the State Actions as would the Massachusetts state courts. See 28 U.S.C. § 1738; Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 50 (1st Cir. 1997). For Judge van Gestel's decision to have preclusive effect, three elements must be present: (1) the same issue must have been actually litigated and decided; (2) the issue decided must have been essential to a final judgment; and (3) the party against whom preclusive effect is asserted must have been either a party in the prior case or in privity with a party. See In re Strangie, 192 F.3d 192, 194 (1st Cir. 1999) (citing Sena v. Commonwealth, 629 N.E.2d 986, 992 (Mass. 1994)).[5] All three elements are met here.

---

[5]    While Massachusetts law controls the issue preclusion question, the First Circuit has recognized that its cases apply the same preclusion principles as Massachusetts courts. See Keystone Shipping, 109 F.3d at 50-51.

### A.    The Issue Of Whether Demand Is Excused Was Already Litigated And Decided

Judge van Gestel's decision dismissing the State Actions turned on the same issue raised at the outset by this case – whether the Sonus Board was capable of impartially considering demand at the time that purported derivative litigation commenced.

The First Circuit has made clear that a plaintiff only gets one opportunity to demonstrate demand futility, and that an adverse decision on that issue precludes relitigation.    In re Kauffman Mut. Fund Actions, 479 F.2d 257, 267 (1st Cir. 1973), the court stated:

> In affirming we must, however, comment upon one phrase in the order of the district court granting the motion to dismiss, that it is "without prejudice." This must mean without prejudice as to the substantive cause of action. ***The dismissal is with prejudice on the issue of the obligation to make a demand on the directors with respect to that substantive complaint***. The principle applies that "[a]lthough, where a judgment for the defendant is not on the merits, the plaintiff is not precluded from maintaining a new action on the same cause of action, he is precluded from relitigating the very question which was litigated in the prior action." (Emphasis added). [6]

Plaintiffs doubtless will once again try to argue that the facts on which their futility claims are based were not before Judge Van Gestel, and therefore the identity of issue prong of collateral estoppel is not satisfied.  This argument fails for several reasons.  First, as a matter of law, merely presenting additional "evidence" in a second proceeding does not avoid collateral estoppel.  Second, to the extent Plaintiffs rely on "new" facts that came to light after the

---

[6]    In re Kauffman is consistent with First Circuit law barring plaintiffs from relitigating other preconditions to sue.  See Lebron-Rios v. U.S. Marshal Serv., 341 F.3d 7, 13 (1st Cir. 2003) (noting that dismissal would preclude relitigation of whether plaintiffs had failed to exhaust administrative remedies before filing their Title VII action); Muniz Cortes v. Intermedics, Inc., 229 F.3d 12, 14 (1st Cir. 2000) (dismissal by Puerto Rico commonwealth court for lack of subject matter jurisdiction "precludes relitigation [in Federal district court] of the issues determined in ruling on the jurisdictional question"); Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 821 (1st Cir. 1986) (dismissal for improper service precluded relitigation of propriety of same method of service).

Defendants should not be misunderstood as arguing that Judge van Gestel's decision was "on the merits" as to the substantive cause of action. Judge van Gestel decided only that it is up to the Sonus Board, not individual shareholders, to decide what claims (if any) the Company should assert. Therefore, if in the exercise of its business judgment, the Sonus Board decides to pursue any of these claims as being in the best interest of the company, it remains free to do so.

6

February 23, 2004 filing of the Complaint, they are irrelevant as a matter of law because demand futility must be assessed as of the date of the filing of the action.  Finally, even if the "new" facts are considered, they are immaterial because all the salient facts concerning Sonus' restatement were before Judge Van Gestel.  Each of these points is addressed below.

### 1.    *Plaintiffs' Additional Pre-February 23, 2004 Evidence Does Not Avoid the Collateral Estoppel Effect of Judge Van Gestel's Decision*

As made clear by the First Circuit, merely presenting more evidence to support a claim will not avoid the collateral estoppel effect of a prior adverse ruling.  Specifically, in DeCosta v. Viacom Int'l, Inc., 981 F.2d 602 (1st Cir. 1992), the First Circuit considered whether different facts would prevent application of collateral estoppel.  In DeCosta, the plaintiff had sued for trademark infringement and lost, based on a finding that there had been no consumer confusion. Years later, the plaintiff sued again and argued that he was not estopped from relitigating the confusion issue because he had submitted significant additional evidence of confusion.  The First Circuit was not persuaded:

> This evidence does not help DeCosta, however, because, in context, it seems designed to prove the same ultimate fact -- "confusion"-- that he failed to prove before.  As the Restatement of Judgments points out, when a party has litigated such an "ultimate fact," and failed, "new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact."  We simply do not see why this kind of evidence could not have been provided the first time.

Id., 981 F.2d at 611; see also Pignons S.A. de Mecanique v. Polaroid Corp., 701 F.2d 1, 2-3 (1st Cir. 1983) (plaintiff could not avoid collateral estoppel by offering "new theories, evidence, and arguments" because "[o]nce a plaintiff has had a chance to prove a fact, he cannot reopen the matter simply by stating that he wishes to introduce more or better evidence").

Here, the "new" evidence offered by Plaintiffs concerning a class action lawsuit filed against Sonus in 2002, In re Sonus Networks et al. ("Steinberg"), 1:02-cv-11315-MLW (D. Mass.) (Compl. ¶¶ 10, 105-113), and references to boilerplate disclosures in Sonus' 2001 and 2002 SEC filings (id. ¶¶ 8-9, 97-104) — to the extent it bears on futility of demand — clearly could been "provided the first time" by plaintiffs in the State Action.  Far from being "new," these facts were widely known and publicly available.  In any event, under DeCosta and Pignons, this so-called new evidence is irrelevant.  No matter how much gild Plaintiffs apply to the lily, the issue of demand futility is the same as that decided by Judge van Gestel.  Accordingly, the Plaintiffs are estopped from relitigating it now.

## 2.    *Plaintiffs' "New" Post-February 23, 2004 Evidence Is Irrelevant Because Futility Is Assessed as of The Date of Filing*

To the extent Plaintiffs rely on "new" facts that arose subsequent to the filing of the State Court Complaint (and the original Complaint in this action), those facts are irrelevant as a matter of law.  As Plaintiffs conceded at the June 1, 2005 hearing before this Court, demand futility must be assessed at the time that the first derivative complaint was filed or as of February 23, 2004.  See June 1, 2005 Tr. at 16 ("demand futility is [gauged] at the time the Complain[t] is filed");  Grossman v. Johnson, 674 F.2d 115, 123  (1st Cir. 1982) ("The futility of making the demand required by Rule 23.1 must be gauged at the time the derivative action is commenced, not afterward with the benefit of hindsight.").  Thus, any reliance by Plaintiffs on Sonus' March 15, March 29, April 28, May 24, June 29, and July 19, 2004 announcements (Compl. ¶¶ 71-72, 79-82), the July 28, 2004 Restatement and Form 10-K/A (id. ¶¶ 4, 83-85, 148 (e), the Form 10-K filed by Sonus on March 15, 2005 (id. ¶¶ 6, 93, 148(e)), the March 14, 2005 letter from Ernst & Young LLP (id. ¶ 94), June 10, 2005 filing of amended Form 10-Qs (id. ¶ 95), and any post-

February 23, 2004 changes in Sonus' management structure and compensation decisions (id. ¶¶ 75, 86-88, 91, 148(j)), is irrelevant as a matter of law.[7]

### 3.    Even If Additional or "New" Evidence Is Considered, It Adds Nothing Material to The Evidence Already Considered by Judge Van Gestel

Finally, even leaving aside these two legal bars to Plaintiffs' attempt to end run Judge van Gestel's decision on the futility issue, all the salient facts were before Judge van Gestel by the time he ruled. For example, State Plaintiffs notified Judge van Gestel of the existence of the (now terminated) formal SEC probe into the Company's financial reporting, and argued that it changed the analysis of the demand futility issue. See Plaintiffs' Supplemental Memo. of Law In Opp. To Defendants' Motion To Dismiss, In re Sonus Networks, Inc. Deriv. Litig., (Mass. Super. Ct. July 20, 2004) (04-0753-BLS) (attached as Trans. Aff. Ex. E). In addition, State Plaintiffs attached as an exhibit to their brief opposing dismissal the Form 8K filed by Sonus with the SEC on March 29, 2004 (Compl. ¶¶ 3, 72) announcing that the Company expected to restate its financials results for the first three quarters of 2003 and the year 2002, that "existing financial statements for those periods should not be relied upon," and that the Company's review might expand into earlier periods. See Plaintiffs' Joint Memo. of Law In Opp. To Defendants' Motion To Dismiss, Palma v. Ahmed, et al., 04-0753-BLS, at 1 (Mass. Super. Ct. Apr. 7, 2004) (Trans. Aff. Ex. F).[8]

State Plaintiffs also put the issue of deficient internal controls before Judge van Gestel. See Trans. Aff. Ex. F at 13-14 (arguing that Directors' alleged "utter abdication" of duty to

---

[7]    Plaintiffs' amended Complaint relates back to the date of the initial February 23, 2004 federal derivative complaint. Fed. R. Civ. P. 15(c)(2).

[8]    The State Plaintiffs argued that the alleged "magnitude and duration of the scheme" demonstrated the futility of demand, so Judge van Gestel was able to consider (and reject) this argument. See Trans. Aff. Ex. F at 14.

implement internal controls excused demand).[9] The details of the restatement, including quantification of the amounts at issue and identification of the material weaknesses in internal controls, were made publicly available when the Company filed its Form 10-K/A on July 28, 2004, months before Judge van Gestel issued his decision. If the additional details made any material difference to the strength of the demand futility allegations, they would have been submitted to Judge van Gestel. In any case, as demonstrated below and as this Court recognized at the June 1, 2005 hearing, those details have little bearing on the demand futility issue because they merely identify the controls that were found to be deficient, and say nothing about the Boards' knowledge of any deficiencies, or what the Board did or did not do designing the Company's controls. See June 1, 2005 Tr. at 17 ("[t]here is nothing in terms of changes that were developed here that weren't before Judge van Gestel. Just got worse for the company.").[10] The same is true of the March 15, 2005 Form 10-K and the March 14, 2005 letter from Sonus' auditor, Ernst & Young LLP, documents which merely contain greater detail of deficiencies without setting forth any facts bearing on any Director's knowledge. (Compl. ¶¶ 6, 93-94.)

Plainly, the essential, material facts were before Judge van Gestel when he dismissed the State Actions with prejudice. The reasons to excuse demand presented to this Court – and the facts underlying them -- are fundamentally the same as those rejected by Judge van Gestel.

---

[9]    See also Trans. Aff. Ex. E, at 2 (Plaintiffs argued that the Defendants "failed to put in place internal controls, policies and procedures to adequately supervise and monitor Sonus' revenue recognition practices in violation of their duties recognized in In re Caremark Intern. Inc. Deriv. Litig., 698 A.2d 959, 970 (Del. Ch. 1996)."

[10]    Plaintiffs' assertions of Sarbanes-Oxley and breach of contract claims change nothing. Plaintiffs seek the very same relief as the State Plaintiffs in the State Actions; indeed, 6 of the Complaint's 8 causes of action are the same as those in the State Actions. Plaintiffs' addition of two new claims is a futile attempt to sidestep the fact that "the doctrine of collateral estoppel makes a determination of fact conclusive in a subsequent proceeding between the parties, whether on the same or a different claim." Natal v. City of New Bedford, No. 99-00396, 2001 WL 950893, at *5 (Mass. Super. Ct. Aug. 6, 2001) (rejecting as "miss[ing] the point" plaintiff's argument seeking to avoid collateral estoppel because "her federal civil rights claim in the District Court is a different cause of action from her state wrongful death claim").

**B.    Judge van Gestel's Decision That Demand Is Not Excused
Was Essential To A Valid Final Judgment**

Final judgment in the State Actions was entered on September 27, 2004, the same day
Judge van Gestel issued his decision that demand was not excused. See State Court Order. State
Plaintiffs have since withdrawn their appeal of the decision. See Trans. Aff. Ex. D. Plaintiffs
cannot dispute that this finding was the basis for the entry of judgment.

**C.    Plaintiffs in the Federal and State Actions Are In Privity**

Privity, for purposes of issue preclusion, requires a "relationship between two parties
which is sufficiently close so as to bind them both to an initial determination." NLRB v. Donna-
Lee Sportswear Co., 836 F.2d 31, 34-35 (1st Cir. 1987). As a matter of law, this relationship
exists here between the State and Federal Plaintiffs because they both sue on behalf of Sonus,
asserting claims belonging not to them as individuals, but to Sonus as a corporation. Nathan v.
Rowan, 651 F.2d 1223, 1226 (6th Cir. 1981) ("in shareholder derivative actions arising under
Fed. R. Civ. P. 23.1, parties and their privies include the corporation and all nonparty
shareholders.").[11] Decisions in a derivative case brought by one shareholder are therefore given
preclusive effect in a subsequent derivative case even if brought by a different shareholder. See
id. at 1227 (derivative claim precluded where claim brought by another shareholder previously
held barred by statute of limitations).[12]

Therefore, because Judge van Gestel's decision in the State Actions binds Plaintiffs in
this case, the issue of demand futility cannot be relitigated and the Complaint should be

---

[11]    See Gerrity v. Chapin, No. 79 Civ. 2393, 1980 WL 1364, at *4 (S.D.N.Y. Jan. 9, 1980) ("[f]or the purpose
of determining the applicability of res judicata, it is irrelevant that one action was filed by plaintiff Van Tassel and
the other by plaintiff Gerrity. In a shareholders' derivative suit, the substantive claim belongs to the corporation.").

[12]    See Cramer v. Gen. Tel. & Elec. Corp., 582 F.2d 259, 266-67 (3d Cir. 1978) (derivative claim based on
allegedly misleading proxy precluded where another shareholder's identical claim had previously been dismissed for
failure to state a claim); Schnitzer v. O'Connor, 653 N.E.2d 825, 833 (Ill. App. Ct. 1995) (affirming dismissal on res
judicata grounds based on previous dismissal of another shareholder's derivative complaint).

dismissed with prejudice.

## II.    The Complaint Fails To Plead Demand Futility Under Rule 23.1 Adequately[13]

Even if Plaintiffs are not precluded from relitigating the issue of demand futility, their allegations suffer from the same deficiencies identified by Judge van Gestel in the State Actions and fail to meet the heightened particularity requirements for pleading demand futility.

### A.    The Standard for Demand Futility

A plaintiff may file a derivative suit only if he demonstrates that the corporation itself wrongfully refused, or would have wrongfully refused, "to proceed after suitable demand" on the corporation's board of directors.  Kamen v. Kemper Fin. Servs., 500 U.S. 90, 95-96 (1991). Derivative claims are extraordinary remedies that impinge on the "cardinal precept" of corporate law that "the directors, rather than shareholders, manage the business and affairs of the corporation." Aronson v. Lewis, 473 A.2d 805, 811 (Del. 1984), overruled in part on other grounds by Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000).  The "demand requirement" for derivative suits exists "to insure that the stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits."  Aronson, 473 A.2d at 811-12.  Whatever the underlying allegations, if a derivative plaintiff fails to carry the burden of demonstrating that demand should be excused, the complaint must be dismissed.  See Kaufman v. Belmont, 479 A.2d 282, 286 (Del. Ch. 1984).

If a plaintiff fails to make demand prior to filing suit, he must "*allege with particularity* . . . the reasons ... for not making the effort" – in other words, why demand would have been "futile."  See Fed. R. Civ. P. 23.1 (emphasis added); see also Brehm, 746 A.2d at 254 ("Rule 23.1 is not satisfied by conclusory statements or mere notice pleading … What the pleader must

---

[13]    Because Sonus is a Delaware corporation, the demand analysis follows the law of Delaware.  Kamen v. Kemper Fin. Servs., 500 U.S. 90, 108-09 (1991) (demand analysis conducted under substantive law of state of incorporation).

set forth are particularized factual statements that are essential to the claim.") (citations omitted). To establish demand futility in a case such as this challenging a course of conduct rather than a specific action of the board, the plaintiff must plead with particularity that "reasonable doubt" exists that *a majority of the board* is disinterested and independent. See Rales v. Blasband, 634 A.2d 927, 934 (Del. 1993); Guttman v. Huang, 823 A.2d 492, 499 (Del. Ch. 2003). Importantly, plaintiffs must rebut the presumption of impartiality with respect to each individual director and cannot rely on wholesale allegations against the board or a group of directors as a whole. See Beam v. Stewart ("Beam II"), 845 A.2d 1040, 1046, 1049-50 (Del. 2004).[14]

In order to plead that a director is "interested," a plaintiff must allege specific facts demonstrating that the director faces a "*substantial* likelihood of personal liability" in the lawsuit. See, e.g., Rales, 634 A.2d at 936; Aronson, 473 A.2d at 815 ("mere threat of personal liability… is insufficient"). This showing is especially difficult to make where, as here, the majority of the Board is comprised of outside directors. See Rattner v. Bidzos, No. 19700, 2003 WL 22284323, at *11 (Del. Ch. Sept. 20, 2003).

To show a lack of "independence," Plaintiffs' allegations must create reasonable doubt as to whether a director is "so 'beholden' to an interested director … that his or her 'discretion would be sterilized.'" Beam II, 845 A.2d at 1050 (quoting Rales, 634 A.2d at 936). The non-interested director must be "more willing to risk his or her reputation than risk the relationship with the interested director." Id. at 1052.

### B.    The Plaintiffs Fail to Allege Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Sonus Board Is "Interested"

Plaintiffs assert eight causes of action against some or all of the Directors. (See Compl.

---

[14]    To meet their burden, Plaintiffs must raise a reasonable doubt as to at least 4 of the 7 Board members, and at least 2 of those 4 will need to be outside directors.

¶¶ 149-78.)  Plaintiffs fail, however, to demonstrate a "substantial likelihood" of personal liability under any of these theories for the same fundamental reason – the Complaint contains no well-pled factual allegations that implicate any member of the Board in any wrongdoing. [15]  The "likelihood" of liability is made even more remote by the exculpatory provision in Sonus' charter, which eliminates all possibility of personal liability for breaches of the duty of care.

1.    *Additional Allegations Concerning the Existence of a Class Action Suit and Generic Statements Concerning Improving Internal Controls Do Not Affect Demand Futility Analysis*

The essence of Plaintiffs' substantive allegations is that the Directors breached their duties by failing to ensure that the company had sufficient internal controls to prevent accounting mistakes in its financial statements.  (See, e.g., Compl. ¶¶ 7, 135, 137, 148(e), (f).)  In In re Caremark Int'l Inc. Deriv. Litig., 698 A.2d 959 (Del. Ch. 1996), and other cases, the Delaware courts consistently have observed that such a failure to supervise claim is among the most difficult to prove because it "premises liability on a showing that the directors were conscious of the fact that they were not doing their jobs."  Landy v. D'Alessandro, 316 F. Supp. 2d 49, 74 (D. Mass. 2004) (quoting Guttman, 823 A.2d at 506).

Accordingly, Plaintiffs must plead that the Directors were aware of or recklessly disregarded purported internal controls deficiencies.  See Mitzner v. Hastings, No. C 04-3310 FMS, 2005 WL 88966, at *6 (N.D. Cal. Jan. 14, 2005) (complaint failed to show that directors "face a substantial likelihood of liability under a Caremark claim theory" where "nothing alleged with particularity that reasonably raises the inference that the director defendants were aware of any possible manipulation of the financial results"); In re Citigroup Inc. S'holders Litig., No. 19827, 2003 WL 21384599, at *2 (Del. Ch. June 5, 2003) (demand not excused where no

---

[15]    The allegation that demand would be futile because Defendants failed to bring suit already (see Compl. ¶ 148(g),) proves too much.  See Lewis v. Graves, 701 F.2d 245, 249 (2d Cir. 1983) ("bald charges of mere failure to take corrective action are . . . inadequate to demonstrate futility.")

allegations "that the directors either knew or should have known that there were material inadequacies in the corporation's internal controls"), aff'd Rabinovitz v. Shapiro, 2003 WL 22701635 (Del. Nov. 12, 2003). Caremark requires Plaintiffs to establish that Directors had prior knowledge of, or recklessly ignored, "red flags" relating to the Company's financial controls. See Guttman, 823 A.2d at 507 (rejecting inadequately pled Caremark claim where no "red flags" raised alleged accounting irregularities to directors' attention).

In addition to repeating the generic allegations from their prior complaint, see infra §II(B)(2), plaintiffs add "new" allegations concerning the Steinberg litigation. They also cite to boilerplate 2001-2002 Company statements concerning Sonus' internal controls. Neither remotely approaches the sort of "red flag" that would make any Director substantially likely to be held liable for a Caremark violation.

In Steinberg, the purported class action plaintiffs ("Steinberg Plaintiffs") allege that Sonus, during the period December 11, 2000 to January 16, 2002, misrepresented that certain of its products were "carrier class" -- meaning that those products met certain performance standards including 99.999% availability. As examples of the alleged inadequacy of Sonus' products -- but *not* as examples of alleged accounting irregularities or fraud — the Steinberg Plaintiffs claim that the only way Sonus completed sales to two major customers, Qwest and Bell South, was to offer certain "inducements" as a quid pro quo. In particular, the Steinberg Plaintiffs allege that Sonus purchased an interest in an IRU (an irrevocable right of use) from Qwest and issued $10 million in convertible debt to Bell South. (Compl. ¶ 108.)

To be sure, the Steinberg Plaintiffs allege that the failure to disclose the linkages between these transactions violated certain accounting standards for reporting "swap" transactions. (Compl. ¶¶ 109-10.) But the point of the Steinberg allegations is not that Sonus committed

accounting fraud, much less that any Director knew of any accounting irregularities, but rather that Sonus disguised alleged *quid pro quos* to conceal *product problems.* The mere existence of such allegations (which remain wholly unproven as no discovery has taken place in the case) plainly does not constitute the sort of "red flag" that would have put any Director on notice of any problem with Sonus' internal controls.[16]

Equally inconsequential are "new" allegations that rely on statements taken out of context from Sonus' 10-K Forms, filed on March 28, 2001 and 2002, concerning the "need to continue to improve [Sonus'] financial, managerial, and manufacturing controls and reporting systems" due to the "significant strain" posed by "anticipated growth." (Id. ¶¶ 99, 102.) These statements are from the Form 10-Ks' mandatory "Risk Factor" sections, found under the heading, "[o]ur failure to manage our expansion effectively in a rapidly changing market could increase our costs, harm our ability to sell future products and impair our future growth."[17] These vanilla, forward-looking statements about a risk if "anticipated" growth materialized did not imply that any specific actual deficiencies existed. Plaintiffs are relying solely on hindsight to spin these statements into "red flags." The bottom line remains that the Directors were not on notice of any internal controls deficiencies until 2004, when they took appropriate remedial action.[18]

---

[16]    Even assuming *arguendo* that the Steinberg complaint alleges accounting irregularities, any hyper-technical violation of "swap transaction" rules in no way suggests any systemic problem with Sonus' accounting practices or internal controls that would have put any Director on notice of the types of issues that led to the 2004 restatement. In short, the new allegations about Steinberg are a red herring.

[17]    Both "Risk Factor" sections of the 10-Ks begin with the following warning: "Investing in our common stock involves a high degree of risk. You should carefully consider the risks described below before buying our common stock. If any of the following risks actually occurs, the trading price of our common stock could decline and you may lose all or part of your investment."

[18]    As noted above, see supra § IA2, the post February 23, 2004 "new" allegations are also irrelevant because they are after the filing of this lawsuit.

2.     ***Repeated Allegations From Plaintiffs' Prior Complaint Still Do Not
Demonstrate Interest or Dependence Sufficient to Excuse Demand***

In their newly-amended Complaint, Plaintiffs repeat boilerplate demand futility allegations as to Directors' supposed interestedness and dependence. These twice-told allegations are just as deficient as the "new" allegations addressed above.

a)     **Allegations That Defendants Engaged In Misconduct And Thus Would Not Sue Themselves Do Not Demonstrate Interest Sufficient To Excuse Demand**

As an initial matter, Plaintiffs' circular argument that the Directors cannot be expected to sue themselves fails as a matter of Delaware law.[19] Delaware law rejects this excuse. Aronson, 473 A.2d at 818 (rejecting plaintiff's argument that demand should be excused because directors participated in wrongful conduct and "would have to sue themselves").[20] In order to establish "interest," Plaintiffs must show more than the "mere threat" of personal liability. They must allege particularized facts that demonstrate a "substantial likelihood" that the Directors face personal liability that will prevent them from impartially considering demand. Rales, 634 A.2d at 936 (citing Aronson, 473 A.2d at 815). Plaintiffs fail to meet this burden.

All they offer, instead, is a series of conclusory allegations, none of which individually or collectively suggests that a majority of the board – or even one Director – knew or should have

---

[19]     See, e.g., Compl. ¶ 148 (a) ("inconceivable that Ahmed would … authorize claims which may implicate him"); ¶ 148 (b) ("inconceivable that [Gruber] would vote to sue to enforce claims given his primary responsibility for the Company's operations as Chairman during the subject periods"); ¶ 148 (c) ("Anderson would never vote to investigate his own conduct or to sue himself"); ¶ 148 (d) ("directors would never sue themselves"); ¶ 148 (h) (directors cannot consider demand "due to [their] participation in and responsibility for the conduct"); ¶ 148 (i) ("[t]hese defendants would never vote to pursue claim[s] which would expose them to personal liability").

[20]     See also Grimes v. Donald, 673 A.2d 1207, 1216 n.8 (Del. 1996) ("Demand is not excused simply because plaintiff has chosen to sue all directors …. To hold otherwise would permit plaintiffs to subvert the particularity requirements of Rule 23.1 simply by designating all the directors as targets."), overruled in part on other grounds by Brehm, 746 A.2d at 253; Gagliardi v. TriFoods Int'l, Inc., 683 A.2d 1049, 1055 (Del. Ch. 1996) ("It is well established 'that the simple expedient of naming a majority of otherwise disinterested and well motivated directors as defendants and charging them with laxity or conspiracy etc., will not'" excuse demand.).

been aware of any accounting or internal controls issues before January 20, 2004. Plaintiffs first incredibly allege that Defendants "knew" of these issues,[21] but then fail to identify a single, specific fact that came to the attention of any Director that would have raised "red flags," as they are required to do under Delaware law. Moreover, despite Plaintiffs' assertions (see, e.g., Compl. ¶¶ 135, 148(f), the Directors have never admitted, in the Restatement or otherwise, knowing of internal control deficiencies, other than through the Company's own 2004 investigation. Next, Plaintiffs assert that demand would have been futile as to Audit Committee members, but beyond alleging the Committee's duties to "review … interim and audited financial statements" (Compl. ¶ 122), and noting that it meets once each fiscal year, Plaintiffs again fail to allege any particularized facts that were called to the attention of any Committee member during the course of his service. (Id.)

Plaintiffs then say that Defendants had "access" to "internal corporate documents," such as "operating plans, budgets and forecasts, and reports of actual operations" (id. ¶ 36), but fail to identify a single document that was allegedly received by any Defendant (much less any outside director), fail to allege how or when any Defendant received such documents, and fail to identify information these documents allegedly contained that should have alerted the Defendants to accounting or internal controls issues. In similarly vague fashion, Plaintiffs point to "conversations" and "attendance at management and/or board of directors' meetings and committees thereof" (id.), without specifying with whom the Directors spoke, when, or what was said that supposedly alerted the Directors to accounting or internal controls issues.

---

[21]   See, e.g., Compl. ¶ 127 (Defendants "knew or recklessly disregarded that revenues were being inflated through improper accounting, and that the Company's financial reporting was not based upon sound internal controls"); ¶ 135 (Defendants "were aware of [statements'] misleading nature, or knew or were reckless in not knowing that such violations were occurring"); ¶ 148(f) ("all of the Director Defendants knew that Sonus lacked an adequate system of internal controls [due to 2001-2002 statements and Steinberg litigation.]").

These conclusory allegations do not carry Plaintiffs' burden.  See, e.g., Guttman, 823 A.2d at 507 (complaint failed to excuse demand on audit committee members because, *inter alia*, it failed to plead that committee "devoted patently inadequate time to its work, or …. had clear notice of serious accounting irregularities"); Aronson, 473 A.2d at 809, 817 (holding that allegation that all directors named in suit "participated in, expressly approved and/or acquiesced in, and are personally liable for, the wrongs complained of herein" did not allow plaintiff to avoid demand); Haber v. Bell, 465 A.2d 353, 359 (Del. Ch. 1983) (finding claim that board "approved or acquiesced in" challenged action insufficient to excuse demand).[22]  As discussed in detail above, the new Steinberg and 2001-2002 statement allegations do not cure this defect.[23]

---

[22]     See also In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 990 (9th Cir. 1999) (under Delaware law "general allegation that the Board participated in the fraudulent scheme … [is] insufficient to demonstrate that the Board engaged in conduct that resulted in a substantial risk of personal liability."), reh'g en banc denied 195 F.3d 521 (9th Cir. 1999); Taddy v. Singh ("Primus"), No. 1:04cv1051 slip op. at 17 (E.D.Va. Dec. 8, 2004) (to sufficiently allege substantial likelihood of personal liability under the Delaware law, "[Plaintiffs] need to articulate connections between specific information to which each defendant had access and specific false statements that each made, or caused to be made, to the public.") (Trans. Aff. Ex. I).

[23]     Nor do Plaintiffs' arguments about Directors' exposure to securities lawsuits or the potential loss of insurance coverage excuse demand. (Compl. ¶¶ 148(h), (k).)  The speculative possibility of damages in the federal securities law class action pending before this Court does nothing to increase the likelihood of personal liability for a majority of the Board.  As an initial matter, only *one* of the Directors (Mr. Ahmed) is named as a defendant in the securities class action.  See Amended Consolidated Class Action Complaint, In re Sonus Networks Inc. Litig., No. 04-10294, Docket Entry #103.  In any event, if the filing of a federal securities lawsuit were sufficient by itself to excuse demand, a shareholder could "always be assured of avoiding the demand requirement simply by including allegations of securities violations," or by filing two complaints instead of one.  Primus, No. 1:04cv1051 at 16 n. 13.

        Plaintiffs' further assertion that Defendants cannot consider demand because they would lose their insurance coverage if they brought suit has been rejected as nothing more than a variation "on the 'directors suing themselves' and 'participating in the wrongs' refrain."  Caruana v. Saligman, Civ. A. No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990) (holding demand not excused when "liability insurance has a typical exclusion from coverage of claims brought by [Company] against its directors") (quoting Decker v. Clausen, Civ. A. Nos. 10,684, 10,685, 1989 WL 133617, at *2 (Del. Ch. Nov. 6, 1989) (holding demand not excused when plaintiff's allegation that "liability insurance would not cover an action brought by the company against its own directors ... provid[ed] no particularized facts")); see also Primus, No. 1:04cv1051 at 16 n. 13 ("merely a variation on the discredited notion that directors will never sue themselves.")  For these reasons, Judge van Gestel rightly rejected these assertions as inadequate to excuse demand.  State Court Order at 9 ("conclusory allegations about generalized misconduct and those about insurance coverage are insufficient to excuse the demand requirement.").

**b)**     **The Exculpation Clause in the Sonus Charter Eliminates A "Substantial Likelihood" of Liability On the Part of Majority of the Sonus Board**

The Directors face no risk of liability – let alone "substantial" risk -- from such a claim because Sonus' charter extinguishes any personal liability for breaches of a director's duty of care to the full extent permitted under Delaware law:

> No director of [Sonus] shall be personally liable to the Corporation or to any of its stockholders for monetary damages for breach of fiduciary duty as a director [within the bounds of Delaware law] …

See Fourth Amended and Restated Cert. of Incorporation of Sonus, Art. VI (Trans. Aff. Exhibit G).[24]   Delaware law expressly recognizes that such an exculpatory provision shields directors from claims for monetary damages, except for claims of breach of their duty of loyalty, or for intentional misconduct, a knowing violation of law, or an improper personal benefit.  See 8 Del. Code § 102(b)(7); Malpiede v. Townson, 780 A.2d 1075, 1093 (Del. 2001) (affirming dismissal in light of exculpation clause where only duty of care at issue).  Absent allegations of a breach of the duty of loyalty or intentional misconduct, only the duty of care is implicated.

As described above, the Complaint contains no well-pleaded factual allegations that would support a non-exculpated claim.  Plaintiffs do not allege any intentional violation of law, and, except as to the hopelessly conclusory insider trading claim against Anderson, see infra § II(B)(2)(c), do not allege that any of the Directors reaped any personal benefit at Sonus' expense.  Rather, despite conclusory references to duties of loyalty, Plaintiffs' allegations clearly (if credited) would amount to no more than breaches of the duty of care.  See Caremark, 698 A.2d at 970 (classifying allegation that directors "violated a duty to be active monitors of corporate

---

[24]     It is proper for courts to take judicial notice of the Company's certificate of incorporation in deciding a motion to dismiss.  See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000) ("court may look to matters of public record in deciding a Rule 12(b)(6) motion without converting the motion into one for summary judgment"); In re Baxter Int'l, Inc. Sh'holders Litig., 654 A.2d 1268, 1270 (Del. Ch. 1995) (noting propriety of taking judicial notice of certificate of incorporation in deciding a motion to dismiss).

performance" as violation of duty of care rather than duty of loyalty); Dellastatious v. Williams, 242 F.3d 191, 196 (4th Cir. 2001) (citing Caremark in applying duty of care standard to directors' alleged failure to monitor).    Accordingly, the exculpation clause in Sonus' corporate charter eliminates any substantial risk to any of the Directors for personal liability on any of these "duty of care" claims.    See Malpiede, 780 A.2d at 1101 (dismissing case, noting "exculpatory provision in [Company charter] operates to bar claims for money damages [based on] alleged breach of the board's duty of care").

**c)**    **Allegations Of A Single Stock Sale By A Single Director Defendant Are Inadequate To Excuse Demand Even As To That Director**

Plaintiffs allege that *one* Director (Anderson) engaged in a single sale constituting insider trading.[25]    But "when directors and officers own stock or receive compensation in stock, they should be expected to trade those securities in the normal course of events."    McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001), amended on other grounds 250 F.3d 997 (6th Cir. 2001). Plaintiffs must allege either particular facts showing that the insider trading was made on the basis of material non-public information or particular facts from which wrongful intent can be inferred, such as trading at suspicious times in suspicious amounts.    See id. at 825-26; Taddy v. Singh ("Primus"), No. 1:04cv1051 slip op. at 15 (E.D.Va. Dec. 8, 2004).

In this instance, however, Plaintiffs do not allege with any specificity the purported "inside information" that Anderson supposedly possessed at the time of his single trade, or how and when he acquired such information – only that Anderson learned of this information

---

[25]    The Complaint also alleges that three of the non-director Defendants (Harris, O'Hara and Jones) engaged in insider trading.  However, these allegations are irrelevant to whether demand is excused because only Board members evaluate demand.  See, e.g., Guttman, 823 A.2d at 503 n.22 ("that three non-director-defendants, who each engaged in very substantial trades during the Contested Period, are named in the case has little bearing on the demand excusal analysis for an obvious reason: they are not on the board"); Rattner v. Bidzos, No. Civ. A. 19700, 2003 WL 22284323, at *9 n.47 (Del. Ch. Sept. 30, 2003) ("for purposes of determining demand futility, the Individual Defendants who are not Director Defendants are largely irrelevant").

(whatever its nature) as a result of his service on the Audit Committee *or* because of his venture capital firm's investment in the Company.  As Judge Van Gestel held, this is insufficient.[26]

Nor do the amount and timing of the sale give rise to any inference of fraudulent intent. Anderson's single trade consisted of less than 13% of his stock, see Form 4 filed with the SEC by Edward T. Anderson on July 22, 2003 (Trans. Aff. Exhibit H), hardly supporting the inference that Plaintiffs seek to draw.  See McCall, 239 F.3d at 825 ("[t]he substantial holdings that [defendants] continued to maintain negate any inference that they were trading on materially adverse non-public information"); In re Vantive Corp. Sec. Litig., 283 F.3d 1079, 1094 (9th Cir. 2002) (sale of only 13% of shares "belies any intent to rid himself of a substantial portion of his holdings").  Finally, the timing of Anderson's sale – six months before the February 11 Announcement – substantially discredits any possible suspicion of insider trading.  See In re Nike, Inc. Sec. Litig., 181 F. Supp. 2d 1160, 1169 (D. Or. 2002) (two-month gap betweens sales and adverse disclosure negates any inference of scienter); In re Party City Sec. Litig., 147 F. Supp. 2d 282, 313 (D.N.J. 2001) ("A broad temporal distance between stock sales and a disclosure of bad news defeats any inference of scienter.").[27]

Similarly insufficient is Plaintiffs' assertion that demand on the other Directors is excused because they did not "prevent" the trading by Anderson or the non-director Defendants.  (See

---

[26]    See State Court Order at 7-8 ("the complaints contain no particularized allegations of facts that would demonstrate any impropriety with Anderson's stock sale.  Consequently, this Court cannot, on this charge, conclude that Anderson lacks the independence necessary, or is too interested, to be considered other than a disinterested and independent director of Sonus."); Guttman, 823 A.2d at 503-04 (allegations that defendants sold up to 100% of shares are insufficient to establish real threat of liability without facts showing knowledge of accounting irregularities); Primus, No. 1:04cv1051 at 15 ("simply alleging that [defendants] must have possessed information by virtue of their positions is not enough.").   Further, to the extent Plaintiffs mean to argue that the supposed "red flags" of the Steinberg case and SEC statements were "inside information" (Compl. ¶ 148 (c)), such information was available to the public.

[27]    Indeed, if this transaction involved trading on inside information, it was very poorly timed, as Sonus' stock reached nearly $10/share in the months that followed.  See Sonus Stock Prices (Trans. Aff. Exhibit J); see also Blatt v. Muse Techs, Inc., No. Civ.A. 01-11010-DPW, 2002 WL 31107537, at *4 (D. Mass. Aug 27, 2002) ("I may . . . tak[e] judicial notice of Muse's stock prices throughout the Class Period, from well-publicized and reliable sources of information, without converting the defendants' motions into ones for summary judgment.").

Compl. ¶ 148 (d)).  Plaintiffs do not plead a single fact suggesting that any other Director knew that Anderson or anyone else sold stock when he did, much less any facts suggesting the other Directors would have had reason to believe such sales were improper.   As noted above, conclusory claims that Directors "failed to prevent" alleged misconduct do not meet Plaintiffs' burden to show a substantial likelihood of personal liability.  See, e.g., Seminaris v. Landa, 662 A.2d 1350, 1354-55 (Del. Ch. 1995) (allegations that directors failed to prevent CEO from misrepresenting Company's financial condition did not "demonstrate a substantial likelihood of personal liability").[28]

### d)    Plaintiffs Fail to Allege Particularized Facts Establishing A Reasonable Doubt That A Majority Of The Sonus Board "Lacks Independence"

In the absence of an identifiable pecuniary benefit, a director's independence can be suspect only where that director is so "beholden" to another who is *interested* that he would be willing to risk his or her reputation rather than sue the interested director.  Beam II, 845 A.2d at 1052.  *A fortiori*, if the Court concludes that *no* Directors are interested, it need not consider the question of *any* Directors' independence.   See Rales, 634 A.2d at 936 (court considered independence of presumptively disinterested directors only after finding other directors interested); Brehm, 746 A.2d at 258 (no need to determine directors' independence from purported controller once determination made that purported controller was disinterested).

### (i)    Conclusory Allegations That Defendants Ferri And Severino Control Ahmed's and Gruber's Compensation Are Inadequate To Excuse Demand

Plaintiffs assert that demand on the Company's two inside Directors (Ahmed and Gruber) would be futile because two other Defendants (Ferri and Severino) control their compensation

---

[28]       See also In re Baxter Int'l., 654 A.2d at 1271 (rejecting futility argument "premised on a presumption that employee wrongdoing would not occur if directors performed their duty properly").

through membership on the Compensation Committee. (<u>See</u> Compl. ¶ 148(i).) Yet, as already observed by Judge Van Gestel: "[t]here are no particularized allegations of any interest on the part of these allegedly controlling Directors [Ferri and Severino] that would render them less than disinterested and independent." <u>See</u> State Court Order at 8.

Even if these two outside Directors were "interested," the mere fact that Messrs. Ahmed and Gruber derive their principal source of income from Sonus, including incentive-based compensation -- (Compl. ¶¶ 148(a), (b), (i)) -- does not make them "beholden" to either Ferri and Severino. Any other conclusion would establish an untenable per se rule automatically disqualifying every inside director. <u>See</u> <u>In re Sagent Tech., Inc. Deriv. Litig.</u>, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (if allegations that defendants are "not independent from other board members who have the ability to control their employment and compensation . . . were sufficient to show lack of independence, every inside director would be disabled from considering a pre-suit demand."); <u>Primus</u>, No. 1:04cv1051 at 14, 18 (directors not automatically dependent on those who control their compensation).[29]

>   **(ii)    Vague Allegations About Defendants' Personal and Business Relationships Are Inadequate To Excuse Demand**

Plaintiffs' next effort at establishing lack of independence -- the Directors' extensive personal and business relationships" (Compl. ¶ 148(l)) -- similarly falls flat. Under Delaware law, directors do not lack "independence" simply because they share outside professional associations or relationships. <u>See</u> <u>Beam II</u>, 845 A.2d at 1050 ("to render a director unable to consider demand, a relationship must be of a bias-producing nature. Allegations of mere personal friendship or a mere outside business relationship, standing alone, are insufficient to

---

[29]    Plaintiffs make no particularized allegations -- nor could they in good faith -- that Messrs. Ahmed or Gruber "blindly follow" the Compensation Committee members in an attempt to influence them, <u>see</u> <u>Beam v. Stewart</u>, 833 A.2d 961, 979 (Del. Ch. 2003), or otherwise comport with their wishes. <u>See</u> <u>Aronson</u>, 473 A.2d at 815.

raise a reasonable doubt about a director's independence.").  Rather, as noted above, the relationships must rise to the level that the "non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director." Id. at 1052.[30]

Plaintiffs' allegations fall far short of these standards.  Plaintiffs merely assert that the venture capital firms of Anderson and Ferri have frequently invested in the same companies, (Compl. ¶ 148(m)), that Anderson and Ferri have "high profiles" in the investment community (id. ¶ 148(n)), and that certain Directors have served on various boards together.  (Id. ¶ 148(o).) These unremarkable facts certainly do not give rise to a reasonable inference that any Director would be willing to risk his reputation for the sake of his relationship with any other Director. See State Court Order at 8-9 ("there are some allegations about different business relationships shared among or between some of the directors . . . .  No reasonable doubts are raised by the relationships alleged here."); see also Kohls v. Duthie, 765 A.2d 1274, 1284 (Del. Ch. 2000) (the law is "clear that evidence of a personal and/or business relationship does not raise an inference of self-interest") (quotation and citations omitted); Green v. Phillips, C.A. No. 14436, 1996 WL 342093, at *5 (Del. Ch. June 19, 1996) ("long-standing personal and business ties . . . are insufficient to overcome directors' presumption of independence"); Primus, No. 1:04cv1051 at 18 ("allegations that directors … worked at the same organization years ago do not, without more, come close to establishing entangling personal relationships").

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss the Complaint, in its entirety, with prejudice.

---

[30]    The fact that some of the Directors have worked together on the **Sonus** Board for a number of years, (Compl. ¶ 148 (l)), is insufficient to excuse demand.  The same is true of the conclusory allegations in Compl. ¶ 148 (j) that the directors would never sue Messrs. Ahmed or Gruber because of their positions with the Company and their receipt of incentive awards.  Both are simply variations of the insufficient argument that directors would never sue themselves and would, if accepted, excuse demand in every case.

Respectfully submitted,

/s/ Gregory F. Noonan
Jeffrey B. Rudman (BBO #433380)
James W. Prendergast (BBO #553073)
Daniel W. Halston (BBO #548692)
Peter A. Spaeth (BBO  #545202)
Gregory F. Noonan (BBO #651035)
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, Massachusetts 02109
Tel:  (617) 526-6000
Fax:  (617) 526-5000
*Attorneys for Defendants Edward T.*
*Anderson, Paul J. Ferri, Albert A. Notini,*
*Paul J. Severino and Nominal Defendant*
*Sonus Networks, Inc.*


/s/ John R. Baraniak (by perm. GFN)
Robert S. Frank, Jr. (BBO #177240)
John R. Baraniak, Jr. (BBO #552259)
Choate Hall & Stewart
Two International Place
Boston, Massachusetts 02110
Tel:  (617) 248-5000
Fax:  (617) 248-4000
*Attorneys for Defendant Hassan M. Ahmed*


/s/ Matthew J. Matule (by perm. GFN)
Thomas J. Dougherty (BBO #132300)
Matthew J. Matule (BBO #632075)
Skadden, Arps, Slate, Meagher & Flom LLP
One Beacon Street
Boston, Massachusetts 02108
Tel:  (617) 573-4800
Fax: (617) 573-4822
*Attorneys for Defendant Stephen J. Nill*

<u>/s/ John D. Hughes (by perm. GFN)</u>
John D. Hughes (BBO #243660)
Edwards & Angell LLP
101 Federal Street
Boston, Massachusetts 02110
Tel:   (617) 439-4444
Fax:  (617) 439-4170
*Attorneys for Defendants Paul R. Jones, Edward N.*
*Harris, J. Michael O'Hara and Rubin Gruber*


Dated: August 15, 2005