# Exhibit I

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RICHARD J. TADDY,                    )
Derivatively on behalf of            )
PRIMUS TELECOMMUNICATIONS            )
GROUP, INC.,                         )
                                     )
        Plaintiff,                   )
                                     )
v.                                   )
                                     )    No. 1:04cv1051
K. PAUL SINGH, ET AL.,               )
                                     )
        Defendants,                  )
                                     )
and                                  )
                                     )
PRIMUS TELECOMMUNICATIONS            )
GROUP, INC., a Delaware              )
Corporation,                         )
                                     )
        Nominal Defendant.           )

FILED

DEC - 8 2004


MEMORANDUM OPINION

Before the Court is defendants' Motion to Dismiss, in
which they argue that the Court lacks subject matter
jurisdiction to hear this civil action because plaintiff failed
to make a demand on the directors before bringing this action
and failed to show that a demand would be futile.  Defendants
also allege that even if the Court had jurisdiction to hear
this civil action, it would have to dismiss the Complaint as
lacking the requisite specificity.  For the reasons stated in
open court, as amplified by this Memorandum Opinion, the Motion
will be granted.

## Introduction

This is a shareholder derivative action brought by Primus Telecommunications Group (Primus)[1] shareholder Richard J. Taddy on behalf of the corporation.[2] Plaintiff has sued officers and directors of the corporation for violations of state law stemming from their alleged intentional issuance of false and misleading public statements, which he claims artificially inflated Primus's stock price, which later plummeted when the corporation announced that it had posted a loss. Plaintiff's state law claims are before this Court in diversity; Taddy is a Nevada citizen, Primus is incorporated in Delaware and has its headquarters in Virginia and none of the named defendants is a citizen of Nevada.[3] As is detailed below, the alleged damages are in the millions. Defendants do not contest that the Court

---

[1] Primus is a telecommunications services provider involved in the voice, Internet and data hosting services markets. Its primary markets are the United States, Australia, Canada and the U.K.

[2] It is not contested that Taddy held Primus stock at all times relevant to this action, as required for a shareholder to file a derivative suit.

[3] The individual Primus defendants are: (1) K. Paul Singh, Chairman, President, CEO and Director, (2) Neil L. Hazard, CFO, COO and Executive Vice President, (3) David E. Hershberg, Director, (4) Nick Earle, Former Director, (5) Pradman P. Kaul, Director, (6) John G. Puente, Director, (7) Douglas M. Karp, Director, (8) John F. DePodesta, Executive Vice President, Chief Legal Officer, Secretary and Director, (9) Paul G. Pizzani, Director and (10) Geoffrey L. Hamlin, whom plaintiff appeared to concede at oral argument is not a director.

2

has personal jurisdiction over them and that venue in this district is appropriate. Given defendants' associations with and actions on behalf of Primus, the headquarters of which is located in this jurisdiction, the Court finds that it does have personal jurisdiction over the defendants and that venue lies in this district.

Plaintiff alleges that the individual defendants breached their duties of loyalty to the corporation by causing Primus, or allowing other defendants to cause Primus, to misrepresent its financial prospects. In a six-count Complaint, plaintiff alleges (1) breach of fiduciary duty for insider selling and misappropriation of information (alleged only against those who sold stock), (2) breach of fiduciary duty against all defendants (3) abuse of control, (4) gross mismanagement, (5) waste of corporate assets and (6) unjust enrichment. Plaintiff claims that Primus was damaged because it is now the subject of several federal securities class action lawsuits, which have caused the corporation to expend significant assets on its defense. Plaintiff also claims that the defendants' alleged actions have damaged Primus's corporate image and goodwill. As such, plaintiff seeks (1) restitution in the amount of damages sustained by Primus, (2) equitable or injunctive relief, including attaching, impounding, imposing a constructive trust on or otherwise restricting the proceeds of defendants'

3

allegedly illegal activities to ensure that Primus has an effective remedy, (3) disgorgement of the defendants' individual profits, benefits and compensation and (4) attorneys' fees and costs.

In a separate section of the Complaint, but not pled as a specific cause of action, plaintiff also alleges conspiracy, aiding and abetting and concerted action. The course of conduct in which plaintiff claims defendants conspired was allegedly designed to (1) conceal the fact that Primus was misrepresenting its financial prospects to artificially inflate the stock price, (2) maintain defendants' positions at Primus, (3) deceive the investing public, including Primus shareholders and (4) cover up defendants' illegal actions and breaches of duty. Plaintiff appears to base this conspiracy charge on the same "specific, false statements" that defendants allegedly made about Primus's financial and business prospects. He claims that all members of the Board of Directors were members of the conspiracy by virtue of their authority to control the corporation. However, plaintiff cites no specific agreements or acts regarding this alleged collusion.

In their Motion to Dismiss, defendants primarily argue that plaintiff failed to make a demand that the directors bring the suit on the corporation's behalf or to show that the demand requirement should be excused as futile; if established, such

failures would be fatal to plaintiff's derivative action.
Defendants also argue that even if the Complaint were properly
before the Court procedurally, it should be dismissed because
it fails to state a claim under the heightened pleading
standards required for fraud actions and/or because defendants
are exculpated by Primus's charter from non-fraud claims.

### Background

In evaluating this Motion to Dismiss, the Court has
considered the Complaint's allegations of the facts, which
include voluminous excerpts from Primus press releases. The
Court has also considered information obtained from Securities
and Exchange Commission filings and other similar records,
which defendants reference in their pleadings and which the
Court may review in considering a Motion to Dismiss. See
Suntrust Bank v. Aetna Life Ins. Co., 251 F. Supp. 2d 1282,
1287 (E.D. Va. 2003); see also LaGrasta v. First Union Secs.,
Inc., 358 F.3d 840, 842 (11th Cir. 2004). Only those facts
that are most pertinent to the issues in this action and the
Motion to Dismiss will be discussed in this Opinion.

The Complaint alleges that during the "relevant period"
between November 2003 and the present, Primus's shares traded
at inflated levels as a result of materially false and
misleading statements defendants issued to the investing public
regarding Primus's business and prospects. To support this

5

claim, the Complaint lists "true facts" allegedly known by each of the defendants but concealed from the investing public during that period: (1) that Primus was experiencing massive pricing pressures on its international long-distance business and that its minutes of use were declining, (2) that contrary to its projections, Primus would actually lose money for the second half of 2004 and that the second quarter projections were grossly overstated (3) that Primus's business model was incredibly weak, which contributed to its inability to raise capital for the new projects required to achieve even the reduced projections, (4) that Primus was drowning in competition in Canada and Australia and (5) that as a result of these "true facts," Primus's value is actually less than its debt.  The Complaint charges that because of the false statements issued by defendants to conceal these "true facts," Primus's shares traded at inflated prices, defendants were able to make a $240 million note offering and a number of the defendants profited from stock sales collectively totaling $27 million.  Finally, the Complaint asserts that on July 29, 2004, after the market had closed, defendants caused Primus to issue a press release announcing a loss for the second quarter of that year, which missed Wall Street's projections and Primus's own forecast and caused the stock price to drop more than 50% in one day (from $1.70 to $1.52).

6

For each defendant, the Complaint recites a variation of the broad allegation that the individual "knew adverse non-public information about the business of Primus, as well as its finances, markets and present and future business prospects, via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors' meetings and committees thereof and via reports and other information provided to him in connection therewith." The Complaint does not specify any particular piece of adverse non-public information in the possession of a given individual, nor does it pinpoint communications or meetings in which such information was disseminated or discussed. Nevertheless, it asserts that each defendant "participated in the issuance of false and/or misleading statements, including the preparation of false and/or misleading press releases." The only specific information included regards the individual compensation and/or stock sales of a number of the defendants.[4]

In a section titled "Improper Statements," the Complaint excerpts press releases issued by Primus, beginning in November

---

[4] Defendants challenge the accuracy of some of this information, such as the amount of individual defendants' stock sales, and support many of their challenges with SEC filings and other public documents. As noted above, the Court may review this information in considering defendants' Motion to Dismiss.

7

2003, with numerous positive statements highlighted in bold.[5]
To support the allegation that these statements were knowingly
false and improper, the Complaint repeats the list of "true
facts" set out above but does not add any concrete information
in support of these broad, unsubstantiated assertions.[6]

The Complaint next charts the stock sales by five
defendants, Singh, Pizzani, Kaul, Herschberg, and DePodesta,
between November 7, 2003, and May 27, 2004.[7] These sales were
for prices ranging from $11.30 down to $5.99. The Complaint
does not address the percentage of holdings that each
individual sold.

Finally the Complaint alleges that demand on the officers
would be futile because (1) those selling stock received a
personal benefit from their insider trading and therefore are
interested, (2) no member of the Board would sue those on the
Compensation Committee, who were among the wrongdoers, because

---

[5] Defendants note in their Motion to Dismiss that these
excerpts, and even the sections chosen to be highlighted, appear
to be lifted verbatim from the federal securities class actions
consolidated before this Court as Panagoulias Group, et al. v.
Primus Telecommunications Group, et. al., No. 1:04cv970.

[6] At oral argument, defendants offered as an example of the
vagueness and inaccuracy of the Complaint that plaintiff cannot
point to any statement by any director that contradicts the
conceded fact that Primus's minutes of use were declining.

[7] As defendants pointed out at oral argument, the Complaint
improperly includes sales of stock that occurred before the first
allegedly false press release was issued on November 11, 2003.

their own financial interests would be jeopardized, (3) those
employed by the corporation are not independent from any of the
directors, a number of whom are interested, because they depend
on others' backing for their livelihood, (4) any director, such
as those on the Audit Committee, who breached his own duties
would not sue himself, (5) all of the defendants have inter-
related business and personal relationships that constitute
insurmountable conflicts of interest, (6) those with unvested
stock options would not sue themselves because the vesting is
contingent on remaining a member of the Board and (7) changes
in Primus's insurance mean that the policy would not cover
defendants' alleged breaches.

### Discussion

I.    The Demand Requirement

    A.    Delaware Legal Standards

As a general rule, because a corporation's directors are
empowered to control its business affairs, before filing a
derivative action, a shareholder must demand that the directors
pursue a claim on behalf of the corporation, Rales v. Blasband,
634 A.2d 927, 932 (Del. 1993);[8] otherwise, a court must dismiss
even a potentially meritorious claim. Kaufman v. Belmont, 479

---

[8] Demand requirements for a derivative suit are determined
by the law of the state of incorporation. Kamen v. Kemper Fin.
Servs., Inc., 500 U.S. 90, 108-09 (1991). Accordingly, the Court
will apply Delaware law in evaluating the demand issue.

9

A.2d 282, 286 (Del. Ch. 1984).    Limited exceptions to this
rule can arise if the shareholder made a demand that the
directors refused or if demand is excused as futile because the
directors are deemed incapable of making an impartial decision
regarding the merits of the charges.  <u>Rales</u>, 634 A.2d at 932.
Regarding futility, when officers' alleged wrongdoing does not
involve a particular business transaction, but rather a broader
course of conduct or breach of duty, the test of whether demand
should be excused is "whether the board that would be
addressing the demand can impartially consider its merits
without being influenced by improper considerations."[9]  <u>Id.</u> at
934.  In practical terms, this involves a determination of
whether "the <u>particularized factual allegations</u> of a derivative
stockholder complaint create a reasonable doubt that, as of the
time the complaint is filed, the board of directors could have
properly exercised its independent and disinterested business
judgment in responding to the demand."[10]  <u>Id.</u>  (emphasis added).

_____

    [9] The court distinguished such a situation from that
contemplated by the <u>Aronson</u> test, the second prong of which
considers whether the "challenged transaction" was a proper
exercise of business judgment.  <u>See Aronson v. Lewis</u>, 473 A.2d 805
(1984), <u>overruled in part on other grounds by Brehm v. Eisner</u>,
746 A.2d 244 (Del. 2000).  However, the premise behind that
landmark test and the test set forth in <u>Rawles</u> are the same.

    [10] This particularity requirement for pleading derivative
actions derives from Delaware's Chancery Court Rule 23.1, which
states in relevant part:
    In a derivative action . . . [t]he complaint shall . . .
    allege with particularity the efforts, if any, made by

The pleading requirements for demand futility set a high bar for derivative plaintiffs. First, and critical to the assessment of defendants' Motion to Dismiss, is the Delaware courts' emphasis on the requirement that plaintiffs allege with particularity the reasons why demand allegedly would be futile. See, e.g., Rattner v. Bidzos, No. Civ.A. 19700, 2003 WL 22284323, at *7-10 (Del. Ch. Oct. 7, 2003)(holding demand futility inadequately pled because plaintiff "merely posit[ed], without any particularized facts, that [defendants] knew of (or directly participated in) allegedly material misstatements"); White v. Panic, 793 A.2d 356, 364 (Del. Ch. 2000)("For all of its colorful language, what is missing from the complaint, in terms of details of actions taken by the Director Defendants, is at least as important as what is alleged."). In Brehm v. Eisner, the court specifically differentiated this requirement from the general notice pleading standard. See 746 A.2d 244, 254 (Del. 2000). The court held instead that demand futility cannot be pled by "[a] prolix complaint larded with conclusory language." Id. Also of importance, directors are entitled to a presumption that they would be faithful to their fiduciary

---

the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.
This rule is "virtually identical" to Fed. R. Civ. P. 23.1. Kaufman, 479 A.2d at 286.

11

duties and would pursue meritorious claims.  Beam v. Stewart,
845 A.2d 1040, 1048-49 (Del. 2004).  Id.  Finally, a plaintiff
must allege that a majority of the board would be unable to
exercise objective judgment on the merits of the demand because
those members are either (1) interested in the outcome of the
litigation or (2) otherwise not independent.  Id. at 1049.

    1.   Interested Directors

A director may be deemed interested if he stands to
benefit from, or be hurt by, the outcome of the litigation.
Id.  To plead such interest sufficiently, a plaintiff must
allege with particularity that the director faces a
"substantial likelihood of personal liability," Rawles, 634
A.2d at 936, and cannot simply allege that no director could
reasonably be expected to sue himself.  E.g., Arsonson, 473
A.2d at 818.  In addition, and of particular relevance to this
action, a director's sale of stock at a profit is not alone
sufficient to render that director unable to consider demand
objectively.  Rattner, 2003 WL 22284323, at *11.  Further,
collective totals of board members' stock sales are not
properly considered in assessing demand futility.  Id.
Instead, the plaintiff must plead particularized facts to show
that each sale by each individual was undertaken (1) "on the
basis of, and because of, adverse material non-public
information," id., and (2) with scienter, or fraudulent intent.

McCall v. Scott, 239 F.3d 808, 825 (6th Cir. 2001); Guttman v.
Huang, 823 A.2d 492, 505, 508 (Del. Ch. 2003).  In addition, a
director's retention of a sizeable portion of his shares
undermines any claim of improper trading.  In re Advanta Corp.
Secs. Litig., 180 F.3d 525, 539 (3d Cir. 1999).

> 2.   Dependent Directors

A director's independence must be assessed based on the
facts of the particular case, and a plaintiff must allege that
a given director is so "beholden" to an *interested* director
that the beholden director would be incapable of exercising his
own judgment regarding the merits of the demand without
improper considerations.  See Beam, 845 A.2d at 1049-50.  Of
particular significance to the Complaint under consideration,
Delaware courts have spoken at length about the factors that do
*not* necessarily render a director so beholden.  For example,
allegations of personal friendship or an outside business
relationship, without specific factual allegations that the
relationship would produce bias, are insufficient to raise
reasonable doubt about a director's independence.  Id. at 1051.
Indeed, the plaintiff "must plead facts that would support the
inference that because of the nature of a relationship or
additional circumstances other than the interested director's
stock ownership or voting power, the non-interested director
would be more willing to risk his or her reputation than risk

13

the relationship with the interested director." <u>Id.</u> at 1052.
Similarly, directors are not, without more, dependent upon
others who control their compensation or position.  <u>E.g.,</u>
<u>Panic</u>, 793 A.2d at 366; <u>see also</u> <u>Grobow v. Perot</u>, A.2d 180, 188
(Del. 1988), <u>overruled on other grounds by</u> <u>Brehm v. Eisner</u>, 746
A.2d 244 (Del. 2000).

    B.  <u>Plaintiff's Allegations of Futility</u>

    As in <u>Panic</u>, plaintiff's "colorful language" and repeated
allegations that a majority of the Primus Board is unable to
consider the merits of demand objectively cannot conceal his
failure to support these allegations with particularized facts.
Further, in some instances, even the facts as alleged would not
render the directors interested or too beholden to exercise
sound and objective judgment.

    For example, in his Opposition, plaintiff erroneously
argues that all defendants who sold stock are automatically
interested because they benefitted personally from "a
transaction that is not equally shared by the stockholders."
This standard applies only when the demand concerns a
particular transaction considered by the Board, which is not
the case in this action.  To follow plaintiff's logic would
create a <u>per</u> <u>se</u> rule that all directors who sell shares of
their corporation's own stock lose their objectivity with
regard to all demand requests; this result is nonsensical and

as noted above, has been explicitly rejected by Delaware courts.  To substantiate his claim, plaintiff would need to specify when each defendant obtained particular "material non-public information" that prompted that defendant to execute a particular stock sale.  Simply alleging that the defendants must have possessed information by virtue of their positions is not enough.  See In re Advanta, 180 F.3d at 539.  The Complaint, however, only identifies the dates and amounts of the sales and cites to the conclusory allegations that (1) at the time of those sales, the press releases were positive but the "business model was incredibly weak" and (2) Primus "would actually lose money in 2004."  Such allegations are insufficient.  Further, merely listing the amounts of stock sold by each director does not sufficiently allege that any given transaction appeared to have been undertaken with wrongful intent,[11] which would require at the very least allegations of the percentage, not the raw quantity, of stock sold.[12]  See In re Burlington Coat Factory Secs. Litig., 114

------

[11] Plaintiff maintains that he needs only to allege personal financial benefit, not wrongful intent.  Again, case law states otherwise.  As discussed above, the standard plaintiff mentions only applies to demand regarding particular financial transactions considered by the Board.

[12] As defendants note, the stock sold by Singh represented only 6% of the 5.6 million shares he held at the time. Defendants also point out that plaintiff erroneously alleges that Singh sold 600,000 shares during the "Relevant Period," when he actually sold only 300,000.

15

F.3d 1410, 1423 (3d. Cir. 1997).

The other allegations in the Complaint that attempt to
justify futility also fail to state particular facts and thus
run counter to Delaware law.  First, the Complaint states in
various forms that the directors whose conduct is in question
would not sue themselves and therefore could not objectively
assess demand.[13]  As discussed above, this premise has been

---

In addition, defendants refute plaintiff's logic on the
ground that he later alleges directors to be interested because
they *retained* either shares or vested stock options and therefore
would have been either motivated to inflate the price or
concerned about losing their positions and their right to those
options.  This is inconsistent with plaintiff's argument
regarding sales of stock.  In addition, as a general proposition,
it appears illogical to allege that one would fraudulently
inflate the stock price and then not sell before the price fell.
Defendants also detail the timing of the sales,
demonstrating that plaintiff has not shown that they were
"suspicious" in that regard either.  Specifically, plaintiff's
allegations are further weakened by the revelation that a number
of the sales upon which he relies were made before the first of
the press releases that allegedly inflated the stock value.  See
supra note 7.

[13] The Complaint asserts numerous variations of the
allegation that defendants are interested because for them to
authorize a lawsuit on behalf of Primus would expose their own
misconduct.
One variation is an allegation that to initiate such a
suit would invite more class action securities fraud suits like
the consolidated action in which Singh is a named defendant.  As
defendants note, if courts accepted this argument, a shareholder
could always be assured of avoiding the demand requirement simply
by including allegations of securities violations.
Another is an argument that defendants might lose their
insurance coverage and thus be subject to personal liability if
their conduct were exposed.  However, Delaware courts reject this
argument as merely a variation on the discredited notion that
directors will never sue themselves.  See Carauna v. Saligman,
No. 11135, 1990 WL 212304, at *4 (Del. Ch. Dec. 21, 1990).

16

explicitly rejected by Delaware courts. Rather, to allege

sufficiently a "substantial likelihood of personal liability"

that would render defendants interested, the Complaint again

would need to articulate connections between specific

information to which each defendant had access and specific

false statements that each made, or caused to be made, to the

public. The Complaint does not come close to meeting this

requirement. As defendants argue, the Complaint does not

identify facts about particular meetings, documents or

witnesses to back up its sweeping allegations.[14] Plaintiff

tries to avoid this failure by arguing that the Complaint

states facts with particularity by citing the press releases.

This argument is unavailing because the Complaint fails to

---

Regarding insurance, defendants also note that any claims
implicating the duty of care, such as waste or gross
mismanagement, would fall under Primus's exculpation clause,
meaning that the directors would not be personally liable--and
therefore potentially interested--with regard to those issues.
See Malpiede v. Townson, 780 A.2d 1075, 1091-93 (Del. 2001).

[14] Defendants quote this Court's application of Rule 9(b)'s
analogous heightened pleading requirement:
> [A]t a minumum, for each alleged misstatement or
> omission, plaintiffs must plead specific facts
> concerning, for example, when each defendant or other
> corporate officer learned that a statement was false, how
> that defendant learned the statement was false, and the
> particular document or other source of information from
> which the defendant came to know that the statement was
> false . . . Group pleading fails to satisfy the
> requirement that the who, what, where, why, and when of
> the fraud be specified. Glaser v. Enzo Biochem, Inc.,
> 303 F. Supp. 2d 727, 734 (E.D. Va. 2003)(internal
> citation omitted).

17

specify any statement of any defendant that contradicts the information disseminated in the public releases. Plaintiff also argues that the heightened pleading standard does not apply and that notice pleading is all that is required.[15] This argument fails as well, for as discussed above, the Delaware courts have been very clear about the particularity with which demand futility must be alleged.

Finally, the Complaint inadequately pleads that any director, much less a majority of the Board, is either beholden because of his position or dependent because of his personal connections with an interested director. Rather, the Complaint generally asserts that the directors whose compensation or position depend on the votes of other directors are automatically beholden, which as noted above, is a conclusion not recognized by the Delaware courts. Similarly, the allegations that directors are dependent because they worked at the same organization years ago do not, without more, come close to establishing entangling personal relationships under the applicable standard.

For all of these reasons, the Court finds that the

---

[15] Plaintiff argues that his Complaint does not allege fraud and that the cases defendant cites regarding particularized pleading are inapplicable because they dealt with securities fraud. However, defendant points out that in the primary case on point, McCall, the court was considering whether demand was futile because of insider trading and applied the particularized pleading standard. See 239 F.3d at 816-17.

Complaint fails to allege with the requisite specificity that
demand was futile.  Accordingly, this Court lacks subject
matter jurisdiction to consider the Complaint, which therefore
must be dismissed.

II.   <u>Failure to State a Claim Pursuant to Fed. R. Civ. P.
      12(b)(6)</u>

     Defendants argue that even if the Complaint adequately
established that demand should be excused, it would have to be
dismissed for failure to state a claim under Fed. R. Civ. P.
12(b)(6).

     A.   <u>Insider Trading, Unjust Enrichment and Breach of
          Fiduciary Duty Claims--Fed. R. Civ. P. 9(b)</u>

     With regard to the insider trading, breach of fiduciary
duty and unjust enrichment claims, Counts I, II and VI,
defendants argue that plaintiff failed to plead these claims
with the particularity required under Fed. R. Civ. P. 9(b).
Defendants argue that these claims "sound in fraud" and
therefore must be pled with the same details discussed above
concerning specific information that was communicated to named
directors via specific methods and that led directly to
specific improper stock sales.  See <u>Frota v. Prudential-Bache
Secs., Inc.</u>, 639 F. Supp. 1186, 1192-93 (S.D.N.Y. 1986)("Rule
9(b) extends to all averments of fraud or mistake, whatever may
be the theory of legal duty--statutory, common law, tort,
contractual, or fiduciary.")  Plaintiff does not contest that

19

Rule 9(b) applies to all claims alleging fraud, but instead puts forth a nonsensical, circular argument that he is only alleging breach of fiduciary duty, not fraud, because he has not set forth any facts regarding the details of defendants' alleged knowledge and misuse of information.[16]  Plaintiff then proceeds to detail how the Complaint alleges sufficient facts under notice pleading.  However, because the Complaint alleges fraud,[17] defendants have the better argument that these claims are subject to Rule 9(b) and as explained above, are not adequately pled with particularity.

   B.  Corporate Waste

   Defendants argue that the Complaint fails to state a claim of corporate waste in that this Count only alleges that Primus (1) wrongfully paid a bonus to defendant DePodesta, who acted

---

   [16] Plaintiff does cite case law explaining that Rule 9(b)'s requirements can be relaxed for breach of fiduciary duty claims when relevant facts are known only to the defendant; however the court in that case was expressly distinguishing such cases from those in which plaintiffs alleged fraud.  See Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995).

   [17] Plaintiff himself characterizes his claims as alleging, for example, that defendants (1) "conceal[ed] the fact that the Company was improperly misrepresenting its financial prospects," (2) "artificially inflat[ed] the Company's stock price through the dissemination of false and misleading statements pertaining to Primus' financials" and (3) "deceiv[ed] the investing public regarding management's operations, financial health and stability and future business prospects."  See Pl.'s Opp. at 15.

unlawfully,[18] and (2) wrongfully paid attorneys fees for

defending Primus against the class action securities suits but

fails to allege facts sufficient to show that Primus received

no consideration for those expenditures.  See Sanders v. Wang,

No. 16640, 1999 WL 1044880, at *10 (Del. Ch. Nov. 10, 1999).

Specifically, defendants argue that plaintiff has not alleged

facts demonstrating that Primus received no consideration for

the services of the one officer/director to whom plaintiff

alleges it paid a bonus and that Primus clearly has received

valuable attorneys' services in return for the legal fees it

has paid.  Plaintiff responds briefly that the standard should

encompass instances in which the corporation receives

"consideration so disproportionately small as to lie beyond the

range at which any reasonable person might be willing to

trade."  Lewis v. Vogelstein, 699 A.2d 327, 336 (Del. Ch.

1997).  However, this minor distinction is irrelevant because

the bald assertion that any bonus paid to a director accused of

acting wrongfully must be almost worthless is too speculative

and vague to state a claim under either standard.  Moreover,

given the early stage of the pending class action securities

litigation, it is premature to allege that Primus has not

------------

[18] As defendants note, the Complaint only recites defendant
DePodesta's total compensation of $1,064,750, which included
salary, bonus and "other compensation."  The Complaint does not
allege what portion of that amount comprised DePodesta's bonus.

21

received value from those attorneys' fees.

    C.    Exculpation Clause

    Defendants also argue that Primus's corporate charter

exculpates the directors from all of plaintiff's claims that

constitute duty of care violations.[19]  Delaware courts recognize

such clauses as grounds for dismissal of derivative suits.  See

Malpiede, 780 A.2d at 1093.  Plaintiff counters that his claims

are premised not on negligence, but rather on bad faith, and

that bad faith allegations cannot be determined on a motion to

dismiss because they are questions of fact ripe for discovery.

See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity

Fund, II, L.P., 624 A.2d 1199, 1208 (Del. 1993).  Essentially

plaintiff argues that his claims constitute allegations of

violations of the duty of loyalty and not the duty of care.

Defendants respond by maintaining that if the claims are

alleged to be duty of loyalty violations based on defendants'

intentional misconduct and concealing of information, then they

"sound in fraud" and must be pled with particularity.

Defendants acknowledge that there is some "middle ground,"

which covers duty of loyalty claims that do not allege fraud

and thus would neither be extinguished by an exculpation clause

_____

    [19] These claims are gross mismanagement and waste, Counts IV
and V, as well as breach of fiduciary duty and abuse of control,
Counts II and III, to the extent that the latter two are not
premised on intentional action.

                                22

nor be subject to the heightened pleading requirements. During oral argument, plaintiff claimed that he is pleading this middle ground. However, plaintiff's efforts to recharacterize his claims in this manner is inconsistent with the allegations in the Complaint, which clearly read as claims of fraud, rather than as either non-fraudulent violations of the duty of loyalty or breaches of the duty of care.

To the extent that plaintiff's claims read in fraud, they must be dismissed for lack of particularity; and to the extent that they read in negligence, they must be dismissed in light of Primus's exculpation clause. Plaintiff's attempts to recharacterize his claims as being in the "middle ground" are inconsistent with the allegations in the Complaint.

III. <u>Premature and Speculative Claim of Damages</u>

Defendants' final argument is that the damages of which plaintiff complains are premature and speculative. First, they challenge any damages that are based on harm Primus might incur from the pending federal securities fraud class actions. Second, they argue that plaintiff's assertion of lost market capitalization from a "liar's discount" to Primus's stock cannot substantiate a claim for present injury.[20] The case law defendants cite for these propositions is persuasive. <u>See</u>,

---

[20] The Complaint explains the "liar's discount" as a hesitancy on the part of investors to purchase stock in a corporation after learning that false information about the corporation was previously disseminated to the investing public.

23

e.g., Daisy Sys. Corp. v. Finegold, No, C86-20719, 1988 WL
166235, at *4 (N.D. Cal. Sept. 19, 1988)(dismissing derivative
case in which damages claim was based merely on the filing of
another lawsuit); In re Symbol Techs. Secs. Litig., 762 F.
Supp. 510, 517 (E.D.N.Y. 1991)(holding that to allege harm to
market credibility a plaintiff must specify facts
substantiating the corporation's lessened ability to attract
financing or related damages).  Plaintiff attempts to
distinguish these cases on the facts but primarily relies on
his allegation that Primus has suffered damages in the amount
of the $27 million in stock shares sold by defendants and $1.04
billion in lost market capitalization.[21]   However, defendants
again have the better arguments.  First, plaintiff cannot
support a claim for damages based on insider trading
allegations that it has failed to plead sufficiently.  Second,
plaintiff has not pled any specific facts tying fluctuations in
market capitalization to defendants' allegedly wrongful
actions.[22]  Plaintiff's vague allegations of loss of reputation
are similarly insufficient.

---

[21] As defendants point out in their Reply, plaintiff appears
to concede that the case law supports defendants' argument that
damages from the securities fraud class actions are premature.

[22] Defendants also mention that the Court may take judicial
notice of the rise in Primus's stock price to nearly the level at
which it was trading before the disclosure of the "true facts"
that plaintiff alleges caused the price to drop.  This fact,
defendants argue, rebuts any allegation of "irreparable harm."

IV.  <u>Oral Motion for Leave to Amend</u>

At oral argument, plaintiff requested that if the Court dismissed the Complaint, he be granted leave to file an Amended Complaint.  However, the Court finds that plaintiff already has had more than adequate notice of and time to correct the deficiencies in the Complaint.  Defendants filed the Motion to Dismiss on November 1, 2004, more than one month before it was noticed for argument.  Plaintiff, however, chose to oppose defendants' Motion rather than seeking leave to amend the Complaint to bolster its allegations.  In addition, plaintiff appears not to have availed himself of opportunities to gather more information regarding defendants' actions.  For example, as discussed in <u>Rales</u>, a case upon which plaintiff heavily relies, Delaware law allows "a stockholder who has met the procedural requirements and has shown a specific proper purpose [to] use the summary procedure embodied in 8 Del. C. § 220 to investigate the possibility of corporate wrongdoing."  634 A.2d at 935 n.10.  The Delaware Supreme Court specifically referred to that provision, in addition to the public records that detail many corporate acts, as a means through which plaintiffs can meet the particularization requirement for demonstrating the futility of demand.  <u>Id.</u>  Given plaintiff's failure to take advantage of the resources at his disposal and the considerable time during which he had notice of the potential inadequacy of the Complaint but failed to request leave to amend, plaintiff's

oral Motion for Leave to Amend the Complaint will be denied.

## Conclusion

For the reasons stated in open court, as amplified by this Memorandum Opinion, defendants' Motion to Dismiss will be granted, and plaintiff's oral Motion for Leave to Amend the Complaint will be denied.  An appropriate Order will issue.

The Clerk is directed to forward copies of this Memorandum Opinion and the accompanying Order to counsel of record.

Entered this 8th day of December, 2004.

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia