UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


IN RE SONUS NETWORKS, INC.      )
SHAREHOLDER DERIVATIVE          )
LITIGATION                      )
                                )      CIVIL ACTION NO.
                                )      04-10359-DPW
_____  )


MEMORANDUM AND ORDER
March 31, 2006


The issue before me is whether a determination in state court shareholder derivative litigation -- that the failure to make demand upon directors may not be excused -- precludes different shareholder plaintiffs in a parallel federal derivative suit from relitigating the question of demand futility.  I find that it does and accordingly will dismiss this case.

The plaintiffs, as shareholders of Sonus Networks, Inc. ("Sonus" or the "Company"), bring this federal derivative litigation on behalf of the Company arising out of alleged misconduct and negligence by several of Sonus's officers and directors in relation to improper revenue recognition.  They made no demand on the directors, claiming such an effort would be futile.

In the meantime, parallel derivative suits by Sonus shareholders in the Massachusetts state court were dismissed for failure adequately to plead justification for their failure to

-1-

make demand on the directors.  The defendants have moved to dismiss the litigation before me on the ground that the state court judgment dismissing on the question of demand is binding on the federal court derivative plaintiffs as well.

### I. Background

On January 20, 2004, Sonus announced it was delaying the release of fourth quarter and year 2003 financial results pending completion of a 2003 audit.  That announcement was followed, on February 11, 2004, by a press release notifying the public that there were indications certain employees of the company took actions affecting the timing of revenue recognition and that certain non-executive employees had been terminated.  Sonus also announced that the Board of Directors Audit Committee had initiated an internal investigation and that the Company had notified the SEC of that fact.  The SEC in turn issued a formal order of investigation of the Company's financial reporting.

On July 28, 2004, following completion of the internal review, Sonus released a restatement of its financial results for the fiscal years 2001 and 2002 and the first three quarters of 2003.  In the Form 10K/A for the fiscal year 2003 filed with the SEC reporting the restatement, the Company concluded that the "primary impact of the restatements is the adjustment to the timing of revenue recognition and certain other financial statement accounts."  Sonus also reported that it had "identified

material weaknesses in [its] internal controls and procedures."
On March 15, 2005 Sonus filed a Form 10-K for the fiscal year
2004 elaborating on the "material weaknesses includ[ing] both
entity-level control weaknesses as well as weaknesses in process,
transaction and application controls."

On February 20, 2004, Sonus shareholders filed a derivative
lawsuit against certain officers and directors of Sonus in
Massachusetts Superior Court without making a pre-suit demand
upon the Company's Board of Directors.  The case was assigned to
the Business Litigation Session and later consolidated with a
second derivative action for decision by Judge van Gestel.  Other
shareholders filed three derivative actions in this Court on
February 23, February 26, and March 24, 2004 against six of the
seven Directors of Sonus (the "Director defendants"), four of
whom were outside directors at the time the Complaint was filed,
and against several other Sonus officers.  The federal
shareholder derivative plaintiffs also failed to make a pre-suit
demand with the Company's Board of Directors.  I consolidated the
federal cases on June 23, 2004.

The defendants in the state action had filed a motion to
dismiss the state case on March 22, 2004 because the plaintiffs
did not make demand to the Sonus Board of Directors prior to
filing and because they failed to allege with sufficient
particularity grounds to excuse their failure to make a demand.
I scheduled amended pleadings and further filings in these

federal proceedings at conferences on June 28, 2004 and August 10, 2004 pending Judge van Gestel's ruling on the motion to dismiss in the state action.

On September 27, 2004, Judge van Gestel granted the motion to dismiss in the state action concluding that "[d]emand has not been shown to be excused in these cases." In re Sonus Networks, Inc., No. 04-0753, 2004 Mass. Super. LEXIS 351, at *14 (Sep. 27, 2004). The federal plaintiffs then filed a Second Consolidated Complaint to which the defendants in the consolidated federal actions before me thereafter moved for dismissal of this litigation arguing that Judge van Gestel's judgment precludes the federal plaintiffs from pressing their argument that demand on the Board should be excused in the instant case. Alternatively, the defendants argue that dismissal is warranted on the merits in any event for the reasons offered by Judge van Gestel. The federal plaintiffs oppose dismissal arguing that they were not in privity with the state plaintiffs and that the federal Complaint alleges new and more detailed facts[1] than the state complaint. As a consequence, the plaintiffs contend issue preclusion does not apply and their failure to make a demand ought to be excused.

---

[1] These facts include the defendants' alleged awareness in 2001 and 2002 that the Company's rapid growth had placed its "management systems and resources" under "significant strain" and notice of an unrelated federal securities class action against Sonus alleging that the Company misled shareholders regarding the quality and capability of the Company's products and published false and misleading financial statements.

In order to understand why I find that demand should not be
excused, it is necessary first to provide the general legal
framework for derivative actions and the demand requirement.

## II.   The Demand Requirement in Derivative Actions

The derivative form of action gives individual shareholders
a means to protect the interests of the corporation from the
"misfeasance and malfeasance of 'faithless directors and
managers'" by bringing an action on the company's behalf.  Kamen
v. Kemper Fin. Services, Inc., 500 U.S. 90, 95 (1991) quoting
Cohen v. Beneficial Loan Corp., 337 U.S. 541, 548 (1949).  To
prevent abuse of this remedy and give directors an opportunity to
exercise their reasonable business judgment to address the
relevant issues the shareholder(s) must demonstrate that the
corporation itself had refused to proceed after suitable demand -
- unless demand is excused by extraordinary conditions -- before
bringing the derivative action.  Id. at 95-96.  The demand
requirement is embodied in the cognate Rules 23.1 of the Federal
and the Massachusetts Rules of Civil Procedure.  The Federal Rule
applicable here provides that the complaint shall:

> allege with particularity the efforts, if
> any, made by the plaintiff to obtain the
> action the plaintiff [he] desires from the
> directors or comparable authority and, if
> necessary, from the shareholders or members,
> and the reasons for the plaintiff's failure
> to obtain the action or for not making the
> effort.

Fed. R. Civ. P. 23.1.

In order to determine whether the demand requirement may be excused by futility as contemplated by Rule 23.1, the law of the corporation's state of incorporation must be considered. <u>Kamen</u>, 500 U.S. at 108-09. Sonus is a Delaware corporation. Thus, the underlying issue that Judge van Gestel has faced and decided and that I now face in this motion to dismiss is whether the shareholder-plaintiffs alleged facts with sufficient particularity excusing their respective failures to make a pre-suit demand as required by Delaware law.

To meet their burden, plaintiffs are required under Delaware law to show that reasonable doubt exists about whether a majority of the Board of Directors -- here, four out of seven -- were disinterested and independent when the Complaint was filed. <u>Rales v. Blasband</u>, 634 A.2d 927, 934 (Del. 1993). The court is required to "analyze whether the underlying conduct complained of in the complaint ... renders any of the board members 'interested,' and, if so, whether any of the other members of the board are compromised in their ability to act independently of the directors found to be interested." <u>Guttman v. Huang</u>, 823 A.2d 492, 501-02 (Del. Ch. 2003).

In cases where the allegations do not challenge any particular business decision, reasonable doubt exists as to the disinterestedness of a director when the plaintiff pleads facts showing that the director would have been substantially likely to

suffer an adverse personal consequence if the corporation pursued the shareholder's demand.  <u>Rales</u>, 634 A.2d at 936.  "To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director."  <u>Beam v. Stewart</u>, 845 A.2d 1040, 1052 (Del. 2004).

In this case, the plaintiffs maintain that reasonable doubt as to the disinterestedness of the six Director defendants arises from the substantial likelihood that each will be liable for breach of fiduciary duty for failure of oversight and misleading the shareholders.  To meet the burden of showing a substantial likelihood of liability for breach of a director's non-exculpated fiduciary duty to exercise appropriate attention, as alleged here, the plaintiffs must show a "sustained or systematic failure of the board to exercise oversight -- such as an utter failure to attempt to assure a reasonable information and reporting system exists," <u>In re Caremark Int'l Derivative Litig.</u>, 698 A.2d 959, 971 (Del. Ch. 1996), or "particularized facts that support an inference that the directors 'did possess knowledge of facts suggesting potential accounting improprieties ... and took no

action to respond to them.'" <u>Guttman</u>, 823 A.2d at 507 n. 36
<u>citing</u> <u>Ash v. McCall</u>, No. 17132, 2000 WL 1370341, at *15 (Del.
Ch. Sep. 15, 2000). In applying Delaware law, other courts have
also considered allegations that Directors "actively participated
in misleading the public," <u>In re Storage Tech. Corp. Securities</u>
<u>Litig.</u>, 804 F.Supp. 1368, 1376 (D. Colo. 1992), <u>overruled on</u>
<u>other grounds by Schwartz v. Celestial Seasonings, Inc.</u>, 124 F.3d
1246, 1254 (10th Cir. 1997), and that directors "signed,
approved, and published false statements ... and that they
received personal benefits through these false statements," <u>In re</u>
<u>Cendant Corp. Derivative Action Litig.</u>, 189 F.R.D. 117, 129
(D.N.J. 1999), as a factor in the substantial likelihood of
liability analysis.[2] To establish a substantial likelihood of
liability for insider trading the plaintiffs must show that the
directors "engaged in material trading activity at a time when
(one can infer from particularized pled facts that) they knew
material, non-public information about the company's financial
condition." <u>Guttman</u>, 823 A.2d at 502. "Fraudulent intent may be
inferred from the timing and quantities of the trades." <u>McCall</u>

---

[2] The plaintiffs do not cite any cases suggesting that
allegations of misleading statements alone amount to substantial
likelihood of liability for breach of fiduciary duty. But
"[w]hen a plaintiff advances numerous reasons supporting his or
her claim that demand would be futile, none of which standing
alone is sufficient to excuse demand, [the court] must consider
whether the totality of these reasons raises a reasonable doubt
as to the directors' disinterest or independence." <u>In re Storage</u>
<u>Tech. Corp. Securities Litig.</u>, 804 F.Supp. 1368, 1375 (D. Colo.
1992) <u>citing</u> <u>Harris v. Carter</u>, 582 A.2d 222, 229 (Del.Ch.1990).

v. Scott, 239 F.3d 808, 825 (6th Cir. 2001), amended on other grounds, 250 F.3d 997 (6th Cir. 2001)(applying Delaware law).

Having set out the relevant law on demand futility, I consider whether Judge van Gestel's decision bars relitigating the Delaware demand futility issue as a result of the issue preclusion doctrine.

### III.  ISSUE PRECLUSION

It is well settled that "[t]he full faith and credit statute, 28 U.S.C. § 1738, requires [federal courts] to give the same preclusive effect to state court judgments -- both as to claims and issues previously adjudicated -- as would be given in the state court system in which the federal court sits." Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 50 (1st Cir. 1997)(internal quotations and citations omitted). Consequently, Massachusetts law governs the preclusive effect, if any, to be given by me to Judge van Gestel's determination that the state court plaintiffs' failure to make a demand could not be excused under Delaware law.

In Massachusetts, the concept of "res judicata" embraces two doctrines -- "claim preclusion (also known as 'merger' or 'bar') and issue preclusion (also known as 'collateral estoppel'). Claim preclusion 'makes a valid, final judgment conclusive on the parties and their privies, and bars further litigation of all matters that were or should have been litigated in the action.'

-9-

Issue preclusion prevents the relitigation of an issue determined in an earlier action when that issue subsequently arises in another action based on a different claim between the same parties or their privies." <u>Jarosz v. Palmer</u>, 436 Mass. 526, 531, n. 3 (2002) <u>citing</u> <u>Heacock v. Heacock</u>, 402 Mass. 21, 23, 23 n.3 (1988).  In this case, the defendants argue that the federal plaintiffs should be precluded from relitigating Judge van Gestel's demand futility determination based on the doctrine of issue preclusion.  To trigger the application of this doctrine, the defendants must satisfy five elements:

> (1) "there was a final judgment on the merits in the prior adjudication";
>
> (2) "the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication";
>
> (3) "the issue in the prior adjudication was identical to the issue in the current adjudication";
>
> (4) the issue was "actually litigated in the prior action"; and
>
> (5) "the issue decided in the prior adjudication must have been essential to the earlier judgment."

<u>Kobrin v. Board of Registration in Medicine</u>, 444 Mass. 837, 843-44 (2005) <u>citing</u> <u>Tuper v. North Adams Ambulance Serv., Inc.</u>, 428 Mass. 132, 134-35 (1998).  The party claiming issue preclusion has the burden of establishing that the doctrine applies. <u>Commonwealth v. Bunting</u>, 401 Mass. 687, 691 (1988).

Courts evaluate issue preclusion "in light of the policy concerns underlying the doctrine." <u>United States v. Stauffer</u>

Chem. Co., 464 U.S. 165, 176 (1984)(White, J., concurring).  The
doctrine "is generally said to have three purposes: to 'relieve
parties of the cost and vexation of multiple lawsuits, conserve
judicial resources, and, by preventing inconsistent decisions,
encourage reliance on adjudication.'"  Stauffer, 464 U.S. at 176-
77 (White, J., concurring) citing Allen v. McCurry, 449 U.S. 90,
94 (1980); see also Bagley v. Moxley, 407 Mass. 633, 636 (1990).
However, the Supreme Judicial Court has also said that "[t]he
guiding principle in determining whether to allow defensive use
of collateral estoppel is whether the party against whom it is
asserted 'lacked full and fair opportunity to litigate the issue
in the first action or [whether] other circumstances justify
affording him an opportunity to relitigate the issue.'" Martin v.
Ring, 401 Mass. 59, 62 (1987) quoting Fidler v. E.M. Parker Co.,
394 Mass. 534, 541 (1985) (quoting Restatement (Second) of
Judgments § 29 (1982)).

     The parties have not precisely presented their arguments in
terms of the Kobrin framework, which was published only four days
before the defendants filed their Memorandum.  Rather, the
plaintiffs make three general arguments: (1) that they should not
be considered in privity with the state plaintiffs for the
threshold issue of standing, which the demand futility issue
presents; (2) that the facts alleged by the federal plaintiffs
substantially change the framework for addressing the issue; and

(3) that it would be "unfair" to preclude this litigation "because another litigant failed to raise" the additional factual support.  Translating these arguments into the <u>Kobrin</u> framework, it is clear that the plaintiffs do not contest that the September 27, 2004 judgment of Judge van Gestel satisfies the fourth (actual litigation of the issue) and fifth (the issue was necessary to the prior judgment) elements, but that the plaintiffs dispute whether the first (final judgment on the merits), second (privity of parties), and third (identity of issues) elements have been met.  The plaintiffs also contend that the guiding principles prevent the application of the doctrine in any event.

**1. Valid and Final Judgment (on the Merits)** - The phraseology adopted by the Supreme Judicial Court in <u>Tuper</u> and again in <u>Kobrin</u> for the first element -- that there must have been "a final judgment <u>on the merits</u> in the prior adjudication" -- deserves close analysis because the defendants claim that they "should not be misunderstood as arguing that Judge van Gestel's decision was 'on the merits' as to the substantive cause of action" and the plaintiffs seem to suggest preclusion is inappropriate because demand futility is a threshold issue encountered before the merits are reached.

The inclusion of the phrase "on the merits" in the first element of the issue preclusion test appears to be derived from

Massachusetts Property Ins. Underwriting Assoc. v. Norrington,
395 Mass. 751, 753 (1985) quoting Bernhard v. Bank of America
Nat'l Trust & Sav. Ass'n, 19 Cal. 2d 807, 813 (1942).  However,
in a more recent case, Commonwealth v. Rodriguez, 443 Mass. 707,
709-10 (2005), the Supreme Judicial Court cited to Cousineau v.
Laramee, 388 Mass. 859, 863 n. 4 (1983), which adopted the
Restatement phrasing "determined by a valid and final judgment"
instead of "final judgment on the merits."  See Restatement
(Second) of Judgments § 27 (1982) ("When an issue of fact or law
is actually litigated and determined by a valid and final
judgment, and the determination is essential to the judgment, the
determination is conclusive in a subsequent action between the
parties, whether on the same or a different claim.").

        In the context of claim preclusion, commentary to the
Restatement explains the choice of this language.  While "[i]t is
frequently said that a valid and final personal judgment for the
defendant will bar another action on the same claim only if the
judgment is rendered 'on the merits,' ... [i]ncreasingly,
however, by statute, rule, or court decision, judgments not
passing directly on the substance of the claim have come to
operate as a bar.  Although such judgments are often described as
'on the merits' or as 'operating as an adjudication on the
merits,' that terminology is not used here in the statement of
the general rule because of its possibly misleading
connotations."  Restatement (Second) of Judgments § 19, comment

                              -13-

a.

In any event, under Massachusetts law an involuntary dismissal "other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits" for the purpose of res judicata.  Mestek, Inc. v. United Pacific Ins. Co., 40 Mass.App.Ct. 729, 731 (1996) citing Mass. R. Civ. P. 41(b)(3); see also Restatement (Second) of Judgments § 19, comment d ("[A] judgment for the defendant on demurrer or motion to dismiss for failure to state a claim" is a valid and final judgment.  "Such a result is warranted by the ease with which pleadings may be amended, normally at least once as a matter of course, and by the unfairness of requiring the defendant to submit to a second action (often initiated long after the first has come to an end) when no such amendment is sought, or when no appeal has been taken from an erroneous denial of leave to amend.").

Here, Judge van Gestel's determination is the equivalent of a dismissal for failing to state a claim or failing to plead with particularity.  In re Kaufman Mutual Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973)("Rule 23.1 is not an ordinary, but an exceptional rule of pleading[.] ... [T]he 'particularity' must appear in the pleading itself.").  Consequently, Judge van Gestel's decision operates as a valid and final judgment or dismissal 'on the merits' with res judicata effect.  Mestek, 40 Mass.App.Ct. at 731 ("Because a motion to dismiss [for failure to

-14-

state a claim] is not one of the specific categories of dismissal
which is excluded by the plain language of [Mass. R. Civ. P.
41(b)(3)], we view a motion to dismiss under Mass. R. Civ. P.
12(b)(6) as an adjudication on the merits."); Isaac v. Schwartz,
706 F.2d 15, 17 (1st Cir. 1983)("Under Massachusetts law, as
elsewhere, a dismissal for failure to state a claim, under
Mass.R.Civ.P. 12(b)(6), operates as a dismissal on the merits,
see Mass.R.Civ.P. 41(b)(3), with res judicata effect."); see also
In re Kaufman, 479 F.2d at 267 quoting Restatement of Judgments §
49, comment b, at 195 (1942)("The dismissal is with prejudice on
the issue of the obligation to make a demand on the directors
with respect to that substantive complaint.  The principle
applies that '[a]lthough, where a judgment for the defendant is
not on the merits, the plaintiff is not precluded from
maintaining a new action on the same cause of action, he is
precluded from relitigating the very question which was litigated
in the prior action.'").  Compare Bazata v. National Ins. Co. of
Washington, 400 A.2d 313, 315-16 (D.C. 1979)(finding that "the
Rule 23.1 demand requirement pertains to the merits of the claim
for relief rather than the means of placing that claim before the
court," thus dismissal of the first suit "for failure to state an
element of the shareholder's derivative action," namely the
demand requirement, is not the equivalent of a dismissal for "a

technical precondition to bringing a lawsuit.")[3]

Since the state court plaintiffs have withdrawn their appeal,[4] there is no lingering question whether Judge van Gestel's dismissal without leave to amend was a valid and final judgment 'on the merits' by a court of competent jurisdiction.[5]

---

[3] In addition to In re Kaufman Mutual Fund Actions, 479 F.2d 257 (1st Cir. 1973), the defendants also rely upon two other First Circuit cases. First, in Rivera v. Nissan Manufacturing Co., 788 F.2d 819 (1st Cir. 1986), the Court held that the plaintiffs were precluded from relitigating the issue of whether the corporation had been properly served, where the first litigation had actually determined that no employee of the office served was authorized to accept service of process on behalf of the company at that time. Id. at 821. The Court reasoned that under federal law "[t]he case law is clear that a dismissal for improper service is without prejudice to refiling the case. That is, plaintiffs' substantive claim was not extinguished by operation of res judicata when the district court dismissed their first action. The dismissal did have the effect of precluding relitigation of those matters actually decided in the first litigation, however." Id. citing 2A J. Moore & J. Lukens, Moore's Federal Practice ¶ 12.14 at 12-100 (2d ed. 1985).
Second, in Lebrón-Ríos v. U.S. Marshal Service, 341 F.3d 7, (1st Cir. 2003), the Court held that the District Court should have dismissed the action "without prejudice to any later Title VII action brought by the plaintiffs on properly exhausted claims," but with prejudice on the issue of "whether exhaustion is required." Id. at 8-9, 15.

[4] The availability of appellate review satisfies another prerequisite for preclusion under Massachusetts law. See Sena v. Commonwealth, 417 Mass. 250, 260 (1994)(finding that "for collateral estoppel to preclude litigation of an issue, there must have been available some avenue for review of the prior ruling on the issue" and that this rule comports with Restatement (Second) of Judgments, §28(1)).

[5] A judgment is considered "final" under Massachusetts law for purposes of issue preclusion even if an appeal is pending, O'Brien v. Hanover Ins. Co., 427 Mass. 194, 200-01 (1998), although "[t]he pendency of a motion for new trial or to set aside a judgment or of an appeal from a judgment" may make it appropriate for the Second Court "to postpone decision of that

Thus, while Judge van Gestel's decision cannot bar litigation of the underlying substantive claims, it is sufficient to bar relitigation of the demand futility predicate for derivative litigation concerning the substantive claims.  See In re Kauffman, 479 F.2d at 267.

**2. Privity Between the State and Federal Plaintiffs** - The plaintiffs argue that they are not in privity with the state plaintiffs because "they have different lawyers and filed a different lawsuit in a different court armed with a different set of facts."  While it is true that the federal plaintiffs are not the same individuals as the state plaintiffs, because derivative litigation is the procedural vehicle they have chosen, it is Sonus that is the "true party in interest in both cases."  Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004).  Consequently, although there is no case law precisely on point, I find that general principles of derivative litigation command a finding of privity.

According to the Restatement, "[w]hether the judgment in ... a representative suit is binding upon all stockholders or members is determined by the rules stated in §§ 41 and 42.  If it is binding under those rules, it precludes a subsequent derivative action by stockholders or members who were not individually

---

question until the proceedings addressed to the judgment are concluded."  Restatement (Second) of Judgments, § 13, comment f.

parties to the original action."  Restatement (Second) of
Judgments, § 59, comment c.  The heart of § 41 is that a person
is in privity with a party if that person was represented by that
party in the prior litigation, subject to the exceptions in § 42.
Massachusetts has adopted the notion of "virtual representation,"
extending the concept beyond the categories then listed in the
first Restatement of Judgments (1942).  Boyd v. Jamaica Plain Co-
Operative Bank, 7 Mass.App.Ct. 153, 158 (1979); Bourque v. Cape
Southport Associates, 60 Mass.App.Ct. 271, 275-76 (2004).  Cf
Restatement (Second) of Judgments, § 41(1)(listing five
categories for the kinds of parties that represent others).  In
Boyd, the Court used "[t]his label ... to identify a situation
where the previous party is 'sufficiently identified with (the
new party) to represent the legal rights of (the new party),' Pan
Am. Match, Inc. v. Sears Roebuck & Co., [454 F.2d][sic] 871, 874
(197[2][sic]), whether the identification arises from a
relationship between the parties, Dudley v. Smith, 504 F.2d 979,
982 (5th Cir. 1974), or from actual participation and control of
the litigation by one not a party, Kreager v. General Elec. Co.,
497 F.2d 468, 472 (2d Cir.), cert. denied, 419 U.S. 861 (1974)."
Boyd, 7 Mass.App.Ct. at 159 n. 9.

     Neither of the parties have cited, nor has my own research
revealed, Massachusetts case law expressly deciding whether non-
party shareholders are bound as privies of shareholder parties to
a prior action based on the "virtual representation" concept.

-18-

However, I find sufficient consensus in the case law from other jurisdictions to conclude Massachusetts will ultimately adopt the rule that "[n]onparty shareholders are usually bound by a judgment in a derivative suit on the theory that the named plaintiff represented their interests in the case." Cramer v. General Telephone & Electronics Corp., 582 F.2d 259, 269 (6th Cir. 1978), cert. denied, 439 U.S. 1129 (1979). See also Scnitzer v. O'Connor, 274 Ill.App.3d 314, 326 (1995); Nathan v. Rowan, 651 F.2d 1223, 1226 (1981); Parkoff v. General Telephone & Electronics Corp., 53 N.Y.2d 412, 420 (1981); Ratner v. Paramount Pictures, Inc., 6 F.R.D. 618, 619 (S.D.N.Y. 1942); Dana v. Morgan, 232 F. 85, 85 (2nd Cir. 1916).

The plaintiffs cite no cases to the contrary. They argue only that "[t]he state and federal plaintiffs are no more in privity than are the members of an uncertified class." Of course, if this statement were true, then even if Judge van Gestel had disposed of the state court plaintiffs' complaint on the merits of the underlying substantive claims -- or even if there had been a judgment for the defendants after a trial, for that matter -- every other Sonus shareholder would have the right to relitigate the same claims. As a general proposition, this argument would wholly uproot the policy of issue preclusion. As to the narrower contention -- that "state and federal [derivative] plaintiffs are no more in privity than are the members of an uncertified class" on threshold issues -- I find

-19-

the analogy is flawed.  There is no formal certification step in
derivative lawsuits as there is in class actions.  Absent a
finding that the party shareholder "does not fairly and
adequately" represent the other shareholders in enforcing the
corporation's rights as contemplated by Rule 23.1, all non-party
shareholders are bound by all valid and final judgments on the
merits in derivative litigation.

There is, to be sure, some case law that suggests a finding
of privity is inappropriate where the judge presiding over the
second action finds that the shareholders against whom res
judicata is being pressed were inadequately represented by the
shareholders party to the initial derivative action.  See Cramer,
582 F.2d at 269; Nathan, 651 F.2d at 1226.  See also Restatement
(Second) of Judgments, § 42(e) ("A person is not bound by a
judgment for or against a party who purports to represent him if
(e) The representative failed to prosecute or defend the action
with due diligence and reasonable prudence, and the opposing
party was on notice of facts making that failure apparent.")
Other case law also suggests a finding of privity is not
appropriate where the initial judgment was "the product of
collusion or other fraud" or where the shareholder against whom
res judicata is being pressed was "frustrated in an attempt to
join or to intervene in the action that went to judgment."
Parkoff, 53 N.Y.2d at 420.

In this case, the plaintiffs do not specifically argue that

-20-

the state plaintiffs inadequately represented the Company's interest.  Nor have they alleged that the initial judgment was the product of collusion or fraud or that they were frustrated in their attempt to join or to intervene in a state action of which they were concededly aware.  Rather, the plaintiffs simply argue that "it would be unfair" to preclude litigation "because another litigant failed to raise" the additional factual allegations now put forward by the plaintiffs.  I do not find that this lamentation rises to the level of inadequate representation or failure to prosecute the action with due diligence and reasonable prudence.

**3. The Identity of the Issues** - As reflected in <u>Kobrin</u>, Massachusetts law requires that the issue in the prior adjudication be "identical" to the issue in the current adjudication for issue preclusion to apply.  However, the Supreme Judicial Court has also held that "[i]n some cases, even if there is a lack of total identity between the issues involved in two adjudications, the overlap may be so substantial that preclusion is plainly appropriate." <u>Commissioner of Dept. of Employment and Training v. Dugan</u>, 428 Mass. 138, 143 (1998) <u>citing</u> Restatement (Second) of Judgments § 27, comment c (1982).

The plaintiffs allege that the "(1) three specific instances that the directors were put on notice of 'red flags' regarding problems with the Company's internal controls, (2) the broad

reach of the restatement, and (3) the admission regarding the state of the Company's internal controls" substantially change the issue such that the issues in the state and federal actions cannot be considered identical.  To support this argument the plaintiffs rely on <u>DeCosta v. Viacom International, Inc.</u>, 981 F.2d 602, 605 (1st Cir. 1992) <u>citing</u> Restatement (Second) of Judgments § 27, comment c, for the proposition that "collateral estoppel does not bar relitigation of an issue transformed by significant factual or legal changes."  <u>See also</u> 18 Moore's Federal Practice § 132.02[2][e]; <u>Montana v. United States</u>, 440 U.S. 147, 159 (1979).  However, in citing <u>DeCosta</u> and Moore's treatise, the plaintiffs ignore a crucial principle common to federal and Massachusetts res judicata law: "A party ... cannot avoid issue preclusion simply by offering evidence in the second proceeding that could have been admitted, but was not, in the first."  18 Moore's Federal Practice § 132.02[2][d].[6]  <u>See also</u> <u>DeCosta</u>, 981 F.2d at 611 <u>quoting</u> Restatement (Second) of Judgments, § 27, comment c ("As the Restatement of Judgments

---

[6] That sub-section continues: "Whenever a court considers applying the doctrine of issue preclusion, there is always a lingering question of whether a party might have succeeded in proving its point if given a second chance at producing evidence that was available but not presented at the initial proceeding. Without more, however, this consideration does not outweigh the extremely important policy underlying the doctrine of issue preclusion -- that litigation of issues at some point must come to an end.  To allow this type of evidence would contravene the very principles on which collateral estoppel is based." 18 Moore's Federal Practice § 132.02[2][d] (internal citations omitted).

points out, when a party has litigated such an 'ultimate fact,' and failed, 'new evidentiary facts may not be brought forward to obtain a different determination of that ultimate fact.'"); <u>Miles v. Aetna Cas. and Sur. Co.</u>, 412 Mass. 424, 428 (1992) (applying issue preclusion to prevent relitigation of the extent of the plaintiff's damage even if the "new evidence" of her memory loss was evidence of a "new and unforeseen medical condition arising at the conclusion of the proceedings," because "the fact that she may have had a basis for filing a motion for relief from judgment on the basis of newly discovered evidence (no such motion has been pursued) does not mean that the judgment or the award" should be relitigated). <u>See also</u> <u>Mestek</u>, 40 Mass.App.Ct. at 731 <u>citing</u> Mass. R. Civ. P. 41(b)(3) and Restatement (Second) of Judgments § 19, comment d; <u>Isaac</u>, 706 F.2d at 17 discussed <u>supra</u> Section II.A.2.1.

Deploying these general principles, I note that the state and federal complaints were filed in the same time period (February/March 2004) against the same six Director defendants and other officers and both alleged insider trading by Director defendant Anderson and oversight failure by all six Director defendants. Thus, the demand futility question is virtually identical in each case -- does a reasonable doubt exist concerning whether a majority of the Board of Directors were disinterested and independent in late February/March 2004 such that they could not exercise independent business judgment if the

shareholders had made a demand?[7]  The only question is whether
the 'new' facts in the federal Complaint are sufficient to
preclude preclusion.

I find that the new factual allegations in the federal
Complaint -- what the plaintiffs call the "red flags" -- are not
the result of a different factual situation or changed
circumstances sufficient to transform the demand futility
question as the plaintiffs allege.  Rather, most of the 'new'
evidence could have been discovered with diligence and included
in the state court plaintiffs' complaint, either at the outset or
by amendment prior to Judge van Gestel's decision.  I will not
relieve the plaintiffs of the consequences of prior litigation
simply because additional evidence, namely the Company's 2004
Form 10-K filed on March 15, 2005 and the letter to the Board
dated March 14, 2005 from the Company's external auditor
reporting the results of its audit, was not available prior to
Judge van Gestel's decision.  Demand futility is to be gauged
when derivative suits are filed, "not afterward with the benefit
of hindsight."  <u>Grossman v. Johnson</u>, 674 F.2d 115, 123 (1st Cir.
1982) <u>citing</u> <u>Cramer</u>, 582 F.2d at 276.  Although the later
released documents certainly provide more factual development of

_____

        [7] I specifically choose this formulation of the issue,
rather than the narrower question whether each complaint pleads
demand futility with sufficient particularity.  To frame the
question otherwise would essentially permit any plaintiff to
relitigate similar threshold issues by simply filing a new case
with a more fulsomely pled complaint.

the nature of the prior misstatements and internal control problems, the plaintiffs do not adequately explain how the Board's admissions of mistakes in March 2005 transforms the issue of whether demand would have been futile months earlier.

If the *same individuals* as in the state suit had filed this federal suit around the same date and based on the same facts and legal theories, the principle of repose would command that the purported "new" evidence would not be enough for them to avoid issue preclusion and start another action in a different court. The answer must be the same for the plaintiffs before me. Although these plaintiffs claim that it would be "unfair" to preclude this litigation "because another litigant failed to raise" additional factual support later developed, this circumstance does not "justify affording [the plaintiffs] an opportunity to relitigate the issue." <u>Martin</u>, 401 Mass. at 62. Consequently, I find that the overlap between the state and federal suits is "so substantial that preclusion is plainly appropriate," having found there is sufficient privity between the state and federal plaintiffs. <u>Dugan</u>, 428 Mass. at 143.

### III. Conclusion

For the foregoing reasons, I find that a privy of the plaintiffs had a full and fair opportunity to litigate the identical demand futility issue in the state court, which reached a final judgment on that issue. Accordingly, the defendants'

-25-

motion to dismiss is GRANTED.

/s/ Douglas P. Woodlock
_____
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE